# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ENVIRONMENTAL DEFENSE FUND, *et al.*,

                *Plaintiffs*,

    v.

CHRISTOPHER WRIGHT, in his official capacity as Secretary of Energy, *et al.*,

                *Defendants*.

No. 1:25-cv-12249-WGY

**BRIEF OF MASSACHUSETTS, CALIFORNIA, COLORADO, CONNECTICUT, DELEWARE, THE DISTRICT OF COLUMBIA, HAWAI'I, ILLINOIS, MAINE, MARYLAND, MICHIGAN, MINNESOTA, NEW JERSEY, NEW MEXICO, NEW YORK, OREGON, VERMONT, WASHINGTON, WISCONSIN, AND THE CITY OF NEW YORK AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND A STAY, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT OR CONSOLIDATION UNDER RULE 64(A)(2)**

ANDREA JOY CAMPBELL
   *Attorney General*
   *Commonwealth of Massachusetts*

Emily Mitchell Field, BBO No.703726
   *Assistant Attorney General*
   *Environmental Protection Division*
Turner Smith, BBO No. 684750
   *Deputy Chief & Assistant Attorney General*
   *Energy and Environment Bureau*
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, Massachusetts 02108
(617) 727-2200
emily.field@mass.gov
turner.smith@mass.gov

## TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION AND INTERESTS OF AMICI ...................................................................... 1

ARGUMENT ................................................................................................................................. 2

    I.    Defendants Violated the Federal Advisory Committee Act. ............................................... 2

    II.   Absent an Injunction, Defendants' FACA Violations Will Irreparably Harm the
        State and Local Governments and the Public Interest. ........................................................ 4

CONCLUSION ............................................................................................................................ 10

CERTIFICATE OF SERVICE .................................................................................................... 13

i

## TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531 (1987) ...................................................... 6

*League of Women Voters of United States* v. *Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ................ 3

*Massachusetts v. EPA*, 549 U.S. 497 (2007) ................................................................................. 4

*Pub. Citizen v. Dep't of Justice*, 491 U.S. 440 (1989) ................................................................... 2

*Southeast Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 472 F.3d 1097 (9th Cir. 2006) ..................................................................................................................................... 6

**Statutes**

5 U.S.C. § 1008(c)(1) ...................................................................................................................... 3

**Other Authorities**

Allison R. Crimmins, et al., U.S. Global Change Rsch. Program, Fifth National Climate Assessment (2023) ................................................................................................................. 1, 8

Christopher Lamie et al., Ch. 2: Understanding and preparing for our changing climate, in *New York State Climate Impacts Assessment* (2024) ................................................................. 8

Colorado Department of Public Health & Environment, *2023 Colorado Statewide Inventory of Greenhouse Gas Emissions and Sinks* (2024) ....................................................... 8

Colorado Department of Public Health & Environment, Greenhouse Gas Reporting Program ...................................................................................................................................... 8

Colorado, *Colorado Greenhouse Gas Pollution Reduction Roadmap 2.0* (2024) ......................... 9

Comments of Attorney General of California et al. on Advance Notice of Proposed Rulemaking Regulating Greenhouse Gases Under the Clean Air .............................................. 5

Comments of California and Connecticut Attorney Generals on Advance Notice of Proposed Rulemaking Regulating Greenhouse Gases Under the Clean Air Act ....................... 5

Comments of Massachusetts Attorney General Martha Coakley on the Advance Notice of Proposed Rulemaking Regulating Greenhouse Gases Under the Clean Air Act ....................... 5

Comments of Massachusetts et. al. on the Proposed Endangerment and Cause of Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act ........... 5

Comments of New York Office of the Governor on the Proposed Endangerment and Cause of Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act....... 5

Comments of the Attorney General of California on the Proposed Endangerment and Cause of Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act ........ 5

Comments of the Governor of the State of Washington on the Proposed Endangerment and Cause of Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act ........ 5

Comments of the New York Attorney General's Office et al. on Advance Notice of Proposed Rulemaking Regulating Greenhouse Gases Under the Clean Air Act ........ 5

Cong. Rsch. Serv., The Federal Advisory Committee Act (FACA): Overview and Considerations for Congress (2024) ........ 3, 4

DOE, *Secretary Wright Acts to "Unleash Golden Era of American Energy Dominance"* (Feb. 5, 2025)........ 6

Federal Advisory Committee Management, 66 Fed. Reg. 37,738 (July 19, 2001) ........ 3

Massachusetts, 2022 Massachusetts Climate Change Assessment: Volume II – Statewide Report, 58, 134 (2022)........ 7

Minn. Env't Quality Bd., *Minnesota Climate Action Framework* (2022)........ 7

NYC Mayor's Office of Climate & Environmental Justice, *Climate Resilience Design Guidelines*, (2022) ........ 9

NYC Panel on Climate Change, *4th Assessment* (2024) ........ 9

U.S. DOE, A Critical Review of Impacts of Greenhouse Gas Emissions on the U.S. Climate, 90 Fed. Reg. 36,150 (Aug. 1, 2025)........ 6

U.S. Global Change Research Program, *Impacts, Risks, and Adaptation in the United States: Fourth National Climate Assessment*, Vol. II ........ 8

**Rules**

Rule 65(A)(2) of the Federal Rules of Civil Procedure........ 1, 9

**Regulations**

U.S. EPA, Final Rule, Endangerment and Cause or Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act, 74 Fed. Reg. 66,498 (Dec. 15, 2009) ..... 4, 5

U.S. EPA, Proposed Reconsideration of 2009 Endangerment Finding and Greenhouse Gas Vehicle Standards, 90 Fed. Reg. 36,288 (Aug. 1, 2025) ........ 1, 5

U.S. EPA, Reconsideration of 2009 Endangerment Finding and Greenhouse Gas Vehicle
    Standards; Extension of Comment Period, 90 Fed. Reg. 39,345 (Aug. 15, 2025) ..................... 6

**INTRODUCTION AND INTERESTS OF AMICI**

Amici Massachusetts, California, Colorado, Connecticut, Delaware, the District of Columbia, Hawai'i, Illinois, Maine, Maryland, Michigan, Minnesota, New Jersey, New Mexico New York, Oregon, Vermont, Washington, Wisconsin, and the City of New York (the State and Local Governments) submit this amicus brief in support of Plaintiffs' motion for a preliminary injunction and a stay, or, in the alternative, for summary judgment or consolidation under Rule 65(A)(2) of the Federal Rules of Civil Procedure ("Motion"). The floods, droughts, wildfires, extreme temperatures, and storms plaguing the nation are prevalent throughout many of our State and Local Governments and causing catastrophic damage that is only expected to increase.[1] A massive body of peer-reviewed science demonstrates that those ever-increasing impacts are unequivocally caused by anthropogenic climate change and will continue to intensify and exacerbate harms to our State and Local Governments.[2] Defendants in this case now seek to discard that scientific consensus, and with it policies that are critically important to protecting public health and welfare within our jurisdictions from the impacts of climate change. Defendants seek to do so through the rushed work—conducted entirely in secret—of five climate skeptics hand-picked by Department of Energy (DOE) Secretary Wright, resulting in the procedurally and substantively flawed Climate Working Group (CWG) Report. Of immediate and particular concern to the State and Local Governments—Defendant U.S. Environmental Protection Agency (EPA) has proposed to rescind, based on the CWG Report, its 2009 finding

---

[1] Allison R. Crimmins, et al., U.S. Global Change Rsch. Program, Fifth National Climate Assessment 1–16 (2023), https://perma.cc/NAP3-U9XX.

[2] *Id.* at 2–5.

that greenhouse gases endanger public health and welfare, along with all motor vehicle greenhouse gas emission standards (Endangerment Proposal).[3]

The State and Local Governments, and the public interest, will be irreparably harmed if Defendants are allowed to continue to utilize work conducted in violation of the Federal Advisory Committee Act (FACA) to defy the science and cast away important public health and welfare protections. The State and Local Governments have significant interests in ensuring that all current and future advisory committees faithfully follow the requirements set forth in FACA to eliminate the possibility—and in this case, the certainty—that biased, secret, and unaccountable special interests influence national policies impacting State and Local Governments and their residents.

**ARGUMENT**

The State and Local Governments support Plaintiffs' Motion. Defendant DOE's CWG was established and is operating in violation of FACA, including by writing the CWG Report, a draft of which EPA is already utilizing in its proposal to rescind the 2009 endangerment finding and motor vehicle greenhouse gas emission standards. The State and Local Governments submit this amicus brief to underscore that Defendants' conduct violates FACA in myriad ways and to highlight the specific resulting harms to the State and Local Governments, and thus the public interest, from Defendants' ongoing FACA violations.

**I.    Defendants Violated the Federal Advisory Committee Act.**

Congress passed FACA to enhance the "public accountability of advisory committees established by the Executive Branch." *Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 459

---

[3] *See* U.S. EPA, Proposed Reconsideration of 2009 Endangerment Finding and Greenhouse Gas Vehicle Standards, 90 Fed. Reg. 36,288 (Aug. 1, 2025).

2

(1989). Congress did so to remedy concerns about the fact that "[t]he lack of public scrutiny of the activities of advisory committees . . . pose[d] [a] danger that subjective influence not in the public interest could be exerted on . . . Federal decisionmakers."[4] State and Local Governments have a unique perspective and interest in development of advisory committee recommendations, as the General Services Administration has recognized,[5] and, as further described below, in ensuring those recommendations are not tainted by improper influence not in the public interest.

The CWG is precisely the type of unbalanced and unaccountable advisory committee that Congress sought to prevent from exerting control over federal policymaking, and it has operated and continues to operate in violation of FACA and its important requirements. The State and Local Governments thus wholly agree with the arguments set forth by Plaintiffs in their memorandum in support of their Motion (Pls.' Mem.). In particular, the CWG meets the statutory definition of an advisory committee (Pls.' Mem. at 8–12); and Defendants violated FACA's requirements for establishing and utilizing advisory committees (Pls.' Mem. at 12–13), its meeting requirements (Pls'. Mem. at 13–14), its records requirements (Pls.' Mem. at 14–15), and its requirement that advisory committees be fair and balanced and free from improper influence (Pls.' Mem. at 15–16). The CWG and CWG Report therefore reflect the improper influence Congress specifically aimed to prevent when it enacted FACA. 5 U.S.C. § 1008(c)(1).

---

[4] Cong. Rsch. Serv., The Federal Advisory Committee Act (FACA): Overview and Considerations for Congress 1 n.5 (2024) (quoting Senate Comm. on Gov't Operations, *The Federal Advisory Committee Act*, report to accompany S. 3529, 92nd Cong., 2nd sess., Sept. 7, 1972, S. Rept. 92-1098 (1972)).

[5] Federal Advisory Committee Management, 66 Fed. Reg. 37,738, 37,740 (July 19, 2001).

## II. Absent an Injunction, Defendants' FACA Violations Will Irreparably Harm the State and Local Governments and the Public Interest.

It is well established that "there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *League of Women Voters of United States* v. *Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (citations omitted). The same principle applies to committees advising those agencies. Indeed, as described above, FACA specifically aims to serve the public interest, by ensuring advisory committees do not perpetuate "subjective influence not in the public interest" on federal decisionmakers.[6] Here, Defendants' past and ongoing FACA violations are impacting and will continue to impact multiple interests of the State and Local Governments, further demonstrating that the public interest weighs in favor of an injunction or other expedited relief.

*First*, Defendants' FACA violations will harm the State and Local Governments' strong interest in the federal government's reliance on the best available science to guide its public health and welfare decisions, including with respect to climate policy. For decades, many of the State and Local Governments have fought for strong science-based climate protections at the federal level. Many of our State and Local Governments advocated for years for the federal government to regulate greenhouse gas emissions. In 2007, their advocacy led to the Supreme Court's opinion in *Massachusetts v. EPA*, which held that EPA has clear authority to regulate greenhouse gas emissions under the Clean Air Act. 549 U.S. 497 (2007). In the wake of that landmark decision, EPA spent years gathering and reviewing an extensive body of contemporary climate science and sought broad public participation by soliciting comments and conducting public hearings to decide whether the greenhouse gas emissions endangered public health and

---

[6] Cong. Rsch. Serv, The Federal Advisory Committee Act (FACA): Overview and Considerations for Congress 1 n.5 (2024).

4

welfare.[7] EPA relied, in part, on the National Climate Assessment (NCA), and other reports created by the U.S. Global Change Research Program, all of which were rigorously peer reviewed and created by FACA-compliant advisory committees. Many of amici State and Local Governments participated in EPA's data gathering and rulemaking efforts.[8] The result of that effort was the 2009 "Endangerment Finding," in which EPA determined that greenhouse gases threaten the public health and welfare of current generations, and that emissions from motor vehicles and engines contribute to the greenhouse gas pollution that threatens public health and welfare.[9]

As a result of the CWG's noncompliance with FACA, the CWG Report stands in stark contrast to the multi-year, scientifically rigorous approach that underpinned the 2009 Endangerment Finding. The CWG Report was completed in less than two months;[10] the report

---

[7] *See* U.S. EPA, Final Rule, Endangerment and Cause or Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act, 74 Fed. Reg. 66,498, 66,519 (Dec. 15, 2009).

[8] *See* Comments of Massachusetts Attorney General Martha Coakley on the Advance Notice of Proposed Rulemaking Regulating Greenhouse Gases Under the Clean Air Act, https://perma.cc/4K6P-AQKU; Comments of the New York Attorney General's Office et al. on Advance Notice of Proposed Rulemaking Regulating Greenhouse Gases Under the Clean Air Act, https://perma.cc/4S5N-DXFC; Comments of California and Connecticut Attorney Generals on Advance Notice of Proposed Rulemaking Regulating Greenhouse Gases Under the Clean Air Act, https://perma.cc/7TGV-TX4V; Comments of Attorney General of California et al. on Advance Notice of Proposed Rulemaking Regulating Greenhouse Gases Under the Clean Air Act, https://perma.cc/B8EK-7P95; Comments of Massachusetts et. al. on the Proposed Endangerment and Cause of Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act, https://perma.cc/HRP9-H85B; Comments of the Attorney General of California on the Proposed Endangerment and Cause of Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act, https://perma.cc/6A5B-U2XV; Comments of the Governor of the State of Washington on the Proposed Endangerment and Cause of Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act, https://perma.cc/L352-V33R; Comments of New York Office of the Governor on the Proposed Endangerment and Cause of Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act, https://perma.cc/NV57-4U6T.

[9] 74 Fed. Reg. at 66,499.

[10] *See* 90 Fed. Reg. at 36,292.

was not subject to any peer review process; the CWG operated in secret; its makeup is far from fair and balanced; and its conflicts of interest abound.[11] Yet the CWG Report is already serving as a basis for major policy proposals that threaten significant harm to public health and welfare in the State and Local Governments. Defendant EPA relies on the CWG Report extensively throughout the agency's two-and-a-half page "Climate Science Discussion" in the Endangerment Proposal—citing it dozens of times in an attempt to refute decades of extensive, peer-reviewed climate science on topics ranging from extreme weather events to human attribution.[12] EPA has done so despite the fact that the CWG—and its hastily drafted report—was formed and conducted its work in plain violation of FACA. This Court should direct DOE to withdraw the CWG Report and enjoin EPA from relying on it—especially to rescind critical public health protections—unless and until the CWG complies with FACA and its improper influence is remedied. And the Court should dispense that relief quickly because comments on the CWP Report itself are due on September 2, 2025, and comments on EPA's Endangerment Proposal are now due on September 22, 2025.[13]

Beyond EPA's Endangerment Proposal, EPA and other agencies have promised to upend a myriad of other federal climate protections.[14] It is of critical importance that all federal agencies be held accountable and that the advice and reports they rely on be scientifically sound, unbiased, and transparent. If Defendants are permitted to continue relying on the CWG's efforts

---

[11] *See* Compl. ECF 1. ¶¶ 27–42.

[12] 90 Fed. Reg. at 36,307–10.

[13] U.S. DOE, A Critical Review of Impacts of Greenhouse Gas Emissions on the U.S. Climate, 90 Fed. Reg. 36,150 (Aug. 1, 2025); U.S. EPA, Reconsideration of 2009 Endangerment Finding and Greenhouse Gas Vehicle Standards; Extension of Comment Period, 90 Fed. Reg. 39,345, 39,346 (Aug. 15, 2025).

[14] *See* Exec. Order No. 14154 *Unleashing American Energy*, 90 Fed. Reg. 8,353 (Jan. 20, 2025); DOE, *Secretary Wright Acts to "Unleash Golden Era of American Energy Dominance"* (Feb. 5, 2025), https://perma.cc/Z5TZ-SVPX.

as a basis for broadly rescinding regulations protecting public health and welfare, the State and Local Governments —and the public interest—will suffer.[15]

*Second*, the lack of access to the CWG records and the inability to observe CWG meetings has prevented the State and Local Governments and the public more broadly from understanding how the federal government is making decisions of significant public importance. In order to fully advocate for the best interests of their residents, the State and Local Governments must be made aware of precisely what the CWG has done and continues to do behind closed doors. Indeed, at the very least the State and Local Governments urgently need access to all materials that were made available to or prepared by or for the CWG, to inform responsive comments on the CWG Report and the Endangerment Proposal by September 2 and 22, respectively.

*Third*, Defendants' FACA violations threaten significant harm to the State and Local Governments' ability to rely on federal climate data and reports to guide policy decisions within their own jurisdictions. For example, Massachusetts incorporated EPA data and methodologies, such as data on the economic impacts of climate change, into its Massachusetts Climate Change Assessment.[16] That assessment summarizes increasing risks and harms facing the state, how they should be addressed, and the level of urgency required to respond to each evolving harm.[17] Similarly, Minnesota routinely incorporates federal data, scientific assessments, and regulatory

---

[15] *See Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 545 (1987) ("Environmental injury, by its nature, can seldom be remedied by money damages and is often permanent, . . . i.e., irreparable"); *Southeast Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 472 F.3d 1097, 1100 (9th Cir. 2006) (denying motion to vacate injunction noting "[o]ngoing harm to the environment constitutes irreparable harm warranting an injunction").

[16] Massachusetts, *2022 Massachusetts Climate Change Assessment: Volume II – Statewide Report*, 58, 134 (2022), https://perma.cc/WZ36-7SWZ.

[17] *Id.*

7

frameworks—such as those from the NCA, EPA, and U.S. Geological Survey (USGS)—to inform its state-level climate strategies. For instance, the Minnesota Climate Action Framework outlines the state's vision for a carbon-neutral, resilient, and equitable future and commits to using "the best available science" to shape state priorities.[18] The Framework reflects the findings of the Fourth and Fifth NCAs, particularly in its alignment with regional climate projections for the Midwest and its adoption of net-zero targets consistent with federal objectives.[19] The Oregon Climate Change Research Institute (OCCRI) at Oregon State University cites to federal data and federal climate assessments in its biennial reports to the Oregon Legislature. The Oregon Health Authority (OHA) similarly produces an annual report, "Climate and Health in Oregon," that cites to National Oceanic and Atmospheric Administration (NOAA) Climate Assessments and to the OCCRI reports. The Oregon Department of Environmental Quality cites to both the OCCRI and OHA reports to track and assess the impact of climate change to support various programs, including the Clean Fuels Program (CFP; low carbon fuel standards), the Greenhouse Gas Reporting Program, and the Climate Protection Program (program to cap and reduce GHG emissions). New York has relied on federal climate data and assessments (including from EPA, NOAA, and the NCAs) in the New York State Climate Impacts Assessment, which helps the state adapt to the impacts of climate change.[20] Colorado has relied on EPA's research and data sources available through the federal reporting program and national inventory for

---

[18] Minn. Env't Quality Bd., *Minnesota Climate Action Framework* (2022), https://perma.cc/8UP6-26N7

[19] Allison R. Crimmins, et al., *U.S. Global Change Rsch. Program, Fifth National Climate Assessment* (2023); U.S. Global Change Research Program, *Impacts, Risks, and Adaptation in the United States: Fourth National Climate Assessment*, *Vol. II* (2017), https://perma.cc/QXG5-P9G8.

[20] *See, e.g.*, Christopher Lamie et al., Ch. 2: Understanding and preparing for our changing climate, in *New York State Climate Impacts Assessment* (2024), https://perma.cc/B8ZL-76XT

Colorado's Statewide Greenhouse Gas Reporting Program[21], Greenhouse Gas Inventories[22], its initial Greenhouse Gas Pollution Reduction Roadmap released in 2021, and its subsequent Greenhouse Gas Pollution Reduction Roadmap 2.0., released in 2024[23]. The State inventories and roadmaps lay out Colorado's emissions trajectory, evaluate progress toward Colorado's statutory greenhouse gas emission reduction targets, lay out near-term actions for the State to prioritize, and estimate the additional emission reductions and other benefits that are likely to result from those actions. In the rulemakings context, Colorado has used EPA's COBRA tool to calculate in-state health benefits from reductions in co-pollutants resulting from the rules' reductions in greenhouse gas emissions In New York City, the New York City Panel on Climate Change (NPCC) uses federal climate data to develop its reports and mapping tools, which inform many City policies, including the Climate Resilience Design Guidelines and zoning parameters related to current and future flood conditions.[24] The city uses this data to understand how New York City's coastline will be affected by sea level rise and to plan coastal protection infrastructure such as the Lower Manhattan Coastal Resiliency Project. The State and Local Governments thus rely on federal research and will be harmed by the absence of robust, cohesive, and reliable federal climate data and methodologies, with all attendant protections in federal law.

---

[21] Colorado Department of Public Health & Environment, Greenhouse Gas Reporting Program, https://perma.cc/WJ6V-MYSR.

[22] Colorado Department of Public Health & Environment, *2023 Colorado Statewide Inventory of Greenhouse Gas Emissions and Sinks* (2024), https://perma.cc/JSQ4-MCDU.

[23] Colorado, *Colorado Greenhouse Gas Pollution Reduction Roadmap 2.0* (2024), https://perma.cc/WJ6V-MYSR.

[24] NYC Panel on Climate Change, *4th Assessment* (2024), https://perma.cc/M773-R2JG; NYC Mayor's Office of Climate & Environmental Justice, *Climate Resilience Design Guidelines*, (2022), https://perma.cc/XQU7-7UJU.

In sum, the unlawful establishment and continued operation of the CWG and Defendants' reliance on the CWG Report to rescind any number of critical climate regulations, most immediately the 2009 Endangerment Finding, will have a devastating effect on public health and welfare and should be enjoined.

## CONCLUSION

For the foregoing reasons, the State and Local Governments respectfully request that the Court grant Plaintiffs' Motion for Preliminary Injunction and a Stay, or, in the Alternative, for Summary Judgment or Consolidation Under Federal Rule of Civil Procedure 65(A)(2).

Dated: August 29, 2025                              Respectfully submitted,

**ANDREA JOY CAMPBELL**
*Attorney General of Massachusetts*

 /s/ *Emily Mitchell Field*
Emily Mitchell Field, BBO No. 703726
   *Assistant Attorney General*
   *Environmental Protection Division*
Turner Smith, BBO No. 684750
   *Deputy Chief & Assistant Attorney General*
   *Energy and Environment Bureau*
One Ashburton Place
Boston, MA 02108
(617) 727-2200
emily.field@mass.gov
turner.smith@mass.gov

*Counsel for the Commonwealth of Massachusetts*

10

| | |
|---|---|
| ROB BONTA<br>*Attorney General*<br>*State of California*<br>1300 I Street<br>Sacramento, CA 95814 | AARON M. FREY<br>*Attorney General*<br>*State of Maine*<br>6 State House Station<br>Augusta, ME 04333 |

PHILIP J. WEISER
*Attorney General,*
*State of Colorado*
Office of the Attorney General
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203

ANTHONY G. BROWN
*Attorney General of Maryland*
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202

WILLIAM TONG
*Attorney General for Connecticut*
165 Capitol Avenue
Hartford, Connecticut 06106

DANA NESSEL
*Michigan Attorney General*
P.O. Box 30212
Lansing, Michigan 48909

KATHLEEN JENNINGS
*Attorney General of the State of Delaware*
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801

KEITH ELLISON
*Attorney General of Minnesota*
State Capitol Room 102
75 Rev. Dr. Martin Luther King Jr. Boulevard
Saint Paul, MN 55155

BRIAN L. SCHWALB
*Attorney General for the District of Columbia*
400 6th St. NW
Washington, D.C. 20001

MATTHEW J. PLATKIN
*Attorney General of New Jersey*
Richard J. Hughes Justice Complex
25 Market Street
Trenton, NJ 08625

ANNE E. LOPEZ
*Attorney General*
*State of Hawaiʻi*
425 Queen Street
Honolulu, HI 96813

RAÚL TORREZ
*New Mexico Attorney General*
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, NM 87501

KWAME RAOUL
*Attorney General*
*State of Illinois*
115 S. LaSalle Street
Chicago, Illinois 60603

LETITIA JAMES
*Attorney General State of New York*
28 Liberty Street
New York, NY 10005

DAN RAYFIELD
*Attorney General of Oregon*
1162 Court Street NE
Salem, Oregon 97301-4096

11

NICHOLAS W. BROWN
*Attorney General*
*State of Washington*
P.O. Box 40100
Olympia, WA 98504

JOSHUA L. KAUL
*Attorney General*
*State of Wisconsin*
17 W. Main Street
Madison, WI 53703

CHARITY R. CLARK
*Attorney General of Vermont*
109 State Street
Montpelier, VT 05609

MURIEL GOODE-TRUFANT
*Corporation Counsel*
*City of New York*
New York City Law Department
100 Church Street
New York, NY 10007

**CERTIFICATE OF SERVICE**

    I, Emily Mitchell Field, hereby certify that I have this day, August 29, 2025, served the foregoing document upon all parties of record, by electronically filing to all ECF-registered parties and by sending a copy, first-class mail, postage prepaid to all unregistered parties.

                                            /s/ *Emily Mitchell Field*
                                            Emily Mitchell Field
                                            Assistant Attorney General
                                            Commonwealth of Massachusetts