# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

ENVIRONMENTAL DEFENSE FUND,
*et al.*,

                         *Plaintiffs*,

              v.                                    Case No. 1:25-cv-12249-WGY

CHRISTOPHER WRIGHT, in his official
capacity as Secretary of Energy, *et al.*,

                         *Defendants*.

**BRIEF OF *AMICUS CURIAE***
**AMERICAN FREE ENTERPRISE CHAMBER OF COMMERCE**
**Leave to file granted on September 3, 2025**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTEREST OF *AMICUS CURIAE* ................................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................1

BACKGROUND ............................................................................................................3

ARGUMENT .................................................................................................................3

    I.    Plaintiffs Lack Standing to Censor the Report ................................................3

    II.   The Clean Air Act Strips this Court of Jurisdiction to Censor EPA .................7

    III.  The APA or Mandamus Do Not Allow Censorship to Remedy FACA Violations ...........12

    IV.  Censorship Injunctions Are Not Within this Court's Equitable Jurisdiction ...................14

    V.   The Asserted Harms Are Not Immediate or Irreparable ...................................15

    VI.  Postponing a Comment Deadline Is Not Appropriate ......................................17

CONCLUSION ............................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adamo Wrecking Co. v. United States*,
  434 U.S. 275 (1978) ................................................................................................... 9

*Ala.–Tombigbee Rivers Coal. v. Dep't of Interior*,
  26 F.3d 1103 (11th Cir. 1994) ................................................................................. 5

*Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*,
  997 F.2d 898 (D.C. Cir. 1993) ................................................................................. 2

*Axon Enter., Inc. v. Fed. Trade Comm'n*,
  598 U.S. 175 (2023) ........................................................................................ 7, 8, 11

*Biden v. Texas*,
  597 U.S. 785 (2022) ................................................................................................. 13

*Carney v. Adams*,
  592 U.S. 53 (2020) ..................................................................................................... 4

*Casillas v. Madison Ave. Assocs., Inc.*,
  926 F.3d 329 (7th Cir. 2019) ................................................................................... 6

*Dep't of Educ. v. Brown*,
  600 U.S. 551 (2023) ................................................................................................... 5

*Diaz v. Matal*,
  268 F. Supp. 3d 267 (D. Mass. 2017) .................................................................. 16

*EPA v. Calumet Shreveport Refin., L.L.C.*,
  145 S. Ct. 1735 (2025) ............................................................................................. 9

*Fed. Election Comm'n v. Akins*,
  524 U.S. 11 (1998) ..................................................................................................... 4

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
  527 U.S. 308 (1999) ................................................................................................. 14

*Hartford-Empire Co. v. United States*,
  323 U.S. 386 (1945) ................................................................................................. 15

*Indep. Equip. Dealers Ass'n v. EPA*,
  372 F.3d 420 (D.C. Cir. 2004) .............................................................................. 13

*In re Murray Energy Corp.*,
    788 F.3d 330 (D.C. Cir. 2015) .............................................................................3, 11

*Murthy v. Missouri*,
    603 U.S. 43 (2024) ...................................................................................................5

*Nat. Res. Def. Council v. Peña*,
    147 F.3d 1012 (D.C. Cir. 1998) ................................................................ 2, 5, 6, 15

*Nat'l Nutritional Foods Ass'n v. Califano*,
    603 F.2d 327 (2d Cir. 1979) ...................................................................................16

*Nat'l Regul. Comm'n v. Texas*,
    605 U.S. 665 (2025) ...............................................................................................16

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004) .................................................................................................13

*Pebble Ltd. P'ship v. EPA*,
    No. 3:14-CV-0171-HRH, 2015 WL 12030515 (D. Alaska June 4, 2015) .................12

*Perry v. Sheahan*,
    222 F.3d 309 (7th Cir. 2000) ...................................................................................5

*Pub. Citizen v. U.S. Dep't of Just.*,
    491 U.S. 440 (1989)..................................................................................................4

*S. Env't L. Ctr. v. Council on Env't Quality*,
    446 F. Supp. 3d 107 (W.D. Va. 2020)......................................................................17

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ................................................................................................4, 5

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) .................................................................................................5

*Thunder Basin Coal Co. v. Reich*,
    510 U.S. 200 (1994) ..............................................................................................8, 9

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)...........................................................................................4, 5, 6

*Trump v. CASA, Inc.*,
    145 S. Ct. 2540 (2025)............................................................................................14

*Union of Concerned Scientists v. Wheeler*,
    954 F.3d 11 (1st Cir. 2020) ................................................................................12, 13

**Statutes**

5 U.S.C. § 551(4) ........................................................................................................13

5 U.S.C. § 551(6) ........................................................................................................13

5 U.S.C. § 551(10) ......................................................................................................13

5 U.S.C. § 551(11) ......................................................................................................13

5 U.S.C. § 551(13) ......................................................................................................13

5 U.S.C. § 553(d) ..........................................................................................................7

5 U.S.C. § 701(b)(2) ....................................................................................................13

5 U.S.C. § 702 .............................................................................................................13

5 U.S.C. § 706 .............................................................................................................13

5 U.S.C. § 706(1) ........................................................................................................13

5 U.S.C. § 1004 ...........................................................................................................12

5 U.S.C. § 1005 ...........................................................................................................12

5 U.S.C. § 1007 ..................................................................................................... 12, 13

28 U.S.C. § 1331 ...........................................................................................................7

42 U.S.C. 7521(a)(1) .....................................................................................................9

42 U.S.C. § 7607(b) ...........................................................................................1, 2, 7, 12

42 U.S.C. § 7607(b)(1) ..................................................................................... 8, 10, 11, 16

42 U.S.C. § 7607(b)(2) ..................................................................................................9

42 U.S.C. § 7607(d)(1)(K) .............................................................................................9

42 U.S.C. § 7607(d)(4)(A) ...........................................................................................10

42 U.S.C. § 7607(d)(4)(B) ...........................................................................................10

42 U.S.C. § 7607(d)(4)(B)(i) ........................................................................................12

42 U.S.C. § 7607(d)(6)(B) ...........................................................................................16

42 U.S.C. § 7607(d)(7)(B) ............................................................................16

42 U.S.C. § 7607(d)(8) ..............................................................1, 2, 7, 8, 10, 12

42 U.S.C. § 7607(e) ................................................................................ 8, 11

42 U.S.C. § 7607(h) .....................................................................................17

Federal Advisory Committee Act, 5 U.S.C. § 1001 *et seq.* ...............................1

**Other Authorities**

11A Wright & Miller's Federal Practice and Procedure
    (3d ed. updated May 21, 2025) ...............................................................15

Caleb Nelson, *"Standing" and Remedial Rights in Administrative Law*,
    105 Va. L. Rev. 703 (2019) ...................................................................13

DOE, Climate Working Grp., *Impacts of Carbon Dioxide Emissions on the U.S.
    Climate* (May 27, 2025), https://www.regulations.gov/document/EPA-HQ-
    OAR-2025-0194-0060...........................................................................10

John Norton Pomeroy, I *Equity Jurisprudence and Equitable Remedies* (3d ed. 1905)....................15

*Notice of Availability: A Critical Review of Impacts of Greenhouse Gas Emissions on the
    U.S. Climate*, 90 Fed. Reg. 36,150 (Aug. 1, 2025).........................................1

*Reconsideration of 2009 Endangerment Finding and Greenhouse Gas Vehicle
    Standards*, 90 Fed. Reg. 36,288, 36,292 (Aug. 1, 2025) .................................2, 9

U.S. Const. art. III, § 2 ..................................................................................3

## INTEREST OF *AMICUS CURIAE*

Formed in 2022, the American Free Enterprise Chamber of Commerce ("AmFree") is an entity organized consistent with section 501(c)(6) of the Internal Revenue Code that represents hard-working entrepreneurs and businesses across all sectors of the U.S. economy. AmFree has an interest in this suit because Plaintiffs seek to censor scientific studies that AmFree will rely upon in comments. AmFree also has an interest in protecting the interests of its members in litigating substantive and procedural issues arising during ongoing Clean Air Act rulemakings in courts of appeals after final action, as the Act requires, 42 U.S.C. § 7607(b), (d)(8), rather than piecemeal in district courts.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs seek to turn the Federal Advisory Committee Act ("FACA"), 5 U.S.C. § 1001 *et seq.*—a sunshine and reorganization law—into a weapon for district courts to censor public information, micromanage agency dockets, and disrupt ongoing regulatory proceedings that have yet to ripen into a final rule. But FACA is not the censorship tool that Plaintiffs claim, nor should this Court turn FACA on its head by using a sunshine law to censor public information or disrupt ongoing rulemakings.

Plaintiffs claim the Department of Energy ("DOE") violated FACA's requirements by asking a "Climate Working Group" of five scientists to contribute to a report about the effects of climate change—a report that is currently subject to public comment (the "CWG Report"). *Notice of Availability: A Critical Review of Impacts of Greenhouse Gas Emissions on the U.S. Climate*, 90 Fed. Reg. 36,150 (Aug. 1, 2025). Plaintiffs seek DOE's prospective compliance with FACA and documents. Dkt. No. 16, at 19–20. But Plaintiffs also ask this Court to censor the CWG Report in at least one ongoing U.S. Environmental Protection Agency ("EPA") rulemaking under the Clean

Air Act, and perhaps others, too. *Id.* at 7, 20; *see Reconsideration of 2009 Endangerment Finding and Greenhouse Gas Vehicle Standards*, 90 Fed. Reg. 36,288, 36,292 (Aug. 1, 2025). Plaintiffs seek this extraordinary censorship to remedy the flimsiest of harms—procedural harm to their ability to file fully informed comments and harm to their "missions." Dkt. No. 16, at 16–17.

*Amicus* writes to explain why censoring the CWG Report in EPA's ongoing rulemaking is inappropriate and beyond the power of this Court.[1] The extraordinary request for censorship here should fail for multiple reasons, but AmFree covers five.

*First*, Plaintiffs lack standing to seek relief against EPA because censoring the study would not redress any cognizable Article III harm. *See Nat. Res. Def. Council v. Peña*, 147 F.3d 1012, 1020–23 (D.C. Cir. 1998) (so holding). *Second*, the Clean Air Act strips district courts of power to enjoin EPA's actions in ongoing Clean Air Act rulemaking proceedings or to control the agency's rulemaking docket, making courts of appeals (in this case, the D.C. Circuit) the "sole forum" for these disputes. *See* 42 U.S.C. § 7607(b), (d)(8). *Third*, censorship remedies are not available under the Administrative Procedure Act ("APA") or through a writ of mandamus, because such an order does not compel a discrete action required by FACA. *Fourth*, censoring the government's use of the CWG Report is punishment that exceeds this Court's remedial equity jurisdiction. *Fifth*, Plaintiffs cannot show irreparable harm because they have adequate avenues for judicial relief: namely, challenging EPA's rulemaking record in the D.C. Circuit, after a final rule.

---

[1] AmFree, to be clear, does not agree with Plaintiffs that DOE established an advisory committee. *See Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898, 914 (D.C. Cir. 1993) ("[T]o implicate FACA, the President, or his subordinates, must create an advisory group that has, in large measure, an organized structure, a fixed membership, and a specific purpose."). AmFree focuses on remedy because Defendants are in a better position to dispute the fact-intensive inquiry required to establish a violation of FACA.

Plaintiffs "are champing at the bit to challenge EPA's anticipated rule [repealing] carbon dioxide emission[]" standards for new motor vehicles. *In re Murray Energy Corp.*, 788 F.3d 330, 333 (D.C. Cir. 2015) (Kavanaugh, J.). "But courts have never reviewed *proposed* rules, notwithstanding the costs that parties may routinely incur in preparing for anticipated final rules." *Id.* at 335. This Court should not do so here.

## BACKGROUND

Plaintiffs allege that DOE violated FACA by relying upon five scientists to draft the CWG Report because the scientists allegedly qualify as an advisory body "established" by DOE under FACA. Dkt. No. 16, at 9–12. Plaintiffs seek the usual relief sought by FACA plaintiffs: a decree ordering DOE's prospective compliance with FACA's disclosure and open-meeting requirements. *Id.* at 19–20.

Plaintiffs, however, seek not just sunlight, but censorship. They ask this Court to "[p]ostpone the effective date" of or "vacate" DOE's transmission of the CWG Report to EPA, Dkt. No. 1, ¶ F, to postpone the effective date of or vacate "EPA's reliance on the CWG Report in its proposed rule," *id.* ¶ G, and to "[p]reliminarily and permanently enjoin" both DOE and EPA "from relying on or citing to the CWG Report" or other CWG advice "in any agency actions or proceedings," *id.* ¶ J. Stripped of legalese, Plaintiffs ask this Court to censor public information about climate change that Plaintiffs will have a full opportunity to criticize, including in ongoing rulemaking proceedings, supposedly to vindicate FACA's philosophy of disclosure.

## ARGUMENT

### I.    Plaintiffs Lack Standing to Censor the Report

Article III of the U.S. Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. "Standing to sue is part of the common understanding

of what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). Under Article III, "a plaintiff cannot establish standing by asserting an abstract general interest common to all members of the public, no matter how sincere or deeply committed a plaintiff is to vindicating that general interest on behalf of the public." *Carney v. Adams*, 592 U.S. 53, 59 (2020) (cleaned up).

The Supreme Court has distilled the irreducible elements of standing into a three-part test. To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Crucially here, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *Id.* at 431. "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co.*, 523 U.S. at 103–04.

Standing sharply limits relief available under FACA, because FACA is a procedural statute that deals with matters internal to the executive branch, and so has little effects on the public. To establish standing, Plaintiffs under FACA must rely upon an "information" injury. *Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 449–50 (1989); *see also Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998). But that theory comes with a catch. Redressing the injury requires asking a Defendant to provide information, not to censor it. Plaintiffs thus have standing to compel an agency "to comply with FACA's charter and notice requirements," and seek "access to the … meetings and records," just as they would under the "Freedom of Information Act." *Pub. Citizen*, 491 U.S. at

449–50; *Peña*, 147 F.3d at 1023–24. Plaintiffs, however, lack standing to censor the use of the CWG Report in any EPA regulatory proceeding. Dkt. No. 16, at 19.

Censoring the CWG Report doesn't alleviate Plaintiffs' information injury. Rather, it just causes injury to others, including AmFree. Nor can Plaintiffs bootstrap standing to seek information to censor the CWG Report: that would dispense standing in gross. *TransUnion LLC*, 594 U.S. at 431. As the D.C. Circuit has put it, "denial of FACA access to Committee documents and records cannot support [Plaintiffs'] standing to sue for an injunction that does not itself address the access issue." *Peña*, 147 F.3d at 1022; *cf. Perry v. Sheahan*, 222 F.3d 309, 314 (7th Cir. 2000) (agreeing with *Peña*).[2] In short, "plaintiffs have a redressability problem." *Murthy v. Missouri*, 603 U.S. 43, 73 (2024).

Plaintiffs cite no case finding standing to seek censorship based on the FACA violations alleged here. Indeed, Plaintiffs make no effort to demonstrate standing at all in their motion, which should be fatal. *Summers v. Earth Island Inst.*, 555 U.S. 488, 497–98 (2009). The only authority Plaintiffs cite to support a similar censorship remedy is *Alabama–Tombigbee Rivers Coalition v. Department of Interior*, 26 F.3d 1103 (11th Cir. 1994). But that Eleventh Circuit case "does not directly address standing," *Peña*, 147 F.3d at 1020 n.2, and "drive-by jurisdictional rulings of this sort … have no precedential effect" in the Eleventh Circuit, let alone persuasive weight here, *Steel Co.*, 523 U.S. at 91.

---

[2] Plaintiffs also claim they are harmed because they will not be able to get documents from DOE before they file comments in EPA's ongoing regulatory proceeding. Dkt. No. 16, at 16. This procedural harm is not cognizable. The "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Dep't of Educ. v. Brown*, 600 U.S. 551, 562 (2023). And Plaintiffs can raise that argument in the rulemaking itself, so there's no injury to be redressed here.

The D.C. Circuit's standing decision in *Peña*, on the other hand, is on point—and far more persuasive. In *Peña*, anti-nuclear groups argued that DOE violated FACA by commissioning a report from an outside committee (the ICF Committee) on a nuclear fusion project, and DOE "conceded" the violation. 147 F.3d at 1016. But the ICF Committee had been disbanded. To vindicate FACA's purposes, the district court entered a censorship injunction forbidding DOE from "utilizing, relying on or in any way incorporating into its decisionmaking process the ICF Committee report or any other work product of the ICF Committee." *Id.* On appeal, the D.C Circuit held that plaintiffs lacked standing to seek this "use injunction." *Id.* at 1016–17. As the D.C. Circuit explained, "[u]nlike the injunctive relief at issue in *Public Citizen*, the use injunction awarded here will not give the appellees access to Committee documents and future Committee meetings." *Id.* at 1021. The same is true here.

Moreover, censoring the CWG Report can't do anything to redress "past FACA violations." *Id.* at 1022. At most, Plaintiffs could argue that censoring the study may deter future violations. But a law-enforcement interest in deterring future violations of FACA doesn't support standing to seek punitive remedies. *Id.* "Private plaintiffs are not accountable to the people and are not charged with pursuing the public interest in enforcing a defendant's general compliance with regulatory law." *TransUnion LLC*, 594 U.S. at 429. "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019) (Barrett, J.).

Stranger still is Plaintiffs' request that this Court "[p]ostpone the effective date" of or "vacate" DOE's transmission of the CWG Report to EPA or EPA's citation to the CWG Report

in a proposed rule. Dkt. No. 1, ¶¶ F–G. An email from DOE and a citation in the preamble are not final rules and so don't have an "effective date" to postpone. 5 U.S.C. § 553(d). Nor do Plaintiffs explain what it even means to "vacate" an internal email or a citation, which is not a rule or an order that may be challenged as agency action, or how that would redress an injury. This request appears to be gibberish, so it amounts to request for a prohibited advisory opinion relating to EPA's rulemaking.

## II.     The Clean Air Act Strips this Court of Jurisdiction to Censor EPA

This Court also lacks subject-matter jurisdiction to interfere with an ongoing Clean Air Act rulemaking because the Act strips district courts of jurisdiction. *See* 42 U.S.C. § 7607(b), (d)(8). For "procedural determinations" specifically relating to the contents of EPA's rulemaking docket, courts of appeals are "[t]he sole forum" for resolving disputes, and "[n]o interlocutory appeals shall be permitted." *Id.* § 7607(d)(8). Plaintiffs may seek relief against EPA in the U.S. Court of Appeals for the D.C. Circuit if and when EPA promulgates a final rule that includes the CWG Report, and they may make their FACA arguments then. But the Clean Air Act denies this Court jurisdiction over EPA's actions.

District courts, to be sure, generally have jurisdiction over claims arising under federal law, 28 U.S.C. § 1331, but a special statutory review scheme may displace that jurisdiction. *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 185 (2023). To decide whether such a review scheme displaces federal-question jurisdiction, courts must consider two questions. First, whether Congress's intent to preclude jurisdiction is "fairly discernible in the statutory scheme," and second, whether the claims "are of the type Congress intended to be reviewed within" the special

scheme. *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 212 (1994) (cleaned up). Here, the answer to both questions is yes.

The first question is easily answered when, as here, a statute strips jurisdiction "explicitly, providing in so many words that district court jurisdiction will yield." *Axon*, 598 U.S. at 185. Section 307(d)(8) of the Clean Air Act does that here by providing that:

> *The sole forum* for challenging *procedural determinations* made by the Administrator under this subsection *shall be in the United States court of appeals* for the appropriate circuit (*as provided in subsection (b)) at the time of the substantive review of the rule. No interlocutory appeals shall be permitted* with respect to such procedural determinations.

42 U.S.C. § 7607(d)(8) (emphases added).

Subsection (b), governing "substantive review of the rule," *id.*, also provides that "[a] petition for review of … any standard under section [202] of" the Act or "nationally applicable regulation[] promulgated, or final action taken, by the [EPA] Administrator under [the Act] may be filed *only* in the United States Court of Appeals for the District of Columbia," *id.* § 7607(b)(1) (emphasis added). A petition must be "filed within sixty days from the date notice of such promulgation, approval, or action appears in the Federal Register." *Id.* Only then may Plaintiffs sue in the D.C. Circuit, and only then may the D.C. Circuit review substantive or procedural flaws in a Clean Air Act rule.

Section 307(e), entitled "Other Methods of Judicial Review Not Authorized," confirms this. *Id.* § 7607(e). It reads, "[n]othing in [the Clean Air Act] shall be construed to authorize judicial review of regulations or orders of the Administrator under this [Act], except as provided in this section." *Id.* Indeed, Congress even took the controversial step of stripping district courts of jurisdiction to review Clean Air Act rules even in "civil or criminal proceedings for

enforcement." *Id.* § 7607(b)(2); *Adamo Wrecking Co. v. United States*, 434 U.S. 275, 289 (1978) (Powell, J., concurring) (noting constitutional questions). The point of Section 307(b) was to eliminate a "patchwork system" of review by district courts. *EPA v. Calumet Shreveport Refin., L.L.C.*, 145 S. Ct. 1735, 1743 (2025). Congress's intent to preclude district court jurisdiction is not just discernable, it leaps off the page.

Indeed, a few months ago, Plaintiffs agreed. When AmFree challenged a provision of the Clean Air Act on constitutional grounds in district court, Plaintiff Environmental Defense Fund intervened to argue that the Clean Air Act strips district courts of jurisdiction to consider *even constitutional challenges*, arguing that "[t]he Clean Air Act's exclusive jurisdictional regime is unambiguous." Br. in Support of Def.-Intervenors' Mot. to Dismiss at 14, *AmFree v. Zeldin*, 1:25-cv-00067 (W.D. Mich. Apr. 30, 2025), Dkt. No. 23. If it was unambiguous then, it is unambiguous now.

The only question left, then, is whether Plaintiffs' claims "are of the type Congress intended to be reviewed within" Section 307(d)'s special review scheme. *Thunder Basin*, 510 U.S. at 212 (cleaned up). They are. Section 307(d) governs "promulgation or revision of regulations under section [202] of this [Act]," 42 U.S.C. § 7607(d)(1)(K), and EPA's challenged receipt, consideration, and reliance upon the CWG Report all pertain to EPA's proposed rule to revise greenhouse gas standards for motor vehicles, *see* 90 Fed. Reg. at 36,296 & n.33 ("The statutory authority for this proposed action is … 42 U.S.C. 7521(a)(1)."). Accordingly, Plaintiffs' request to prohibit EPA from "using or relying on" the CWG Report, Dkt. No. 16, at 20, is, in part, a challenge to "procedural determinations made … under this subsection [(d)]," and in part, a

request for "substantive review of the rule" for compliance with FACA, and are thus precluded, 42 U.S.C. § 7607(b)(1), (d)(8).

If an injunction against "using or relying on" the CWG Report would require EPA to strike the report from its rulemaking docket, then this Court cannot grant Plaintiffs' request because it challenges procedural determinations made under subsection (d).[3] Subsection (d) prescribes rules for what EPA does with information submitted for its consideration. The provision requires EPA to maintain a public docket of all records, 42 U.S.C. § 7607(d)(4)(A), and to "[p]romptly upon receipt" place "all … documentary information on the proposed rule received from any person for inclusion in the docket during the comment period … in the docket," *id.* § 7607(d)(4)(B). So, when DOE submitted its CWG Report to EPA, subsection (d) gave EPA no choice but to docket it and keep it public.[4] Because an injunction against EPA "using" the CWG Report or an order somehow cancelling transmission of the Report to EPA would challenge a procedural determination made by EPA under subsection (d), Plaintiffs must seek review of this determination in the D.C. Circuit, after a final rule.

Likewise, the D.C. Circuit is the only forum for Plaintiffs to seek relief against EPA for "using or relying on" the Report in violation of law, *see* Dkt. No. 16, at 20, because that would amount to collateral "substantive review of the rule," 42 U.S.C. § 7607(d)(8). Any "substantive review of the rule" must take place "as provided in subsection (b)," *id.*, that is, by petition for

---

[3] Plaintiffs' request for relief against "transmitting" of the CWG Report to EPA, Dkt. No. 16, at 19, if it is intelligible at all, is also a request for relief against EPA. Since the transmission has already happened, this Court would need to order EPA to remove the report from its docket. That is a procedural determination that must be brought in the D.C. Circuit. *See* 42 U.S.C. § 7607(b)(1), (d)(8).

[4] *See* CWG Report (May 27, 2025), https://www.regulations.gov/document/EPA-HQ-OAR-2025-0194-0060 (posted to Docket No. EPA-HQ-OAR-2025-0194 on July 29, 2025).

review in the D.C. Circuit after EPA publishes a final rule, *id.* § 7607(b)(1); *see also id.* § 7607(e). District courts cannot review proposed rules under the Clean Air Act for compliance with governing law. *In re Murray Energy Corp.*, 788 F.3d at 333–34. This Court thus lacks jurisdiction to award relief against EPA.

Applying the *Thunder Basin* factors is unnecessary because the text of the Clean Air Act answers the "ultimate question" of "how best to understand what Congress has done." *Axon*, 598 U.S. at 186. But the same conclusion would follow from the *Thunder Basin* factors. The three factors are (1) whether "precluding district court jurisdiction" would "foreclose all meaningful judicial review of the claim," (2) whether the claim is "wholly collateral to the statute's review provisions," and (3) whether the claim is "outside the agency's expertise." *Id.* (cleaned up). No one of these factors are determinative. *Id.*

The first factor points to the D.C. Circuit because, far from foreclosing judicial review, requiring Plaintiffs to bring their claims in that forum would allow them to get relief against EPA using the CWG Report in the only way that it could concretely harm Plaintiffs, i.e., in a final rule. The second factor favors review in the D.C. Circuit too because Plaintiffs' claims are not "wholly collateral," but central to Section 307(d)'s command that challenges to EPA's procedural determinations in motor vehicle rulemakings be brought only in the D.C. Circuit and Section 307(b)'s requirement that substantive review occur in the D.C. Circuit. The third factor also supports judicial review in the D.C. Circuit because Plaintiffs' claims are within, not "outside the agency's expertise." EPA has expertise in determining whether a report it receives violates FACA. EPA regularly receives advisory committee reports and is subject to statutory requirements governing what it must do with "documentary information" it receives "from any person" during

the rulemaking process. 42 U.S.C. § 7607(d)(4)(B)(i). No matter how this Court analyzes Plaintiffs' requests for relief against EPA, the result is the same; this Court lacks jurisdiction to grant relief against EPA.

The implications of the remedies here are staggering because *every* argument by Plaintiffs could be raised in ongoing rulemaking proceedings and addressed before any final agency action. *See infra* Part V. Instead of following the process established by Congress under the Clean Air Act, however, Plaintiffs ask this Court to replace notice-and-comment with judicial review. There is no limiting principle to that request. And even broader principles are at stake than EPA's ongoing rulemakings. EPA routinely considers reports and studies from universities, non-profits, trade associations, and other outside entities—which under plaintiffs' theory, might be recharacterized as "FACA committees." *See, e.g., Pebble Ltd. P'ship v. EPA*, No. 3:14-CV-0171-HRH, 2015 WL 12030515, at *4–6 (D. Alaska June 4, 2015). If district courts could enjoin EPA from considering such materials mid-rulemaking, then every proposed rule would be vulnerable to collateral attack in multiple courts, producing conflicting injunctions and regulatory paralysis. Congress anticipated this risk and channeled review into a single forum—the D.C. Circuit—after final action. 42 U.S.C. § 7607(b), (d)(8). Plaintiffs' requested injunction would invert that structure and replace orderly appellate review with nationwide litigation over every advisory report EPA touches.

## III.    The APA or Mandamus Do Not Allow Censorship to Remedy FACA Violations

"FACA contains no private right of action," nor does it create judicial remedies. *Union of Concerned Scientists v. Wheeler*, 954 F.3d 11, 17 (1st Cir. 2020). Rather, FACA sets out a detailed scheme of political supervision and internal management by actors in the political branches, including congressional committees, 5 U.S.C. § 1004, the President, *id.* § 1005, agency heads, *id.*

12

§ 1007, and the Government Services Administrator, *id.* It never mentions courts, let alone empowers courts to act as censors.

By misreading the APA's right of review, 5 U.S.C. § 702, to create a freewheeling cause of action, federal courts have turned FACA into a judicially enforceable mandate. *Union of Concerned Scientists*, 954 F.3d at 17.[5] But the APA is an awkward fit for FACA: the APA is not designed to control advice, but rather to control agency rules and orders binding the public with legal consequences, such as orders imposing a "sanction" or awarding "relief" from legal prohibitions. 5 U.S.C. §§ 551(4), (6), (10), (11), (13), 701(b)(2), 706. And the APA does not authorize review of "abstract decision[s] apart from specific agency action, as defined in the APA." *Biden v. Texas*, 597 U.S. 785, 809 (2022); *see also Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004).

If a FACA violation fits the term "agency action" at all, then, it fits only as a "failure to act." 5 U.S.C. § 551(13). Review of failure to act, however, is sharply limited. A court may "compel agency action unlawfully withheld," *id.* § 706(1), but only if a plaintiff seeks to compel a discrete action that the agency is required to take. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66–67 (2004). This form of judicial review does not allow "pervasive oversight by federal courts." *Id.* Thus, plaintiffs may seek to compel discrete actions that an agency is required to take under FACA, what plaintiffs seek here is the opposite: not disclosure, but censorship—an order forbidding EPA from considering advisory materials already docketed. Nothing in FACA's text or structure

---

[5] *But see* Caleb Nelson, *"Standing" and Remedial Rights in Administrative Law*, 105 Va. L. Rev. 703, 708 (2019) (arguing that reading the APA to create a freewheeling cause of action against agencies is wrong and "a marked departure from prior understandings of remedial rights in administrative law").

authorizes courts to control how agencies weigh information. The statute's only cognizable judicial remedy is to open the process to sunlight, not to close the government's eyes to information.

Under the APA, therefore, this Court may have authority to compel some of the actions identified in Plaintiffs' complaint if they have been unlawfully withheld by DOE. *See* Dkt. No. 1, ¶ 101. Nothing in FACA, however, creates a mandatory duty for DOE or EPA to censor the CWG Report or delete citations in ongoing rulemakings, so nothing in the APA or mandamus authorizes this remedy.

## IV.    Censorship Injunctions Are Not Within this Court's Equitable Jurisdiction

This Court also has no equitable jurisdiction to grant Plaintiffs' requested injunction prohibiting "DOE, EPA, and their officials from using or relying on the … CWG Report," Dkt. No. 16, at 20, because the equity jurisdiction Congress has granted federal courts does not include such a remedy. The power of federal courts to issue equitable remedies comes from the Judiciary Act of 1789, which gave federal courts the equity jurisdiction that "the High Court of Chancery in England" possessed "at the time of the adoption of the Constitution and the enactment of the original Judiciary Act." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318 (1999). So, federal courts today can grant only equitable relief that "was available in the High Court of Chancery in England at the time of the founding" or is "sufficiently 'analogous'" to it. *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2551 (2025). An injunction designating the CWG Report a forbidden book meets neither test.

At the founding, the English High Court of Chancery could not enjoin an entity from using, relying on, or publicizing a writing on grounds that the writing was somehow unlawful. For example, it was well-settled that "[e]quitable jurisdiction does not extend to cases of libel or

slander." John Norton Pomeroy, I *Equity Jurisprudence and Equitable Remedies* § 320, at 545 n.8 (3d ed. 1905). Plaintiffs have not identified any historical equitable remedy that resembles their requested censorship injunction against DOE and EPA using or relying upon the published CWG Report for the alleged FACA violations of the CWG (which EPA was not even involved in creating), and the historical fact that equity did not apply to cases involving publications makes it unlikely that any analogous remedy existed.

That possibility shrinks to zero considering that "relief in equity is remedial, not penal," *Hartford-Empire Co. v. United States*, 323 U.S. 386, 435 (1945), and "since the purpose of an injunction is remedial, not punitive, if the effect of granting relief is to penalize defendants …, it may be denied" for that reason, 11A Wright & Miller's Federal Practice and Procedure § 2942 (3d ed. updated May 21, 2025) (footnotes omitted). Because an injunction against DOE or EPA "using or relying on" the CWG Report doesn't redress an injury but rather seeks to punish DOE and EPA for alleged past FACA violations, no such remedy is available in equity. The equity jurisdiction of federal courts does not include power to issue an injunction that punishes an agency by censoring its use of a public report. *Peña*, 147 F.3d at 1022.

## V.    The Asserted Harms Are Not Immediate or Irreparable

Plaintiffs are also not entitled to an anti-use injunction because the harm they allege is not immediate or irreparable. Plaintiffs claim to suffer harm from "EPA's and DOE's real-time reliance on the CWG's work." Dkt. No. 16, at 17. But that "reliance" doesn't injure Plaintiffs unless and until it is manifested in some action by either agency that harms Plaintiffs' mission or members, and Plaintiffs have identified no such impending action. EPA's proposed rule to repeal greenhouse gas standards for motor vehicles does not harm Plaintiffs because it is only a proposal.

15

A final rule is at least months and possibly more than a year away, if it ever comes. Thus, Plaintiffs have not alleged *any* present or imminent harm from DOE or EPA "reliance" on the CWG Report, not to mention irreparable harm that could justify preliminary injunctive relief in this case.

Moreover, the Clean Air Act's "[a]pplicable rulemaking procedures afford ample opportunity to correct infirmities resulting from improper advisory committee action prior to the proposal." *See Nat'l Nutritional Foods Ass'n v. Califano*, 603 F.2d 327, 336 (2d Cir. 1979) (Friendly, J.). Plaintiffs may raise objections to the CWG Report or EPA's reliance on it during the still-open comment period on the proposed rule, and EPA will have to respond to the comments if they are "significant." 42 U.S.C. § 7607(d)(6)(B). The Second Circuit, in an opinion by Judge Friendly, has held that this opportunity to comment makes a violation of FACA harmless. *Califano*, 603 F.2d at 336. Plaintiffs have other options, too. They may file a petition for reconsideration of EPA's final rule if they discover new relevant information of central importance, 42 U.S.C. § 7607(d)(7)(B), and they may challenge EPA's rule if and when it is final in the D.C. Circuit, *id.* § 7607(b)(1), where they may raise alleged FACA violations. Plaintiffs have many options to avoid a speculative distant harm, so this Court should reject Plaintiffs' unusual requests for injunctive relief against "relying on" a report.[6]

---

[6] This alternative path also fatally undermines any argument for *ultra vires* or mandamus review of EPA actions. *See Nat'l Regul. Comm'n v. Texas*, 605 U.S. 665, 682 (2025) ("ultra vires review is not available because Texas and Fasken had an alternative path to judicial review"); *Diaz v. Matal*, 268 F. Supp. 3d 267, 274 (D. Mass. 2017) ("To be entitled to mandamus relief, plaintiff must establish that he has … no other adequate remedy.") (cleaned up).

## VI.    Postponing a Comment Deadline Is Not Appropriate

In their complaint, Plaintiffs also asked this Court to "preliminarily and permanently enjoin the current deadlines for public comments on" EPA's proposed rule, Dkt. No. 1, ¶ K, and compel EPA to keep the public comment period open "for at least 45 days from the date that Defendants release all records and minutes," *id.* ¶ L. Plaintiffs never mention that specific request for relief in their motion, *see* Dkt. No. 16, at 19–21, so the remedy is not before this Court. But regardless, as far as AmFree is aware, "no court has ever granted such an injunction." *S. Env't L. Ctr. v. Council on Env't Quality*, 446 F. Supp. 3d 107, 115 (W.D. Va. 2020). This Court should not be the first. Doing so here would be particularly egregious because the comment period required under the Clean Air Act is "a reasonable period … of at least 30 days," which EPA's proposed rule satisfies. 42 U.S.C. § 7607(h). An order from this Court extending the comment period beyond the time allotted by EPA would collaterally attack the agency's substantive determination under the Clean Air Act that the comment period is reasonable, and the Act strips this Court of subject-matter jurisdiction to second-guess that judgment by EPA. *See supra* Part II.

### <u>CONCLUSION</u>

This Court should reject Plaintiffs' attempt to censor public scientific information and interfere with ongoing EPA rulemakings.

Dated: September 3, 2025            Respectfully submitted,

_/s/ George W. Vien_
George W. Vien (BBO No. 547411)
Pietro A. Conte (BBO No. 707055)
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street, Suite 1600
Boston, Massachusetts 02110
T: (617)-720-2880
F: (617)-720-3554
gwv@dcglaw.com
pac@dcglaw.com

_/s/ James R. Conde_
Michael Buschbacher (pending _pro hac vice_ admission)
James R. Conde (pending _pro hac vice_ admission)
BOYDEN GRAY PLLC
800 Connecticut Ave. NW, Suite 900
Washington, D.C. 20006
T: (202)-955-0620
mbuschbacher@boydengray.com
jconde@boydengray.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), on September 3, 2025.

_/s/ George W. Vien_
George W. Vien