**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

ENVIRONMENTAL DEFENSE FUND, *et al.*

              Plaintiffs,

     v.

CHRISTOPHER WRIGHT, in his official capacity
as Secretary of Energy, *et al.*

              Defendants.

Case No. 1:25-cv-12249-WGY

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION OR, IN THE ALTERNATIVE, FOR SUMMARY
JUDGMENT OR CONSOLIDATION UNDER RULE 65(A)(2)**

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

I.     Statutory Background ............................................................................................... 2

II.    Factual and Procedural Background ...................................................................... 3

      A.    The Climate Working Group ................................................................. 3

      B.    Procedural History ................................................................................. 5

STANDARDS OF REVIEW ................................................................................................... 6

ARGUMENT ........................................................................................................................... 7

I.     The Court Should Deny Plaintiffs' Motion for Preliminary Injunction ............................ 7

      A.    Plaintiffs Are Unlikely to Succeed on the Merits of Their FACA Claims ............. 7

            1.    Plaintiffs fail to establish that the CWG is an entity covered by FACA .............................................................. 7

            2.    Most of Plaintiffs' claims are moot because the CWG has been dissolved ...................................................... 11

      B.    Plaintiffs Have Not Shown Any Imminent Irreparable Harm ............................... 13

      C.    The Balance of Equities and Public Interest Favor Defendants .......................... 16

      D.    Plaintiffs' Requested Preliminary Injunction is Overbroad.................................. 17

CONCLUSION........................................................................................................................ 20

## TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*ACLU of Mass. v. U.S. Conf. of Cath. Bishops*,
  705 F.3d 44 (1st Cir. 2013) ................................................................. 11

*Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*,
  997 F.2d 898 (D.C. Cir. 1993) ............................................................... 8

*Cal. Forestry Ass'n v. U.S. Forest Serv.*,
  102 F.3d 609 (D.C. Cir. 1996) ............................................................. 19

*Cargill, Inc. v. United States*,
  173 F.3d 323 (5th Cir. 1999) ............................................................... 18

*Ctr. for Biological Diversity v. Tidwell*,
  239 F. Supp. 3d 213 (D.D.C. 2017) ...................................................... 12

*Cummock v. Gore*,
  180 F.3d 282 (D.C. Cir. 1999) ............................................................. 12

*Fed. Election Comm'n v. Akins*,
  524 U.S. 11 (1998) ............................................................................... 14

*Fertilizer Inst. v. EPA*,
  938 F. Supp. 52 (D.D.C. 1996) ............................................................ 16

*Freedom Watch, Inc. v. Obama*,
  859 F. Supp. 2d 169 (D.D.C. 2012) ..................................................... 12

*Gonzalez-Droz v. Gonzalez-Colon*,
  573 F.3d 75 (1st Cir. 2009) ................................................................. 13

*Hartford-Empire Co. v. United States*,
  323 U.S. 386 (1945) ............................................................................. 19

*Heartwood, Inc. v. United States Forest Service*,
  431 F. Supp. 2d 28 (D.D.C. 2006) ................................................. 10, 11

*NAACP Legal Def. & Ed. Fund, Inc.*, v. *Barr*,
  496 F. Supp. 3d 116 (D.D.C. 2020) ................................................ 16, 20

*NAACP Legal Def. & Educ. Fund, Inc*. v. *Barr*,
  2020 WL 6392777 (D.D.C. Nov. 2, 2020) ............................................ 16

*Nader v. Baroody*,
    396 F. Supp. 1231 (D.D.C. 1975) ................................................................. 7, 8, 10

*Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Priv. Sector Surv. on Cost Control*,
    557 F. Supp. 524 (D.D.C. 1983) *aff'd*, 711 F.2d 1071 (D.C. Cir. 1983). .............................. 8, 9

*Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Priv. Sector Surv. on Cost Control*,
    711 F.2d 1071 (D.C. Cir. 1983) ................................................................. 9, 15

*National Nutritional Foods Association v. Califano*,
    603 F.2d 327 (2d Cir. 1979) ................................................................. 18, 19

*Nat. Res. Def. Council ("NRDC") v. Pena*,
    147 F.3d 1012 (D.C. Cir. 1998) ................................................................. *passim*

*Nat. Res. Def. Council, Inc. v. Herrington*,
    637 F. Supp. 116 (D.D.C. 1986) ................................................................. 10

*Nat'l Ass'n of Consumer Advocs. v. Uejio*,
    521 F. Supp. 3d 130 (D. Mass. 2021) ................................................................. 13, 16, 18

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................................. 17

*Nw. Ecosystem All. v. Office of U.S. Trade*,
    *Reps.*, 1999 WL 33526001 (W.D. Wash. Nov. 9, 1999) ................................................................. 20

*Nw. Forest Res. Council v. Espy*,
    846 F. Supp. 1009 (D.D.C. 1994) ................................................................. 20

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ................................................................. 15

*Pruitt v. Resurgent Capital Servs., LP*,
    610 F. Supp. 3d 775 (D. Md. 2022) ................................................................. 14

*Pub. Citizen v. Dep't of Just.*,
    491 U.S. 440 (1989) ................................................................. 2, 3, 8, 14

*Pub. Citizen v. Nat'l Advisory Comm. on Microbiological Criteria for Foods*,
    886 F.2d 419 (D.C. Cir. 1989) ................................................................. 15

*Pub. Emps. for Env't Resp. v. Nat'l Park Serv.*,
    605 F. Supp. 3d 28 (D.D.C. 2022) ................................................................. 8

*San Francisco Real Est. Invs. v. Real Est. Inv. Tr. of Am.*,
    692 F.2d 814 (1st Cir. 1982) ........................................................................ 14

*Seattle Audubon Soc'y v. Lyons*,
    871 F. Supp. 1291 (W.D. Wash. 1994), *aff'd*, 80 F.3d 1401 (9th Cir. 1996). .................. 19, 20

*Sindicato Puertorriqueño de Trabajadores v. Fortuño*,
    699 F.3d 1 (1st Cir. 2012) .............................................................................. 7

*Thomas v. Warden, Fed. Corr. Inst., Berlin*,
    596 F. Supp. 3d 331 (D.N.H. 2022) ................................................................ 7

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ..................................................................................... 14

*Unión de Empleados de Muelles de Puerto Rico, Inc. v. Int'l Longshoremen's Ass'n, AFL-CIO*,
    884 F.3d 48 (1st Cir. 2018) ........................................................................... 11

*Union of Concerned Scientists v. Wheeler*,
    954 F.3d 11 (1st Cir. 2020) ............................................................................ 3

*Webb v. Injured Workers Pharmacy, LLC*,
    72 F.4th 365 (1st Cir. 2023) .......................................................................... 14

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) .............................................................................. *passim*

*Young v. U.S. EPA*,
    2022 WL 474145 (D.D.C. Feb. 16, 2022) ......................................................... 16

**Statutes**

5 U.S.C. app. § 2 ........................................................................................... 3

5 U.S.C. app. § 3 ................................................................................... 2, 3, 8

5 U.S.C. app. § 5 ........................................................................................... 3

5 U.S.C. app. § 9 ........................................................................................... 3

5 U.S.C. app. § 10 ........................................................................................ 12

5 U.S.C. § 1006 ............................................................................................. 3

42 U.S.C. § 7521 ........................................................................................... 5

42 U.S.C. § 7607 ................................................................................................................ 5

**Rules**

Fed. R. Civ. P. 56 ............................................................................................................. 20

Fed. R. Civ. P. 65 ............................................................................................................. 18

**Regulations**

41 C.F.R. § 102–3.40 ..................................................................................................... *passim*

41 C.F.R. § 102-3.160 ........................................................................................................ 3, 4

Federal Advisory Committee Management,
    66 Fed. Reg. 37728 (July 19, 2001) ................................................................................ 3

Notice of Availability: A Critical Review of Impacts of Greenhouse Gas Emissions on the U.S.
    Climate, 90 Fed. Reg. 36150 (Aug. 1, 2025) ................................................................. 4

Reconsideration of 2009 Endangerment Finding and Greenhouse Gas Vehicle Standards,
    90 Fed. Reg. 36288 (Aug. 1, 2025) .......................................................................... 4, 20

**Other Authorities**

Andy Su, *Testimony re: Reconsideration of EPA Clean Car and Truck standards* (Aug. 20,
    2025) available at https://perma.cc/9JJZ-VECN ........................................................... 5

Rachel Cleetus, *I Testified at the EPA Hearing on the Repeal of the Endangerment Finding*
    (Aug. 22, 2025), available at https://perma.cc/V8MD-LR2L. Fed. Reg. 39345 ........................ 5

## INTRODUCTION

Plaintiffs invoke the Federal Advisory Committee Act ("FACA"), and contend that the Department of Energy ("DOE") and Secretary Christopher Wright violated its requirements in establishing the now-dissolved DOE Climate Working Group ("CWG"). But the true goal of their lawsuit is not promoting openness and transparency in public decision-making. While Plaintiffs complain that they only recently learned of the CWG's existence, DOE released its Report publicly weeks ago, and the Government provided opportunities for public comment on the CWG's work. Instead, as the introduction to their Complaint makes clear, Plaintiffs' objective is to delay and prematurely undermine a contemplated future policy decision by a different agency: namely, EPA's proposed reconsideration of its 2009 greenhouse gas endangerment finding. Their sole hook for that relief is that EPA cited the CWG report—among numerous other sources—in a notice of proposed rulemaking ("NPRM"). That gambit fails at every level. Plaintiffs' requested relief is foreclosed by Article III, the scope of FACA, and equitable principles.

More broadly, Plaintiffs' Motion for Preliminary Injunction or, in the Alternative, For Summary Judgment or Consolidation Under Rule 65(a)(2), ECF Nos. 15-16, fails for at least three different reasons. *First*, Plaintiffs fail to establish that they are likely to succeed on the merits, because the CWG is not an entity covered by FACA; the statutory requirements are inapplicable to groups assembled to exchange *facts or information* with federal officials. In all events, most of Plaintiffs' claims are now moot due to the CWG's dissolution.

*Second*, Plaintiffs have identified no imminent irreparable harm requiring judicial intervention at this early juncture. They face no harm (irreparable or otherwise) from the prospect of ongoing work performed by the CWG because the group has already been dissolved. And EPA's upcoming September 22, 2025, deadline for public comment on its NPRM poses no harm, because Plaintiffs are free to raise their concerns about the CWG report via public comment. Nor would any alleged harm stemming from an inability to comment be irreparable. Plaintiffs request that this

Court ultimately issue declaratory relief finding the CWG unlawful and an injunction preventing Defendants from relying on its work. Either remedy would fully repair any injury suffered by Plaintiffs from the FACA violations they allege if they ultimately prevail on the merits, rendering a preliminary injunction unnecessary.

*Third*, Plaintiffs have not shown that the balance of the equities or the public interest weighs in their favor. These factors favor allowing the Government to use the information provided by the scientists of the CWG, promoting dialogue based on honest scrutiny and scientific transparency in the public sphere, and not prematurely pretermitting an ongoing rulemaking process.

Even if the Court were inclined to grant some relief, the remedies sought by Plaintiffs are overbroad. Even when a FACA violation is proven on the merits, injunctions preventing the use of committee work are a highly disfavored remedy, as declaratory relief can fully remedy all injuries alleged. Plaintiffs have certainly shown no entitlement to such an extraordinary remedy at the preliminary injunction stage. And because the CWG has been dissolved, no practical purpose is served by an order compelling it to comply with FACA's procedural requirements going forward. Nor is extension of the comment period on EPA's NPRM warranted or proper. Plaintiffs cannot circumvent the Clean Air Act or APA finality requirements by alleging a FACA violation in order to indefinitely delay a pending rulemaking with which they disagree.

## **BACKGROUND**

### I.    **Statutory Background**

FACA, 5 U.S.C. app. 2 §§ 1–15, imposes a variety of requirements on "advisory committee[s]," which are defined to include "any committee . . . which is . . . established or utilized by the President, or . . . by one or more agencies, in the interest of obtaining advice or recommendations." 5 U.S.C. app. § 3(2). But FACA was not intended to apply to every formal and informal consultation between an agency and a group of experts. *Pub. Citizen v. Dep't of Just.*, 491 U.S. 440, 453 (1989). As implementing regulations promulgated by the General Services

Administration ("GSA") make clear, groups "assembled to exchange facts or information with a Federal official(s)" are not covered by FACA. 41 C.F.R. § 102–3.40(e).[1] The purpose of FACA "was to ensure that new advisory committees be established only when essential and that their number be minimized; that they be terminated when they have outlived their usefulness; that their creation, operation, and duration be subject to uniform standards and procedures; that Congress and the public remain apprised of their existence, activities, and cost; and that their work be exclusively advisory in nature." *Pub. Citizen*, 491 U.S. at 440 (quoting 5 U.S.C. app. § 2(b)). *See also Union of Concerned Scientists v. Wheeler*, 954 F.3d 11, 16-17 (1st Cir. 2020).

FACA places limits on the creation and operation of bodies that fall within the definition of "advisory committee." 5 U.S.C. app. § 3(2). Before an advisory committee "meet[s] or take[s] any action," a charter must be filed. *Id.* § 9(c). In addition, advisory committees must announce their upcoming meetings in the Federal Register; hold their meetings in public; allow interested persons to attend; keep detailed minutes of each meeting; and publicly disclose certain documents. *Id.* §§ 10(a)-(c), 11. "Preparatory work"—which includes work "analyz[ing] relevant issues and facts in preparation for . . . a [] meeting of the advisory committee" and drafting position papers "for deliberation by the advisory committee"—is exempt from FACA's meeting and recordkeeping requirements. 41 C.F.R. § 102-3.160(a). An advisory committee must also "be fairly balanced in terms of the points of view represented" and may "not be inappropriately influenced by the appointing authority or by any special interest." *Id.* § 5(b)(2), (b)(3) & (c).

## II.    Factual and Procedural Background

### A.    The Climate Working Group

In March 2025, Secretary Wright invited five scientists to participate in a DOE Climate Working Group, to produce a report that would "encourage a more thoughtful and science-based conversation about climate change and energy[]" by "critically review[ing] the current state of

---

[1] GSA has authority for administering FACA and issuing regulatory guidance. *See* 5 U.S.C. § 1006; Federal Advisory Committee Management, 66 Fed. Reg. 37728 (July 19, 2001).

climate science, with a focus on how it relates to the United States." CWG Report at viii, x, ECF No. 17-1. Members were selected "for their rigor, honesty, and willingness to elevate the debate[,]" and Secretary Wright "exerted no control over their conclusions." *Id*. The CWG members undertook their work "on the condition that there would be no editorial oversight by the Secretary, the Department of Energy, or any other government personnel[,]" and that "condition [w]as [] honored throughout the process and the writing team [] worked with full independence." *Id*. at x.

In mid-July, a draft of the CWG report was circulated to a team of "scientists/ administrators employed by the DOE" for technical review and comment resulting in "a number of fairly minor changes to the Report in response to the reviews," including the addition of "a number of references, and . . . respon[ses] in detail to their comments." Judith Curry, *New Climate Assessment Report from US DOE* (July 29, 2025) ("Curry Blog"), ECF No. 17-6 at 4. A draft of the CWG Report was also sent to EPA on or around May 28, 2025. Reconsideration of 2009 Endangerment Finding and Greenhouse Gas Vehicle Standards, 90 Fed. Reg. 36288, 36292 (Aug. 1, 2025). On July 29, 2025, DOE published the CWG Report, titled *A Critical Review of Impacts of Greenhouse Gas Emissions on the U.S. Climate*, and invited the public to submit comments via the Federal Register. *See* Notice of Availability: A Critical Review of Impacts of Greenhouse Gas Emissions on the U.S. Climate, 90 Fed. Reg. 36150 (Aug. 1, 2025). After DOE announced availability of the CWG Report on its website and requested public comments, *id.*, the CWG was formally dissolved by Secretary Wright on September 3, 2025. *See* Defs.' Ex. 1.

On August 1, 2025, EPA published an NPRM in the Federal Register that proposed to rescind its 2009 finding that greenhouse gas emissions from new motor vehicles and engines contribute to air pollution that endangers public health and welfare ("2009 Endangerment Finding") and repeal certain vehicle and engine emission standards promulgated under Clean Air Act section 202(a). 90 Fed. Reg. 36150 (citing 42 U.S.C. § 7521). EPA solicited public comment on whether it should take such action and, if so, on which of several independent bases the agency

should rely. The proposed rule stated that the Administrator "consider[ed] and evaluat[ed]" "the most recently available science," including information discussed in a CWG report received from DOE and "available assessments by the U.S. Government and relevant international bodies, including the Third, Fourth, and Fifth National Climate Assessments (NCAs) reported by the U.S. Global Change Research Program (USGCRP) and the Fifth Assessment Report (AR5) and Sixth Assessment Report (AR6) by the United Nations Intergovernmental Panel on Climate Change (IPCC)." *Id.* at 36,298, 36,311. In seeking comment, the proposed rule cited to discussion in the CWG report and at least twenty other distinct sources. *See generally id*.

EPA is currently accepting public comment on its proposed rule and recently extended its public comment period through September 22, 2025. *See* 90 Fed. Reg. 39345. As required by Clean Air Act section 307(d), EPA held a public hearing from August 19 to 22 to give interested parties an opportunity to present oral testimony that will be considered together along with any written comments. 42 U.S.C. § 7607(d). Notably, Plaintiffs in this action presented at the hearing and submitted related materials. Environmental Defense Fund presented testimony by two speakers urging EPA not to adopt any aspect of the proposal and arguing that the CWG report is unlawful and unreliable. Similarly, Union of Concerned Scientists presented testimony that EPA cannot and should not rely on the CWG report. Both issued press releases summarizing and linking to their testimony at the public hearing. *See* Andy Su, *Testimony re: Reconsideration of EPA Clean Car and Truck standards* (Aug. 20, 2025) available at https://perma.cc/9JJZ-VECN; Rachel Cleetus, *I Testified at the EPA Hearing on the Repeal of the Endangerment Finding* (Aug. 22, 2025), available at https://perma.cc/V8MD-LR2L.

### B.     Procedural History

Plaintiffs filed suit on August 12, 2025, naming Secretary Wright, Administrator Zeldin, DOE, EPA, and the CWG as Defendants. Compl., ECF No. 1. Plaintiffs claim Secretary Wright and DOE violated FACA by forming and running the CWG. Plaintiffs specifically contend that

the CWG constitutes a FACA advisory committee, and that Defendants violated: (1) the procedural requirements for establishing a FACA committee, *id.* ¶¶ 98-104; (2) the open meeting requirements for FACA committees, id. ¶¶ 106-110; (3) FACA's records access requirements, *id.* ¶¶ 112-117; and (4) the requirement that a FACA committee's membership be "fairly balanced" and that "appropriate provisions" be made to prevent "inappropriately influence[]," *id.* ¶¶ 101, 119-122. Plaintiffs assert that these alleged violations of FACA give rise to a claim under the APA. *Id.* ¶ 18. In the alternative, they seek to maintain this action under the Mandamus Act and through *ultra vires* review. *Id.* ¶¶ 124-131.

On August 14, 2025, Plaintiffs filed their motion for preliminary injunction. Plaintiffs seek to preliminarily enjoin the CWG from meeting or conducting any business; enjoin Defendants from "relying on or citing to the CWG Report and any other recommendations, advice, or reports of the CWG, in any agency actions or proceedings;" and to "preliminarily set aside and stay" the establishment, operation, and utilization of the CWG. *See* Pls.' Proposed Order at 1-2, ECF No. 15-1. Plaintiffs also seek mandatory injunctive relief, requiring Defendants to affirmatively produce FACA-covered records of the CWG, and to extend the EPA and DOE public comment periods indefinitely, until the alleged FACA violations are remedied. *Id.*

## STANDARDS OF REVIEW

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A "plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. "To demonstrate likelihood of success on the merits, plaintiffs must show 'more than mere possibility' of success—rather, they must establish a 'strong likelihood' that they will ultimately prevail." *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 10 (1st Cir.

2012) (per curiam). Likewise, a preliminary injunction cannot issue based on *possible* injury. Rather, plaintiffs must establish that irreparable harm is "*likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. Where, as here, plaintiffs seek to alter the status quo through a disfavored mandatory injunction, the "moving party must make an even stronger showing of entitlement to relief than is typically required." *Thomas v. Warden, Fed. Corr. Inst., Berlin*, 596 F. Supp. 3d 331, 336-37 (D.N.H. 2022) (citation omitted).

## ARGUMENT

### I.    The Court Should Deny Plaintiffs' Motion for Preliminary Injunction

#### A.    Plaintiffs Are Unlikely to Succeed on the Merits of Their FACA Claims

##### 1.    Plaintiffs fail to establish that the CWG is an entity covered by FACA

Plaintiffs' motion fails at the threshold because they fail to establish that the CWG is covered by FACA.[2] As GSA regulations explain, "[g]roups assembled to exchange facts or information with a Federal official(s)" are not covered by FACA. 41 C.F.R. § 102-3.40(e). This is because "[e]xamination of [FACA] as a whole, and the indications found there, confirms the legislative history, and points to the conclusion that Congress was concerned with advisory committees formally organized which the President or an executive department or official directed to make recommendations on an identified governmental policy for which specified advice was being sought." *Nader v. Baroody*, 396 F. Supp. 1231, 1234 (D.D.C. 1975). The plain text of the statute confirms this understanding; to be covered by FACA, a group must be "established or utilized" by the Government "in the interest of obtaining advice or recommendations." 5 U.S.C. app. § 3(2). "That definition has been interpreted narrowly." *Pub. Emps. for Env't Resp. v. Nat'l Park Serv.*, 605 F. Supp. 3d 28, 51 (D.D.C. 2022). FACA was "[not] intended to cover every

---

[2] As addressed in Defendants' concurrently filed partial motion to dismiss, Plaintiffs' claims against EPA and Administrator Zeldin also independently fail for lack of subject matter jurisdiction and failure to state a claim, and so should be dismissed regardless of whether FACA applies to the CWG.

formal and informal consultation between the President or an Executive agency and a group rendering advice." *Pub. Citizen*, 491 U.S. at 453. Given these strict criteria, "it is a rare case when a court holds that a particular group is a FACA [] committee over the objection of the executive branch." *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898, 914 (D.C. Cir. 1993).

The CWG is not covered by FACA because it was created and used to "exchange facts or information" with DOE, 41 C.F.R. § 102–3.40(e), not to "make recommendations on an identified governmental policy for which specified advice was being sought." *Nader*, 396 F. Supp. at 1234. The CWG Report itself makes this clear, explaining that Secretary Wright asked the group to "critically review the current state of climate science, with a focus on how it relates to the United States," "to encourage a more thoughtful and science-based conversation about climate change and energy." CWG Report at viii. The CWG itself understood its goal to be the creation of "a report on issues in climate science relevant for energy policymaking, including evidence and perspectives that challenge the mainstream consensus." *Id*. at x. The report produced by the CWG evidences a factual focus: it "reviews scientific certainties and uncertainties in how anthropogenic carbon dioxide ($CO_2$) and other greenhouse gas emissions have affected, or will affect, the Nation's climate, extreme weather events, and selected metrics of societal well-being." *Id*. at ix.

In an attempt to stretch FACA to cover the CWG, Plaintiffs note that CWG saw its work as an explanation of "climate science relevant to energy policymaking." Pls.' Mem. at 9, ECF No. 16 (quoting CWG Report at ix). But *relevance* to policy is not the test; all facts and information are *relevant* to policy. Rather, courts have observed that task forces responsible for "gathering information, developing work plans, performing studies, drafting reports and even discussing preliminary findings with agency employees" were nevertheless not FACA advisory committees because they did not produce "final recommendations." *Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Priv. Sector Surv. on Cost Control*, 557 F. Supp. 524, 529 (D.D.C. 1983), *aff'd*, 711 F.2d 1071 (D.C. Cir. 1983). In *National Anti-Hunger Coalition*, the court found it particularly

compelling that the group in question "lacked authority to do so." *Id.* at 530. The same is true here. *See* CWG Report at viii ("That's why I commissioned this report: to encourage a more thoughtful and science-based conversation about climate change and energy").

Read in context, many of the alleged "recommendations" identified by Plaintiffs can be more accurately viewed as instances where the CWG merely sought to characterize existing scientific conclusions or highlight the relative reliability of particular facts or information provided in their report based on their research. *See* Pls.' Mem. at 9-10 (citing CWG Report at 25, 48, 116, 125). For instance, Plaintiffs call attention to a portion of the CWG Report discussing data on hurricanes and tropical cyclones. Plaintiffs argue that the CWG's identification of Atlantic basin hurricane data as "'most relevant to U.S. policymakers'" constitutes "advice or recommendation" under FACA. Pls.' Mem. at 10 (citing CWG Report at 48). But read in full, this paragraph of the Report merely explains the CWG's observation that Atlantic basin data is more reliable because it "extends further back than in the other ocean basins." CWG Report at 48. The CWG's sentence highlighting the reliability of one particular source of data over others does not transform its provision of such facts into FACA-covered recommendations or advice. The same is true as to the other purported "recommendations" plaintiffs identify. *See id*. at 25 (noting the existence and importance of "uncertainties in [the Equilibrium Climate Sensitivity]" (cited at Pls.' Mem. at 9)); *id*. at 116, 125 (summarizing *existing* literature noting that "[i]t is increasingly being argued that the SCC is too variable to be useful for policymakers," and that "*[m]ainstream climate economics has recognized* that $CO_2$-induced warming might have some negative economic effects, but they are too small to justify aggressive abatement policy[.]" (emphasis added) (cited at Pls.' Mem. 10)).

While Plaintiffs may disagree with the CWG's "[c]oncluding thoughts" emphasizing and acknowledging the "uncertainties," "costs,", and "collateral impacts of any 'climate action'" as well as the "risks and benefits of a climate changing" and the "potential risks and benefits of $CO_2$," CWG Report at 130 (cited at Pls.' Mem. at 10), the CWG's emphasis of the reliability or

importance of certain facts falls short of "recommendations on an identified governmental policy for which specified advice was being sought," as would be covered by the intent of FACA. *Nader*, 396 F. Supp. at 1234. *See also Nat. Res. Def. Council, Inc. v. Herrington*, 637 F. Supp. 116, 120 (D.D.C. 1986) (finding that a DOE-assembled panel of scientists did not constitute a FACA committee in part because "[a]bove all, no policy is to be made, save by the Secretary after he has been fully informed about the N–Reactor from sources both within and without the Department.").

Contrary to Plaintiffs' contention, *Heartwood, Inc. v. United States Forest Service*, 431 F. Supp. 2d 28, 34 (D.D.C. 2006) (cited at Pls.' Mem. at 9), is inapposite. Even in finding that FACA applied to the committee at issue there, *Heartwood* confirmed that "[c]ommittees excepted from the FACA requirements include . . . '[g]roups assembled to exchange facts or information.'" *Id*. at 35 (quoting 41 C.F.R. § 102–3.40(e), (f) (2005)). The court held that the "facts or information" exception did not apply in that instance, because there was no "exchange" of information between the Government and the committee at issue. "Rather, the scientists provided the USFS with the narrative summaries in a one-way transfer of information." *Id*. at 35-36.[3]

Here, by contrast, a mutual "exchange [of] facts or information" between the CWG and DOE undisputably occurred, as the sources in Plaintiffs' Complaint confirm. 41 C.F.R. § 102–3.40(e). *See* Curry Blog at 4 (detailing CWG's submission of its findings to DOE, *and* DOE's "internal review [by] eight scientists/administrators employed by the DOE") (cited at Compl. n.29). In the post cited by Plaintiffs, Dr. Curry explained that "[t]he reviews [by DOE] were quite interesting and varied, and several were very useful. The CWG made a number of fairly minor changes to the Report in response to the reviews, and added a number of references, and we are responding in detail to their comments." *Id*. *See also* Pls.' Ex. D ("Spencer Blog") at 2, ECF No.

---

[3] The *Heartwood* court also took issue with the group there because it "was assembled for the single purpose of drafting the ecological assessment to inform the USFS's policy-making." *Id.* at 35. The CWG Report, by contrast, does not speak to and was not intended to underlie a specific policy decision. *See generally* CWG Report; *See also* Spencer Blog at 2 (explaining that the CWG "had no knowledge through the whole process of what the decision-makers at the EPA were going to do regarding energy policy.") (cited at Compl. n.20).

17-4 (explaining that the member "had no knowledge through the whole process of what the decision-makers at the EPA were going to do regarding energy policy.") (cited at Compl. n.20). The CWG thus "functioned to 'increase the flow of information between' private groups and the executive branch," as contemplated by FACA exemption at issue. *Heartwood*, 431 F. Supp. 2d at 36.

In short, because the CWG was a "[g]roup[] assembled to exchange facts or information with a Federal official(s)," 41 C.F.R. § 102-3.40(e), and not an entity covered by FACA, Plaintiffs' FACA claims are unlikely to succeed.

### 2. Most of Plaintiffs' claims are moot because the CWG has been dissolved

In any event, the recent dissolution of the CWG now also renders nearly all of Plaintiffs' claims moot. "Article III prohibits federal courts from deciding 'moot' cases or controversies—that is, those in which the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Unión de Empleados de Muelles de Puerto Rico, Inc. v. Int'l Longshoremen's Ass'n, AFL-CIO*, 884 F.3d 48, 57 (1st Cir. 2018) (citation omitted). "Another way of putting this is that a case is moot when the court cannot give any 'effectual relief' to the potentially prevailing party." *ACLU of Mass. v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 52 (1st Cir. 2013) (citations omitted). Claims that an alleged advisory committee is operating in violation of FACA—including Plaintiffs' claims that the CWG was not properly established, Pls.' Mem. at 12-13, "did not comply with FACA's open meetings requirements," *id*. at 13-14; and was not "fairly balanced" or lacked safeguards to "prevent inappropriate influence," *id*. at 15-16—become moot when the advisory committee ceases to exist.[4] *See Ctr. for Biological Diversity v. Tidwell*, 239 F. Supp. 3d 213, 223 (D.D.C. 2017) ("courts in the D.C. Circuit have routinely held that claims

---

[4] Defendants acknowledge that some courts have held that a FACA claim seeking to compel the disclosure of FACA-covered committee records, as required under 5 U.S.C. app. § 10(b), may survive the dissolution of the advisory committee. *Ctr. for Biological Diversity*, 239 F. Supp. 3d at 228-29. Plaintiffs nevertheless fail to demonstrate a likelihood of success on their records claim because the CWG is not covered by FACA. *See supra* 7-11. And, at most, that would support only a limited order, at final judgment, requiring production of those covered records.

based on FACA's [] procedural requirements [other than the document disclosure provision] are mooted when the relevant advisory committee ceases to exist"); *Freedom Watch, Inc. v. Obama*, 859 F. Supp. 2d 169, 174 (D.D.C. 2012) (holding FACA claims moot "[b]ecause there are no grounds to find that the alleged committee, even if it did at some point exist, exists at present").

Here, dissolution of the CWG renders moot any claim for declaratory or injunctive relief seeking to compel the CWG to comply with FACA going forward. This includes Plaintiffs' request for an order "enjoin[ing] [the CWG] from [] meeting, advising Defendants or any other federal officials or agencies, or otherwise conducting CWG business," and their request that this Court enjoin DOE, EPA, Secretary Wright, and Administrator Zeldin from facilitating CWG meetings or receiving its advice. Pls.' Proposed Order at 1. Also moot are Plaintiffs' claims regarding the comment periods for EPA's NPRM and the CWG Report itself, which Plaintiffs request be extended until the now-dissolved CWG brings itself into compliance with FACA. *Id*. at 2. And because the CWG has already been dissolved, this Court has no cause to order that "the establishment of the CWG, including the selection and appointment of its members, [be] preliminary set aside and stayed," or that the CWG's "drafting," "completion," "transmission," and "publishing" of the already-published Report be "preliminary set aside and stayed." *Id*. The purpose of the requirements Plaintiffs invoke, like FACA itself, is to ensure that "new advisory committees be established only when essential and that their number be minimized," that they be created under uniform standards, that they remain advisory in nature, and that "Congress and the public remain apprised of their existence, activities, and cost." *Cummock v. Gore,* 180 F.3d 282,285 (D.C. Cir. 1999) (citation omitted). *See also Nat'l Ass'n of Consumer Advocs. v. Uejio*, 521 F. Supp. 3d 130, 142-43 (D. Mass. 2021) (similar). Because the CWG has been dissolved, much of the relief Plaintiffs seek is unavailable, and no practical purpose is served by requiring the now-defunct CWG to comply with FACA's procedural requirements.

Following the CWG's dissolution, all that remains of Plaintiffs' requested relief is their

demand for an injunction restricting Defendants' reliance on the CWG Report going forward, and their demand that DOE make public the subset of CWG records and minutes required by FACA (assuming, *arguendo*, that the CWG is in fact an entity covered by FACA). That conclusion accords with this court's analysis of the degree to which FACA claims are "rendered moot by the issuance of [a committee's] final report and the resignation of its members" in *Uejio*. 521 F. Supp. 3d at 146-48. There, the court concluded that plaintiffs' FACA claims were not moot to the extent that the court could still grant relief in the form of a "declaratory judgment" or an "order prohibiting [d]efendants from relying on the [committee's] report or by requiring them to add a disclaimer indicating that the report was produced in violation of FACA." *Id*. Plaintiffs here do not seek any form of preliminary *declaratory* relief (nor could they), and the complete use injunction they do seek is a wildly inappropriate remedy for the violations alleged, particularly at the preliminary injunction stage. *See infra* 17-20; *Nat. Res. Def. Council v. Pena ("NRDC"),* 147 F.3d 1012, 1018, 1025 (D.C. Cir. 1998) (use injunctions are a "draconian" remedy of "last resort," given the serious First Amendment and separation-of-powers concerns raised by stifling committee reports). Plaintiffs are thus unlikely to succeed on the merits of their claims.

## B.    Plaintiffs Have Not Shown Any Imminent Irreparable Harm

The Court should also deny Plaintiffs' motion because Plaintiffs have not established that they will suffer irreparable injury absent preliminary relief. Irreparable harm "constitutes a necessary threshold showing for an award of preliminary injunctive relief," *Gonzalez-Droz v. Gonzalez-Colon*, 573 F.3d 75, 79 (1st Cir. 2009). Plaintiffs claim they will be irreparably harmed absent an injunction for two primary reasons, neither of which passes muster.

First, Plaintiffs claim they need access to the CWG records to inform their comments on the CWG Report and EPA's proposed rescissions of the 2009 Endangerment Finding. Pls.' Mem. at 16. Relatedly, Plaintiffs claim they need such records to "inform the public and advocate on behalf of their members on an 'ongoing proceeding of national importance.'" *Id*. (citation omitted).

Defendants acknowledge that the Supreme Court held in *Public Citizen* that informational standing exists when a plaintiff is prevented from "scrutiniz[ing] [a] Committee's activities to the extent FACA allows," 491 U.S. at 449.[5] But neither of the informational injuries alleged here is in any way imminent or irreparable. The CWG is dissolved, no longer performing work, and the only pending deadline Plaintiffs reference is EPA's September 22 deadline for public comment on its notice of proposed rulemaking. *Id.* Plaintiffs are, of course, already in possession of the CWG Report cited in EPA's notice and remain free to comment on the proposed rule at any time. *See* CWG Report, ECF No. 17-1. They offer no compelling explanation as to why their ability to comment, inform the public, or advocate on behalf of members is irreparably curtailed by their lack of access to records beyond the CWG's Report itself, particularly in the context of the EPA proposed rule they ask this Court to indefinitely delay.[6] Moreover, the request for relief against the EPA is a gross overreach that fails for numerous other reasons, as set forth below and in EPA's concurrently-filed partial motion to dismiss.

Second, Plaintiffs argue they are harmed by the CWG's very existence, due to their inability to attend and participate in its meetings, lack of access to a representative voice on the

---

[5] Defendants here preserve for further review the argument that "[t]o the extent that [plaintiffs] argue[] that [they] ha[ve] suffered a concrete 'informational injury' as recognized in *Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998), and *Pub. Citizen*, 491 U.S. 440, *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) appears to bar this theory." *Pruitt v. Resurgent Capital Servs., LP*, 610 F. Supp. 3d 775, 783 (D. Md. 2022) (cleaned up) (holding that in the wake of *TransUnion*, a plaintiff's failure to make "mention of specific consequences resulting from [her] asserted informational injury" required dismissal of her Fair Debt Collection Practices Act claim). *See also Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 372 (1st Cir. 2023) (under *TransUnion*, courts must analyze whether plaintiffs "have identified a close historical or common-law analogue for their asserted injury[.]'" (quoting *TransUnion*, 594 U.S. at 424)).

[6] Indeed, to the extent Plaintiffs seek a preliminary injunction preventing EPA from completing its public comment period, *see* Pls.' Proposed Order at 2, such relief would it itself appear to inflict harm on Plaintiffs and the public by delaying EPA's ability to respond to comments while an injunction remains in place. *See San Francisco Real Est. Invs. v. Real Est. Inv. Tr. of Am.*, 692 F.2d 814, 818 (1st Cir. 1982) (Breyer, J.) ("Under these circumstances, any 'harm' caused . . . would seem largely self-inflicted; it was not only not irreparable in the absence of the district court's order, but entirely avoidable.").

alleged committee, and the mere fact of its creation absent adherence to the procedural requirements of FACA. *See* Pls.' Mem. at 17. As explained above, none of these allegations represents imminent or irreparable ongoing harm to Plaintiffs, as the CWG has now been dissolved, mooting any participation harms that Plaintiffs may have once suffered. *See supra* 11-13; *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief[.]"). Even if such claims were not moot, a prospective preliminary injunction would not redress their alleged participatory injury, because—as organizations and not individual experts—Plaintiffs would not have been eligible to participate in the CWG. Furthermore, Plaintiffs' members lack any "cognizable personal right to an advisory committee appointment." *Nat'l Anti-Hunger Coal.*, 711 F.2d at 1074 n.2; *see also Pub. Citizen v. Nat'l Advisory Comm. on Microbiological Criteria for Foods*, 886 F.2d 419, 423 (D.C. Cir. 1989) (Friedman, J., concurring) (no one is "entitled to a position on" a federal advisory committee). Recognizing this, Plaintiffs do not seek an injunction that would require Secretary Wright to appoint any particular individual to the CWG. *See* Pls.' Proposed Order at 1-2. Thus, Plaintiffs have not shown that it is likely, as opposed to speculative, that an injunction would remedy their alleged harm of lacking a representative voice, fair balance, or ability to participate in CWG meetings.

In any event, neither the alleged participatory injury nor the alleged informational injury is irreparable in the absence of a preliminary injunction. If Plaintiffs ultimately prevail at final judgment, they have asked this Court to order the production of FACA-covered CWG records, *see* Compl. ¶ I, which would purportedly remedy their informational injury. Such records could then be used to challenge any final action taken by the Government in reliance on the CWG Report through an APA or Clean Air Act suit, if such reliance actually occurs. *See Fertilizer Inst. v. EPA*, 938 F. Supp. 52, 55 (D.D.C. 1996) ("plaintiff does not face any imminent threat of injury or irreparable harm" because if a "rulemaking results in reliance on the [advice], and plaintiff

disagrees with that decision, it can challenge [the agency's] action at that time."); *NRDC*, 147 F.3d at 1026 (similar). Should the Court ultimately determine that the CWG was an advisory committee subject to FACA, it can also issue "a declaration that the 'Defendants' creation and administration of the [group] violates [FACA] . . . and that the establishment of the [group] [was] therefore unlawful.'" *Uejio*, 521 F. Supp. 3d at 148. *See* Compl. ¶¶ A-G (requesting similar remedies). Such a declaration would be sufficient to remedy the harms alleged, as Plaintiffs could use that declaration as "ammunition" if the Government were to take final action in reliance on the CWG Report.[7] *NRDC*, 147 F.3d. at 1026 n.6. *See also Uejio*, 521 F. Supp. 3d at 148 (citing *NAACP Legal Def. & Ed. Fund, Inc., v. Barr* ("*NAACP I*"), 496 F. Supp. 3d 116, 131-32 (D.D.C. 2020)); *Young v. U.S. EPA*, 2022 WL 474145, at *5 (D.D.C. Feb. 16, 2022) (finding no irreparable harm and distinguishing cases finding such harm on the basis that those plaintiffs "did not challenge the lawfulness of the committee itself, [making] it[] hard to see how the court could have remedied the harm alleged by the plaintiff after the meeting occurred"). Because Plaintiffs challenge the lawfulness of the CWG, all of their alleged harms can be fully remedied if they prevail in the normal course of litigation, without the need for preliminary relief.

### C.    The Balance of Equities and Public Interest Favor Defendants

A party seeking a preliminary injunction must demonstrate "that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. These "factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, they cut against issuing an injunction. Secretary Wright asked scientists to participate in the CWG "to encourage a more thoughtful and science-based conversation about climate change

---

[7] "In the alternative, the Court could require the Defendants to attach a disclaimer to the report stating that it was produced in violation of FACA." *Uejio*, 521 F. Supp. 3d at 147-48 (citing *NAACP Legal Def. & Educ. Fund, Inc. v. Barr* ("*NAACP II*"), 2020 WL 6392777, at *2 (D.D.C. Nov. 2, 2020)). "Such relief would redress Plaintiffs' injuries, which 'stem from [their] inability to influence the [group] work by scrutinizing the [group's] activities and having access to a representative voice on the [group],' because 'the disclaimer would give [Plaintiffs] ammunition in the arena of public opinion.'" *Id*.

and energy." CWG Report at viii. These goals will be impeded if the Government is prevented from using the CWG's Report. And while FACA serves the public interest by requiring disclosure of certain information about how committees conduct business, Pls.' Mem. at 18, public interest is not served by hampering the First Amendment rights of CWG members or the free "exchange [of] facts or information" between private groups and Federal officials. 41 C.F.R. § 102–3.40(e).

As stated above, the CWG's work is complete, and the group has now been dissolved. Its Report has been made public to facilitate a "open, respectful, and informed debate" about its contents. CWG Report at viii. Paradoxically, part of the relief Plaintiffs seek—an injunction preventing DOE or EPA from completing their public comment periods, *see* Pls.' Proposed Order at 2—would itself have the effect of curtailing, rather than advancing, the goals of open dialogue and public input contemplated by FACA. *See* CWG Report at viii ("To correct course, we need open, respectful, and informed debate. That's why I'm inviting public comment on this report. Honest scrutiny and scientific transparency should be at the heart of our policymaking."). The public interest favors allowing Defendants to consider the facts and information provided to DOE by the CWG, and to complete their public comment periods as scheduled in order to obtain the benefits of a "thoughtful and science-based conversation about climate change and energy" as intended. CWG Report at viii.

### D. Plaintiffs' Requested Preliminary Injunction is Overbroad

The Court need not reach the question of remedy in this case, or at least in this preliminary posture, as Plaintiffs have failed to demonstrate likelihood of success or make any of the showings required for extraordinary preliminary relief. But if the Court were to order relief, the only permissible remedy is to require Defendants to produce the subset of records implicated by FACA.[8] Plaintiffs' remaining requested remedies are either moot, unnecessary, or disfavored, and

---

[8] Declaratory relief is also a sufficient remedy for FACA violations proven on final judgment, *see Uejio*, 521 F. Supp. 3d at 148, but Plaintiffs do not request preliminary declaratory relief, and Defendants are aware of no authority permitting a court to grant a declaratory judgment preliminarily. *Cf.* Fed. R. Civ. P. 65 (permitting "Injunctions").

inappropriate in this case.

First, Plaintiffs ask this Court to hold open and extend the public comment periods for EPA's NPRM and the CWG Report, Pls.' Proposed Order at 1-2, but such relief is beyond the scope of the FACA violations alleged. In *National Nutritional Foods Association v. Califano*, the Second Circuit spoke to the question of remedy for a FACA violation occurring in the context of rulemaking. Affirming the district court's denial of injunctive relief, the court explained that:

> So far as we are aware, no court has held that a violation of FACA would invalidate a regulation adopted under otherwise appropriate procedures, simply because it stemmed from the advisory committee's recommendations, *or even that pending rulemaking must be aborted and a fresh start made*. We perceive no sound basis for doing so. *Applicable rulemaking procedures afford ample opportunity to correct infirmities resulting from improper advisory committee action prior to the proposal*.

603 F.2d 327, 336 (2d Cir. 1979) (emphases added). The same is true here. Just as the Second Circuit held that FACA provides "no sound basis" to order that a rulemaking be aborted and started anew, Plaintiffs present no basis for their request to prevent EPA from completing its comment period (and thereafter its final rule) simply because the proposed rule cited to an allegedly procedurally deficient report—an objection Plaintiffs can raise by public comment. *Id.*

Plaintiffs also request an injunction prohibiting Defendants from relying on *any* CWG work (known as a "use injunction"). Pls.' Proposed Order at 1. Plaintiffs make this request in passing, Pls.' Mem. at 20, without acknowledging that "a use injunction should be the remedy of last resort." *NRDC*, 147 F.3d at 1025; *Cargill, Inc. v. United States*, 173 F.3d 323, 342 (5th Cir. 1999) (same). Plaintiffs lack standing for this extraordinary remedy. In *NRDC*, the D.C. Circuit explained that a plaintiff *cannot* establish the concrete and redressable injury necessary for standing to obtain a use injunction merely by alleging that it was denied an opportunity to participate at past meetings of an advisory committee or was denied access to committee records. 147 F.3d at 1020-21. Nor can a use injunction be justified to punish Defendants for past FACA violations or deter future violations. *Id. at* 1022 (citing *Hartford-Empire Co. v. United*

*States,* 323 U.S. 386,409 (1945) ("we may not impose penalties in the guise of preventing future violations.")). A use injunction is particularly inappropriate here because "the [CWG] has been dissolved and will no longer meet, deliberate or generate documents or records." *Id. See also Seattle Audubon Soc'y v. Lyons*, 871 F. Supp. 1291, 1294 (W.D. Wash. 1994) ("once a committee has served its purpose, courts generally have not invalidated the agency action even if there were earlier FACA violations."), *aff'd*, 80 F.3d 1401 (9th Cir. 1996).

Moreover, to the extent Plaintiffs are concerned with the prospect of procedurally tainted work affecting federal regulations, "[a]pplicable rulemaking procedures afford ample opportunity to correct infirmities resulting from improper advisory committee action prior to the proposal." *Nat'l Nutritional Foods Ass'n*, 603 F.2d at 336. Numerous courts have held that public participation in agency decision-making abrogates the need for a judicial remedy for earlier FACA violations. In *NRDC*, the D.C. Circuit explained that a court should consider whether FACA's purpose would be served by a use injunction of the type Plaintiffs seek:

> [I]f the FACA violation appears to have had little deleterious effect on the committee's output and accountability and the public's participation, the district court should withhold a use injunction. . . . Moreover, if members of the public will have another opportunity to comment on an agency decision, the district court should determine whether the subsequent opportunity will render harmless (or at least less harmful) the loss of any past opportunity to participate.

147 F.3d at 1026-27 (citing *Nat'l Nutritional Foods Ass'n*, 603 F.2d at 336). *See also Cal. Forestry Ass'n v. U.S. Forest Serv.*, 102 F.3d 609, 614 (D.C. Cir. 1996) (remanding to consider appropriate relief for a FACA violation and noting that "[t]he need for injunctive relief may be reduced where, as here, there has been at least some attempt to ensure public accountability"); *Seattle Audubon Soc'y*, 871 F. Supp. at 1310 (concluding that the procedures afforded ample opportunity to correct FACA infirmities). Here, Defendants have produced the CWG's Report and provided multiple opportunities for public comment, both as to the Report itself, 90 Fed. Reg. 36150, and as to EPA's proposed rule, 90 Fed. Reg. 36288, rendering a

complete use injunction disproportionate and unnecessary.

At bottom, "[b]ecause of its First Amendment implications, punitive effect, and likely standing complications," a "last resort" use injunction is inappropriate here. *NRDC,* 147 F.3d at 1025. Even the district court in *NRDC,* which the D.C. Circuit explained had understated the requirements for a use injunction, declined to enjoin the National Academy of Sciences from publishing the relevant committee's final report in light of the committee members' First Amendment rights. *See* 147 F.3d at 1016, 1025. Other courts have similarly declined to take the draconian step of prohibiting use or reliance upon reports, despite finding a violation of FACA. *See Nw. Forest Res. Council v. Espy,* 846 F. Supp. 1009, 1015 (D.D.C. 1994) (declining to issue use injunction because doing so would "exceed the injury presently to be redressed" and "represent [an affront] to the separation-of-powers principle"); *id.* ("The Court is aware of no authority upon which it could confidently rely in concluding that it may forbid the President and his Cabinet to act upon advice that comes to them from any source, however irregular."); *Nw. Ecosystem All. v. Office of U.S. Trade Reps.*, 1999 WL 33526001 (W.D. Wash. Nov. 9, 1999) ("The balance of hardships clearly tips against granting the utilization and disclosure injunctions").[9]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion for Preliminary Injunction or, in the Alternative, For Summary Judgment or Consolidation Under Rule 65(a)(2).

---

[9] For all of the foregoing reasons, this Court should also reject Plaintiffs' alternative request for summary judgment or to proceed directly to a trial on the merits under Rule 65(a)(2). *See* Pls.' Mem. at 18. Their memorandum devotes a single paragraph to their request for final judgment, and fails to demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At a minimum, if the Court is inclined to move directly to final judgment, Defendants respectfully request that the parties be permitted to submit additional briefing on the appropriate remedies for the FACA violations alleged. *See NAACP I*, 496 F. Supp. 3d at 145 (permitting parties "to submit briefing on proposed remedial orders to determine the precise content of that injunction and any other relief.").

Dated: September 4, 2025                    Respectfully Submitted,


                                            BRETT A. SHUMATE
                                            Assistant Attorney General

                                            ELIZABETH J. SHAPIRO
                                            Deputy Branch Director

                                            /s/ *Andrew J. Rising*
                                            ANDREW J. RISING (D.C. Bar # 1780432)
                                            Trial Attorney
                                            United States Department of Justice
                                            Civil Division, Federal Programs Branch
                                            1100 L Street, NW, Rm. 12520
                                            Washington, D.C. 20005
                                            Phone:  (202) 514-0265
                                            E-mail:  andrew.j.rising@usdoj.gov

                                            *Counsel for Defendants*

## CERTIFICATE OF SERVICE

    I hereby certify that I have filed this document with the Court's ECF system, which sends

notice to all parties identified on the NEF.


                                            /s/ *Andrew Rising*
                                            ANDREW J. RISING
                                            Trial Attorney
                                            United States Department of Justice