**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

ENVIRONMENTAL DEFENSE FUND, *et al*.

Plaintiffs,

v.

CHRISTOPHER WRIGHT, in his official capacity as Secretary of Energy, *et al*.

Defendants.

Case No. 1:25-cv-12249-WGY

**EPA DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS**

# TABLE OF CONTENTS


INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 2

I. Statutory Background ........................................................................................ 2

A. FACA ................................................................................................................ 2

B. Clean Air Act .................................................................................................... 3

II. Factual and Procedural Background ................................................................ 5

A. The Climate Working Group ............................................................................ 5

B. Procedural History ............................................................................................ 7

STANDARD OF REVIEW ........................................................................................ 8

ARGUMENT ............................................................................................................ 8

I. This Court Should Dismiss All Claims Against EPA and Administrator Zeldin ............... 8

A. Plaintiffs Lack Standing To Sue EPA ................................................................ 9

B. This Court Lacks Jurisdiction Over Plaintiffs' Claims Against EPA .......................... 13

1. The Clean Air Act Channels Jurisdiction Over Challenges to EPA's Rulemaking and its Rulemaking Record to the D.C. Circuit Alone. ................................................ 13

2. The Court Lacks Jurisdiction to Review Non-Final Agency Actions ...................... 16

CONCLUSION ........................................................................................................ 18

## TABLE OF AUTHORITIES

**Cases**

*Ams. For Clean Energy v. EPA*,
864 F.3d 691 (D.C. Cir. 2017) .......... 4

*Citizens for Resp. & Ethics in Wash. v. SEC*,
916 F. Supp. 2d 141 (D.D.C. 2013) .......... 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 8, 17

*Axon Enter., Inc. v. FTC*,
598 U.S. 175 (2023) .......... 15

*Bennett v. Spear*,
520 U.S. 154 (1997) .......... 17

*Bowles v. Russell*,
551 U.S. 205 (2007) .......... 15

*Byrd v. EPA*,
174 F.3d 239 (D.C. Cir. 1999) .......... 10

*Royster-Clark Agribusiness, Inc. v. Johnson*,
391 F. Supp. 2d 21 (D.D.C. 2005) .......... 16

*Davis v. FEC,*
554 U.S. 724 (2008) .......... 9

*Doe v. Shalala*,
862 F. Supp. 1421 (D. Md. 1994) .......... 13

*EME Homer City Generation, L.P. v. EPA*,
795 F.3d 118 (D.C. Cir. 2015) .......... 4

*Equal Means Equal v. Ferriero*,
3 F.4th 24 (1st Cir. 2021) .......... 9

*Friends of Keeseville, Inc. v. FERC,*
859 F.2d 230 (1988) .......... 12

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
528 U.S. 167 (2000) .......... 9

*García-Catalán v. United States*,

734 F.3d 100 (1st Cir. 2013) ........................................................................................ 8

*Harrison v. PPG Indus., Inc.*,
446 U.S. 578 (1980) ........................................................................................ 16

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
985 F.3d 122 (1st Cir. 2021) ........................................................................................ 18

*In re Murray Energy Corp.*,
788 F.3d 330 (D.C. Cir. 2015) ........................................................................................ 11, 17

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ........................................................................................ 8

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........................................................................................ 9, 16

*Maldonado v. Fontanes*,
568 F.3d 263 (1st Cir. 2009) ........................................................................................ 8

*Nat. Res. Def. Council v. Pena*,
147 F.3d 1012 (D.C. Cir. 1998) ........................................................................................ 12

*Nat'l Ass'n of Mfrs. v. DOD*,
583 U.S. 109 (2018) ........................................................................................ 5

*New York v. EPA*,
921 F.3d 257 (D.C. Cir. 2019) ........................................................................................ 14

*Nuclear Regul. Comm'n v. Texas*,
605 U.S. 665 (2025) ........................................................................................ 17, 18

*Pub. Citizen v. Bowen*,
833 F.2d 364 (D.C. Cir. 1987) ........................................................................................ 17

*Pub. Citizen v. Dep't of Just.*,
491 U.S. 440 (1989) ........................................................................................ 3, 9, 11

*R.J. Reynolds Tobacco Co. v. FDA*,
810 F.3d 827 (D.C. Cir. 2016) ........................................................................................ 11, 12

*Royster-Clark Agribusiness, Inc. v. Johnson*,
391 F. Supp. 2d 21 (D.D.C. 2005) ........................................................................................ 16

*SEC v. Tambone*,
597 F.3d 436 (1st Cir. 2010) ........................................................................................ 8

*Sierra Club v. Costle*,
657 F.2d 298 (D.C. Cir. 1981) .......... 14, 15, 18

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
549 U.S. 422 (2007) .......... 8

*State of Maine v. Thomas*,
874 F.2d 883 (1st Cir. 1989) .......... 14

*Union of Concerned Scientists v. Wheeler*,
954 F.3d 11 (1st Cir. 2020) .......... 3, 13

**Statutes**

5 U.S.C. § 704 .......... 14

5 U.S.C. app. § 2(b) .......... 3

5 U.S.C. app. § 3(2) .......... 2, 3, 9

5 U.S.C. app. § 5(b)(2) .......... 3

5 U.S.C. app. § 5(b)(3) .......... 3

5 U.S.C. app. § 5(c) .......... 3

5 U.S.C. app. § 9(c) .......... 3

5 U.S.C. app. §§ 10(a)-(c) .......... 3

5 U.S.C. app. § 11 .......... 3

5 U.S.C. § 1006 .......... 3

28 U.S.C. § 1361 .......... 17

42 U.S.C. § 7521 .......... 6

42 U.S.C. § 7607(b) .......... 13

42 U.S.C. § 7607(b)(1) .......... 4, 14, 16

42 U.S.C. § 7607(d) .......... 4, 7, 11, 13

42 U.S.C. § 7607(d)(1) .......... 14, 18

42 U.S.C. § 7607(d)(2)-(6) .......... 4

42 U.S.C. § 7607(d)(7)(A) .......... 4

42 U.S.C. § 7607(d)(7)(B) .......... 4, 11

42 U.S.C. § 7607(d)(8) .......... *passim*

42 U.S.C. § 7607(d)(9) .......... 11

42 U.S.C. § 7607(e) .......... 4, 13

42 U.S.C. § 7607(h) .......... 4

**Regulations**

41 C.F.R. § 5 .......... 3

41 C.F.R. § 102-3.160 .......... 3, 10

41 C.F.R. § 102–3.25 .......... 10

41 C.F.R. § 102–3.40(e) .......... 3

66 Fed. Reg. 37728 (July 19, 2001) .......... 3

90 Fed. Reg. 36150 (Aug. 1, 2025) .......... 5, 6

90 Fed. Reg. 36288 (Aug. 1, 2025) .......... 5

90 Fed. Reg. 39345 (Aug. 15, 2025).......... 6

Federal Advisory Committee Management, 66 Fed. Reg. 37728 (July 19, 2001) .......... 3

Notice of Availability: A Critical Review of Impacts of Greenhouse Gas Emissions on the U.S. Climate, 90 Fed. Reg. 36150 (Aug. 1, 2025) .......... 5, 6

Reconsideration of 2009 Endangerment Finding and Greenhouse Gas Vehicle Standards, 90 Fed. Reg. 36288 (Aug. 1, 2025) .......... 5

**Other Sources**

Andy Su, *Testimony re: Reconsideration of EPA Clean Car and Truck standards* (Aug. 20, 2025), https://perma.cc/9JJZ-VECN.......... 7

DOE, *A Critical Review of Impacts of Greenhouse Gas Emissions on the U.S. Climate* (July 29, 2025), https://www.energy.gov/topics/climate .......... 5

Rachel Cleetus, *I Testified at the EPA Hearing on the Repeal of the Endangerment Finding* (Aug. 22, 2025), https://perma.cc/V8MD-LR2L ........................................................................ 7

## INTRODUCTION

The thrust of Plaintiffs' lawsuit is that the Department of Energy and Secretary Christopher Wright ("DOE") violated the Federal Advisory Committee Act ("FACA") by establishing the now-dissolved Climate Working Group ("CWG") in violation of FACA's requirements. Yet, in addition to suing and seeking relief against DOE and the CWG, Plaintiffs also sue and seek relief against the Environmental Protection Agency and Administrator Lee Zeldin ("EPA"). Why? Plaintiffs barely mention EPA in their motion for preliminary injunction, let alone develop an adequate basis for any form of relief against EPA in their Complaint. Plaintiffs offer no allegations or evidence to suggest that EPA was involved in establishing, managing, or controlling the CWG. To the contrary, Plaintiffs make clear that Secretary Wright alone assembled the CWG.

Plaintiffs' only contentions specific to EPA—that it cited a report authored by the CWG in a notice of proposed rulemaking—betrays that Plaintiffs' true aim is to pretermit a proposed future regulatory action with which Plaintiffs strongly disagree, by halting the public comment period for this proposed rule. That request is as unprecedented as it is unlawful. Whatever the Court may decide vis-à-vis DOE, Plaintiffs' claims against EPA must be dismissed for lack of standing, lack of subject matter jurisdiction, and failure to state a claim upon which relief can be granted.

First, Plaintiffs lack standing to pursue FACA claims against EPA because they identify no impending injuries from EPA action stemming from the purported FACA violations. Plaintiffs' own submissions demonstrate that EPA's only involvement in this case is its citation to a CWG report in a notice of proposed rulemaking ("NPRM"), which is not final agency action. For Plaintiffs' harm to mature, EPA would need to decide to take final action in reliance on the CWG's work. Indeed, Plaintiffs have already objected, at a public hearing on the proposed rulemaking, that the CWG report is unlawful and unreliable. EPA may well take heed. Thus, any alleged injury stemming from citations in an NPRM is both unripe and too remote or speculative to support standing for purposes of Article III. And because Plaintiffs offer no plausible allegations to suggest

that EPA established, managed, or controlled the CWG, any informational or participation injuries sustained as a result of that groups' work are not fairly traceable to EPA. Nor could any of the alleged injuries be remedied by relief available against EPA. As explained below, the Clean Air Act bars relief in connection with a rulemaking at this juncture, and EPA cannot remedy the alleged informational and participation injuries.

Second, dismissal of Plaintiffs' EPA claims is independently warranted because the Clean Air Act divests this Court of jurisdiction over such claims. Clean Air Act section 307 establishes comprehensive requirements for rulemaking and judicial review that expressly displace the Administrative Procedure Act ("APA") and prohibit any other form of review or relief. For the rulemaking at issue, parties can challenge EPA's actions only in the D.C. Circuit and only once EPA takes final action within the meaning of the statute. By definition, EPA's NPRM is not a final action under the Clean Air Act. And Plaintiffs cannot seek interlocutory review of a dispute over a pending rulemaking through APA, Mandamus Act, or *ultra vires* claims because the Clean Air Act expressly bars these forms of review. Because the Clean Air Act will provide both an adequate remedy and exclusive forum for all of Plaintiffs' claims if EPA actually elects to rely on the CWG Report in a final rule, Plaintiffs' current claims are barred. This Court should accordingly dismiss Plaintiffs' claims against EPA (and certainly not grant any preliminary relief against it).

## BACKGROUND

### I. Statutory Background

#### A. FACA

FACA, 5 U.S.C. app. 2 §§ 1–15, imposes a variety of requirements on "advisory committee[s]," which are defined to include "any committee . . . which is . . . established or utilized by the President, or . . . by one or more agencies, in the interest of obtaining advice or recommendations." 5 U.S.C. app. § 3(2). But FACA was not intended to apply to every formal and informal consultation between an agency and a group of experts. *Pub. Citizen v. Dep't of Just.*,

491 U.S. 440, 453 (1989). As implementing regulations promulgated by the General Services Administration ("GSA") make clear, groups "assembled to exchange facts or information with a Federal official(s)" are not covered by FACA. 41 C.F.R. § 102–3.40(e).[1] The purpose of FACA "was to ensure that new advisory committees be established only when essential and that their number be minimized; that they be terminated when they have outlived their usefulness; that their creation, operation, and duration be subject to uniform standards and procedures; that Congress and the public remain apprised of their existence, activities, and cost; and that their work be exclusively advisory in nature." *Pub. Citizen*, 491 U.S. at 440 (quoting 5 U.S.C. app. § 2(b)). *See also Union of Concerned Scientists v. Wheeler*, 954 F.3d 11, 16-17 (1st Cir. 2020).

FACA places limits on the creation and operation of bodies that fall within the definition of "advisory committee." 5 U.S.C. app. § 3(2). Before an advisory committee "meet[s] or take[s] any action," a charter must be filed. *Id.* § 9(c). In addition, advisory committees must announce their upcoming meetings in the Federal Register; hold their meetings in public; allow interested persons to attend; keep detailed minutes of each meeting; and publicly disclose certain documents. *Id.* §§ 10(a)-(c), 11. "Preparatory work"—which includes work "analyz[ing] relevant issues and facts in preparation for . . . a [] meeting of the advisory committee" and drafting position papers "for deliberation by the advisory committee"—is exempt from FACA's meeting and recordkeeping requirements. 41 C.F.R. § 102-3.160(a). An advisory committee must also "be fairly balanced in terms of the points of view represented" and may "not be inappropriately influenced by the appointing authority or by any special interest." *Id.* § 5(b)(2), (b)(3) & (c).

### B. Clean Air Act

EPA's rulemaking is governed by Clean Air Act section 307(d), which expressly displaces APA judicial review and rulemaking procedures for the "promulgation or revision of regulations" governing emission standards for new motor vehicles and engines under Clean Air Act section

[1] GSA's authority for administering FACA and issuing regulatory guidance is found at 5 U.S.C. § 1006. *See also* Federal Advisory Committee Management 66 Fed. Reg. 37728 (July 19, 2001).

202(a). 42 U.S.C. § 7607(d)(1)(K). For EPA rulemakings involving vehicle standards, "[t]he provisions of section 553 through 557 and section 706" of the APA "shall not … apply[.]" *Id.* § 7607(d). Instead, the Clean Air Act sets out unique procedures that require, *inter alia*, a minimum thirty-day public comment period, an opportunity for oral presentation at a public hearing, and additional docketing, procedural, and analytical requirements. *Id.* § 7607(d)(2)-(6), (h).

Judicial review of EPA rules under Clean Air Act section 202(a) "or any other nationally applicable regulations promulgated, or final action taken, by the Administrator under this chapter" may be sought "only in the United States Court of Appeals for the District of Columbia." 42 U.S.C. § 7607(b)(1). The "record for judicial review shall consist exclusively" of the public comment record and elements specified in Clean Air Act section 307(d). *Id.* § 7607(d)(7)(A). Parties must petition EPA to consider additional comments and information that could not be considered during the public comment period to challenge a rule on that basis, *id.* § 7607(d)(7)(B); *EME Homer City Generation, L.P. v. EPA*, 795 F.3d 118, 138 (D.C. Cir. 2015) (Kavanaugh, J.), and alleged procedural errors such as failures to disclose data can only be remedied if "so serious and related to matters of such central relevance to the rule that there is a substantial likelihood that the rule would have been significantly changed" if the data had been disclosed, 42 U.S.C. § 7607(d)(8); *Ams. For Clean Energy v. EPA*, 864 F.3d 691, 730 n.9 (D.C. Cir. 2017).

Finally, the statute bars any interlocutory review of alleged procedural errors except through the review process set out in Clean Air Act section 307(b) and (d). The "*sole forum* for challenging procedural determinations" made in a covered EPA rulemaking is the D.C. Circuit, and that review occurs "at the time of the *substantive review* of the rule." 42 U.S.C. § 7607(d)(8) (emphases added). Further, "[no] interlocutory appeals shall be permitted" over alleged procedural errors. *Id.*; *see also id.* § 7607(e) ("Nothing in this chapter shall be construed to authorize judicial review of regulations or orders of the Administrator under this chapter, except as provided in this section."). Congress designed this review scheme to "prioritize efficiency" given the statute's unique procedural and substantive requirements. *Nat'l Ass'n of Mfrs. v. DOD*, 583 U.S. 109, 130 (2018).

## II. Factual and Procedural Background

### A. The Climate Working Group

In March 2025, Secretary Wright invited five scientists to participate in a DOE Climate Working Group, to produce a report that would "encourage a more thoughtful and science-based conversation about climate change and energy[]" by "critically review[ing] the current state of climate science, with a focus on how it relates to the United States." CWG Report at viii, x, ECF No. 17-1. Members were selected "for their rigor, honesty, and willingness to elevate the debate[,]" and Secretary Wright "exerted no control over their conclusions." *Id*. The CWG members undertook their work "on the condition that there would be no editorial oversight by the Secretary, the Department of Energy, or any other government personnel[,]" and that "condition [w]as [] honored throughout the process and the writing team [] worked with full independence." *Id*. at x.

In mid-July, a draft of the CWG report was circulated to a team of "scientists/ administrators employed by the DOE" for technical review and comment resulting in "a number of fairly minor changes to the Report in response to the reviews," including the addition of "a number of references, and . . . respon[ses] in detail to their comments." Judith Curry, *New Climate Assessment Report from US DOE* (July 29, 2025) ("Curry Blog"), ECF No. 17-6 at 4. A draft of the CWG Report was also sent to EPA on or around May 28, 2025. Reconsideration of 2009 Endangerment Finding and Greenhouse Gas Vehicle Standards, 90 Fed. Reg. 36288, 36292 (Aug. 1, 2025). On July 29, 2025, DOE published the CWG Report, titled *A Critical Review of Impacts of Greenhouse Gas Emissions on the U.S. Climate*, available at https://www.energy.gov/topics/climate, and invited the public to submit comments via the Federal Register. Notice of Availability: A Critical Review of Impacts of Greenhouse Gas Emissions on the U.S. Climate, 90 Fed. Reg. 36150 (Aug. 1, 2025). After DOE announced availability of the CWG Report on its website and requested public comments on it, 90 Fed. Reg. 36,150, the CWG was formally dissolved by Secretary Wright on September 3, 2025. Defs.' Ex. 1, ECF No. 44.

On August 1, 2025, EPA published a notice of proposed rulemaking in the Federal Register that proposed to rescind its 2009 finding that greenhouse gas emissions from new motor vehicles and engines contribute to air pollution that endangers public health and welfare ("2009 Endangerment Finding") and repeal certain vehicle and engine emission standards promulgated under Clean Air Act section 202(a). 90 Fed. Reg. 36150 (citing 42 U.S.C. § 7521). EPA solicited public comment on whether it should take such action and, if so, on which of several independent bases the agency should rely. EPA proposed that Clean Air Act section 202(a) does not authorize regulating in response to global climate change concerns, that such regulation constitutes a major question reserved for Congress, that the 2009 Endangerment Finding did not follow the statutory framework for analyzing endangerment and contribution, that the 2009 Endangerment Finding unreasonably analyzed the scientific record, and that the resulting regulations failed to satisfy other requirements of Clean Air Act section 202. *Id.* at 36,298, 36,311. The proposed rule stated that the Administrator "consider[ed] and evaluat[ed]" "the most recently available science," including information discussed in a CWG report received from DOE and "available assessments by the U.S. Government and relevant international bodies, including the Third, Fourth, and Fifth National Climate Assessments (NCAs) reported by the U.S. Global Change Research Program (USGCRP) and the Fifth Assessment Report (AR5) and Sixth Assessment Report (AR6) by the United Nations Intergovernmental Panel on Climate Change (IPCC)." *Id.* In seeking comment on potentially relevant issues, the proposed rule cited to discussion in the CWG report and at least twenty other distinct sources. *See generally id.*

EPA is currently accepting public comment on its proposed rule and recently extended its public comment period through September 22, 2025. *See* 90 Fed. Reg. 39345. As required by Clean Air Act section 307(d), EPA held a public hearing from August 19 to 22 to give interested parties an opportunity to present oral testimony that will be considered together along with any written comments. 42 U.S.C. § 7607(d). Notably, Plaintiffs in this action presented at the hearing

and submitted related materials. Environmental Defense Fund ("EDF") presented testimony by two speakers urging EPA not to adopt any aspect of the proposal and arguing that the CWG report is unlawful and unreliable. Similarly, Union of Concerned Scientists ("UCS") presented testimony that EPA cannot and should not rely on the CWG report. Both issued press releases summarizing and linking to their testimony at the public hearing. *See* Andy Su, *Testimony re: Reconsideration of EPA Clean Car and Truck standards* (Aug. 20, 2025) available at https://perma.cc/9JJZ-VECN; Rachel Cleetus, *I Testified at the EPA Hearing on the Repeal of the Endangerment Finding* (Aug. 22, 2025), available at https://perma.cc/V8MD-LR2L.

**B. Procedural History**

Plaintiffs filed suit on August 12, 2025, naming Secretary Wright, Administrator Zeldin, DOE, EPA, and the CWG as Defendants. Compl., ECF No. 1. Plaintiffs claim Secretary Wright and DOE violated FACA by forming and running the CWG. Plaintiffs specifically contend that the CWG constitutes a FACA advisory committee, and that Defendants violated various of its requirements for such committees. Plaintiffs assert that these alleged violations of FACA give rise to a claim under the APA. *Id.* ¶ 18. In the alternative, they seek to maintain this action under the Mandamus Act and through *ultra vires* review. *Id.* ¶¶ 124-131.

On August 14, 2025, Plaintiffs filed their motion for preliminary injunction. In accordance with this Court's Minute Order, ECF No. 28, Defendants filed their response in opposition to Plaintiffs' motion on September 4, 2025.

**STANDARD OF REVIEW**

Defendants move to dismiss Plaintiffs' claims against EPA under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). When a defendant raises subject matter jurisdiction under Rule 12(b)(1), the court must resolve the issue before proceeding to the merits. *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007). A court is presumed to lack jurisdiction unless it affirmatively appears, and plaintiffs bear the burden of establishing that jurisdiction exists.

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[.]" *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A court must separate the well-pleaded facts from conclusory legal allegations and accept as true only the facts. *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009).

## ARGUMENT

### I. This Court Should Dismiss All Claims Against EPA and Administrator Zeldin

This Court should dismiss EPA and Administrator Zeldin because Plaintiffs' claims against these Defendants fail as a matter of law. Plaintiffs have alleged no facts to suggest that EPA or Administrator Zeldin had any involvement in the establishment or utilization of the CWG within the meaning of FACA, and as such, none of the harms alleged by Plaintiffs are fairly traceable to or redressable by these Defendants. Plaintiffs' only allegation specific to EPA is that the agency cited a CWG report received from DOE in a noticed of proposed rulemaking. But that is plainly not a final action, and EPA has yet to decide whether to rely on the CWG's work in any manner that could inflict cognizable harm. Moreover, the Clean Air Act provides the exclusive avenue for judicial review in this context, channeling jurisdiction over such challenges to the D.C. Circuit alone and requiring that any alleged procedural flaws be addressed on review of a final rule. Because neither Article III nor the Clean Air Act allow Plaintiffs to enforce their preferences and concerns before any other members of the public, the claims against the EPA Defendants must be dismissed for lack of jurisdiction and failure to state a claim.[2]

[2] For the reasons set forth in Defendants' memorandum in opposition to Plaintiffs' Motion for Preliminary Injunction, this Court should decline to order preliminary relief as to any Defendant. *See generally,* Defs' Opp'n, ECF No. 43.

**A. Plaintiffs Lack Standing To Sue EPA**

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "The burden is on the plaintiff at the pleading stage is plausibly to allege that each of the requirements to establish standing has been met." *Equal Means Equal v. Ferriero*, 3 F.4th 24, 28 (1st Cir. 2021). Standing is not "dispensed in gross," and, accordingly, a plaintiff must demonstrate standing for each claim it "seeks to press and for each form of relief that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008). Here, Plaintiffs allege no basis for standing as to any claim against EPA or its Administrator because they have alleged no actual or imminent injury that can be fairly traced to EPA, or which could be redressed by the agency.

To start, there is no serious claim that EPA itself violated FACA in connection with the establishment of the CWG. In order for Plaintiffs' alleged FACA violations to be imputed to EPA, the agency must have "established or utilized" the CWG within the meaning of the statute. 5 U.S.C. app. § 3(2). An alleged advisory panel is "utilized" by an agency only if it is "amenable to . . . strict management by agency officials." *Pub. Citizen*, 491 U.S. at 457-58. "[T]he utilized test is a stringent standard, denoting 'something along the lines of actual management or control"' *Byrd v. EPA*, 174 F.3d 239, 246-47 (D.C. Cir. 1999) (citation omitted); *see also* 41 C.F.R. § 102-3.25 (a committee is "utilized within the meaning of [FACA]" only if "the President or a Federal office or agency exercises actual management or control over its operation"). And for an advisory committee to be "established" by an agency, it must be "actually formed by the agency." *Byrd*, 174 F.3d at 245.

Plaintiffs' Complaint contains only boilerplate and conclusory legal allegations regarding EPA's supposed involvement with the CWG and the FACA violations alleged here. Plaintiffs suggest that all Defendants were involved in the "establishment, operation, and utilization of the [CWG]," Compl. ¶ 112, but they allege no relevant facts specific to EPA or its Administrator. Indeed, Plaintiffs' own allegations confirm that EPA's involvement with the CWG fails to meet the strict standard for establishment or utilization under FACA. First, it is undisputed that EPA did not "establish" the CWG. Rather, Plaintiffs allege that Secretary Wright alone "hand-picked" the CWG, and "tasked the group with preparing [the] report" at issue. Compl. ¶ 3. As factual support, Plaintiffs cite a blog written by an individual involved in the organization of the CWG at DOE. *Id*. at n.2. That individual speaks to no involvement by EPA in the group's establishment, management, or control. *See* Travis Fisher, *Why I Helped Organize the Department of Energy's Climate Report*, CATO at Liberty (Aug. 6, 2025, 10:25 AM) ("Fisher Blog"), ECF No. 17-2.

Nor did EPA exercise management and control over the CWG. Any argument to the contrary is belied by the Complaint and the CWG Report itself. Plaintiffs repeatedly allege interactions between the CWG, Secretary Wright, and DOE, while consistently omitting any reference to CWG involvement by EPA and Administrator Zeldin. *See* Compl. ¶¶ 28; 29 36, 38; 41; 42; 101; 114; 121. This disparity is easily explained: EPA was not involved in the management or control of the CWG within the meaning of FACA. *See id*. at 9 (alleging that "[t]he *Department of Energy*", not EPA, "[e]stablishe[d] the Climate Working Group."); Fisher Blog. Indeed, Plaintiffs do virtually nothing in their Complaint or subsequent motion for preliminary relief to connect the dots between CWG and EPA. As a result, none of the alleged injuries stemming from the CWG's work, including Plaintiffs' claimed entitlement to information and documentation, participation, and viewpoint representation, can be fairly traced to or remedied by EPA.

Plaintiffs' only effort to tie EPA to this case comes from EPA's citation to a CWG report in its recent NPRM. But mere citation to discussion in that report in a *proposed* action seeking

public comment on relevant issues cannot support Article III standing against EPA for the FACA claims alleged here. *See* Compl. ¶¶ 51-53; *Pub. Citizen*, 491 U.S. at 452-53 (explaining that Congress did not use the word "utilize" to encompass an agency's mere reliance on the work of an outside group). It is black-letter law that "statements in the preamble to [a] proposed rule … are not final agency action" warranting judicial intervention. *In re Murray Energy Corp.*, 788 F.3d 330, 335 (D.C. Cir. 2015) (Kavanaugh, J.). That is true even when parties assert harms in connection with a proposed rule itself—"courts have never reviewed *proposed* rules" simply because "organizations and individuals may alter their behavior" in response to the initiation of rulemaking. *Id.* For Plaintiffs' alleged harms to become actionable, EPA would first have to decide to finalize an action after reviewing public comments. Moreover, EPA would have to decide to rely on the CWG's report as supporting the rationale adopted in that final action notwithstanding Plaintiffs' comments that the agency should not do so. Even then, Plaintiffs could seek mandatory reconsideration if, within the time specified for judicial review, they obtain information bearing on CWG's work that is not already available to them. *See* 42 U.S.C. § 7607(d)(7)(B). If still dissatisfied, Plaintiffs could seek relief on that basis before the D.C. Circuit under the Clean Air Act's distinct and exclusive standards of review. *See id.* § 7607(d) (providing that APA section 706 does not apply), (d)(8)-(9) (setting out standards of review).

As the D.C. Circuit explained in *R.J. Reynolds Tobacco Co. v. FDA*, when an alleged advisory committee has provided advice to an agency and the agency has merely issued a notice of proposed rulemaking, the alleged harm that the agency will promulgate a final rule adverse to the plaintiff's interests is too "remote" and "uncertain" to support standing. 810 F.3d 827, 803 (D.C. Cir. 2016). In *R.J. Reynolds*, the court held that manufacturers of tobacco products lacked standing to challenge the membership composition of an advisory committee even though the committee had issued its report and the agency had proposed the adoption of a new rule. *Id.* at 828-30. "[T]he appointment of the challenged committee members by no means rendered the risk of

eventual adverse FDA action substantially probable or imminent" given that it "remains unclear whether the FDA will issue a final rule, and," as the agency is only required to "consider" the report along with public comments on the proposed rule, "what it would say," *id.* at 830 (internal citations omitted). The court emphasized that "[e]ven if [it] were to assume *arguendo* that the [agency's] selection of [the challenged] committee members materially increased the risk of its adoption of a rule more adverse to plaintiffs than the rule it might otherwise have adopted (or no rule at all), that would still fall short of saying that the selection rendered adoption of a more adverse rule imminent." *Id.*

Here, like in *R.J. Reynolds*, EPA has not yet issued a final rule or taken any other final agency action involving the CWG or its report. In fact, the review process for EPA's proposed rule has only recently commenced and is still ongoing. Plaintiffs' only alleged injury at the hands of EPA is thus speculative and provides no basis for standing.[3] *See Nat. Res. Def. Council v. Pena*, 147 F.3d 1012, 1026 n.8 (D.C. Cir. 1998) (explaining that there is a "causation problem" for any challenge to a committee recommendation that an agency cannot act upon "without first undertaking a rulemaking or adjudication.").

Nor can Plaintiffs establish redressability as to EPA. They fail to show that an injunction preventing EPA from relying on the CWG report or halting the public comment period on the proposed rule would have any effect at all on the agency's ultimate decision given the scope of the record and number of independent bases proposed for the contemplated action. *See Doe v. Shalala*, 862 F. Supp. 1421, 1429 (D. Md. 1994) ("[I]t is open to serious question whether a court decree in this case would actually redress the alleged harm . . . . [P]reventing the [group] from issuing a report could well have no effect whatsoever on the ultimate decision of the Secretary"). Nor could

[3] The speculative nature of Plaintiffs' injuries also merits dismissal of claims against EPA as unripe. *See R.J. Reynolds*, 810 F.3d at 830-31 ("Ripeness concerns underscore this point: part of the reason the injury is too remote is that, if the [agency] chooses not to issue a rule, this case 'may not require adjudication at all.'" (quoting *Friends of Keeseville, Inc. v. FERC,* 859 F.2d 230, 235 (D.C. Cir. 1988))).

this Court lawfully issue an injunction against EPA's rulemaking process itself given the express provisions of the Clean Air Act addressed below. Challenges to alleged FACA violations impacting a covered rulemaking may be brought, if at all, in the D.C. Circuit during substantive review of a final rule. 42 U.S.C. § 7607(b), (d), (e). Any action to address FACA concerns at this juncture would be exactly the type of "interlocutory" review of procedural matters expressly prohibited by statute, *id.* § 7607(d)(8), and separately violate the statute's bar on "judicial review of regulations" under the Clean Air Act "except as provided in" the provisions of Clean Air Act section 307, *id.* § 7607(e). Because EPA's citation to a CWG report in an NPRM does not cause Plaintiffs any non-speculative injury that can be fairly traced to EPA and redressed by an order of this Court, their claims against EPA should be dismissed for lack of standing.

**B. This Court Lacks Jurisdiction Over Plaintiffs' Claims Against EPA**

Plaintiffs assert claims under the APA, Mandamus Act, and *ultra vires* review principles because FACA itself "contains no private right of action." *Union of Concerned Scientists*, 954 F.3d at 17. Plaintiffs' claims against EPA should be dismissed for the additional reason that the Clean Air Act divests this Court of jurisdiction over all of these claims.

1. <u>The Clean Air Act Channels Jurisdiction Over Challenges to EPA's Rulemaking and its Rulemaking Record to the D.C. Circuit Alone.</u>

Although Plaintiffs purport to challenge EPA's citation to a CWG report in a notice of proposed rulemaking under the APA, the Clean Air Act expressly displaces APA procedures and standards of review in this context and provides for judicial review only of final rules and only in the D.C. Circuit. 42 U.S.C. § 7607(b)(1) (petitions for review of any final action under Clean Air Act 202(a) or "any other nationally applicable regulations promulgated, or final action taken, by the Administrator under this chapter may be filed only in the" D.C. Circuit), (d)(1) (the APA "*shall not*" apply to the "promulgation or revision of regulations under" Clean Air Act section 202) (emphasis added); *see State of Maine v. Thomas*, 874 F.2d 883, 890 n.8 (1st Cir. 1989) (explaining that "the district court was wrong in suggesting that the APA would apply[,]" because "[t]he Clean

Air Act is generally a self-contained statute and all relevant rulemaking must be conducted according to the procedures which the Act prescribes." (citing 42 U.S.C. § 7607(d)(1)); *New York v. EPA,* 921 F.3d 257, 261 n.5 (D.C. Cir. 2019) ("[t]he Clean Air Act's judicial-review provision supplants the [APA] with respect to a range of EPA rulemaking actions[.]"). Indeed, the APA itself does not provide a vehicle for judicial review unless "there is no other adequate remedy in court," which there is here. 5 U.S.C. § 704. The Clean Air Act also sets out specific procedures for "the creation and content of the administrative rulemaking record[,]" *Sierra Club v. Costle*, 657 F.2d 298, 392 (D.C. Cir. 1981), and channels Plaintiffs' challenges to EPA's procedural determinations regarding its regulatory docket to the D.C. Circuit alone, *see* 42 U.S.C. § 7607(d)(8). Each of these provisions independently divests this Court of jurisdiction to hear Plaintiffs' claims regarding EPA's citation to the CWG Report.

Plaintiffs' claims are plainly governed by the Clean Air Act's exclusive provisions for judicial review. Specifically, EPA's decision about which sources to cite in its administrative rulemaking record constitutes a "procedural determination" within the meaning of 42 U.S.C. § 7607(d)(8), and so is governed by its channeling requirements for judicial review. The D.C. Circuit, which maintains exclusive jurisdiction for such challenges, *see* 42 U.S.C. § 7607(b)(1), has explained that this provision encompasses procedures for the "the creation and content of the administrative rulemaking record[,]" *Sierra Club*, 657 F.2d at 392. Plaintiffs' challenge to EPA's decision to cite the CWG in its rulemaking record is indisputably a challenge to the "creation and content" of that rulemaking record. *Id*. *See* 42 U.S.C. § 7607(d)(8); Compl. ¶ 103 (alleging that "EPA's reliance on and citations to the CWG Report in its proposed rule[] are unlawful"). The Clean Air Act makes clear that "[n]o interlocutory appeals shall be permitted with respect to such procedural determinations," and instead, that Plaintiffs must wait to assert their challenge to EPA's citation to CWG Report "at the time of the substantive review of the rule," and only then, "in the United States court of appeals for the appropriate circuit[.]" 42 U.S.C. § 7607(d)(8).

Plaintiffs meet none of those requirements here. They bring their challenge before the rule has even been finalized, and in a federal district court instead of the appropriate Court of Appeals. This Court accordingly lacks jurisdiction over their claims against EPA. *See Bowles v. Russell*, 55 l U.S. 205, 212-13 (2007) ("Because Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them"); *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185 (2023) (recognizing that Congress may preclude jurisdiction "explicitly, providing in so many words that district court jurisdiction will yield."). And again, EPA has not yet decided to take final action or to rely on the CWG's work. Merely citing to one report among dozens of others and seeking public comment on relevant issues is not and cannot be cause for interrupting the EPA's ability to implement its statutory obligations. Accepting that principle would go beyond Plaintiffs' FACA allegations here and have implications far beyond this rulemaking—any interested party could seek an injunction based on allegations that a source of information is improper under any legal theory. The purpose of notice-and-comment rulemaking is to present information to the public for input that informs and improves an agency's ultimate decision. Plaintiffs' requested relief improperly undermines that process as a general matter. But Congress was express here—parties may not pretermit a Clean Air Act rulemaking through collateral or interlocutory challenges.

To the extent Plaintiffs argue that EPA's citation to the CWG Report in its notice of proposed rulemaking constitutes final agency action (it does not, *see infra* 16-18), the Court still lacks jurisdiction, as such a challenge is governed by 42 U.S.C. § 7607(b)(1). "It is well-settled that subsection 307(b)(1) of the [Clean Air Act] provides the exclusive means of obtaining review of final actions by EPA under the CAA." *Royster-Clark Agribusiness, Inc. v. Johnson*, 391 F. Supp. 2d 21, 26 (D.D.C. 2005) (collecting cases). The Supreme Court has interpreted section 307(b)(1) broadly to cover every manner in which the agency may exercise its power under the Clean Air Act. *See Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 587–89 (1980) (phrase "any

other final action" is to be construed in accordance with its literal meaning so as to reach any action by Administrator that is final, not just final actions of Administrator similar to actions specifically enumerated in statute).

Because the Clean Air Act expressly displaces the APA cause of action Plaintiffs invoke, *see* 42 U.S.C. § 7607(b)(1), their APA, mandamus, and ultra vires claims should be dismissed as to EPA. Even if Plaintiffs had alleged a Clean Air Act claim, the D.C. Circuit, not this Court, would have jurisdiction over Plaintiff's challenge to EPA's citation to the CWG Report.

2. The Court Lacks Jurisdiction to Review Non-Final Agency Actions

Plaintiffs' claims against EPA also fail for want of "final agency action" under the Clean Air Act (and, for that matter, the inapplicable APA cause of action they improperly invoke). *See* 42 U.S.C. § 7607(b)(1) (providing for petitions for review of any final action under Clean Air Act section 202(a) or "any other nationally applicable regulations promulgated, or final action taken, by the Administrator under this chapter" in D.C. Circuit), *Lujan,* 497 U.S. at 882 (When "review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'"). In order for an agency action to be "final," it must mark the "consummation" of the agency's decision-making process and must be an action by which "rights or obligations have been determined," or from which "legal consequences will flow." *Bennett v. Spear,* 520 U.S. 154, 177–78 (1997). Plaintiffs allege only two "final agency actions" in their Complaint: (1) the "establishment, operation, and utilization of the [CWG]," Compl. ¶¶ 98, 112; and (2) the "planning and holding of [CWG] meetings, and instructing and permitting the group to plan and hold meetings," Compl. ¶ 106. As noted above, however, Plaintiffs offer only legal conclusions, "naked assertions devoid of further factual enhancement," and "a formulaic recitation of the elements of a cause of action" as to EPA's involvement in these events. *Iqbal*, 556 U.S. at 678; *see supra* 9-11. Such conclusory allegations are plainly insufficient to state a claim as to EPA.

Again, the only specific EPA action identified by Plaintiffs in their Complaint is the agency's publication of an NPRM that cites a CWG report. Compl. ¶¶ 51-52. However, it is well established that notices like EPA's are the paradigm of *non-final* agency action, as they merely propose, rather than adopt, new rules. By definition, "[p]roposed rules meet neither of the two requirements for final agency action: (i) They are not the 'consummation of the agency's decisionmaking process,' and (ii) they do not determine 'rights or obligations,' or impose legal consequences." *In re Murray Energy Corp.*, 788 F.3d at 334(quoting *Bennett*, 520 U.S. at 177-78). *See also Pub. Citizen v. Bowen*, 833 F.2d 364, 366 (D.C. Cir. 1987) ("The 1985 notice, even without the later developments, bore considerable indicia of non-finality," including "the location of the statement in a notice of *proposed* rulemaking."). Plaintiffs cannot circumvent the Clean Air Act's finality requirement to indefinitely delay EPA's rulemaking by alleging that another agency violated FACA. Neither the Clean Air Act nor the APA provides jurisdiction for Plaintiffs' premature claims against EPA.

Plaintiffs' invocation of the Mandamus Act, 28 U.S.C. § 1361, and "[n]onstatutory" *ultra vires* review principles fares no better. *See* Compl. ¶¶ 123-131. Both "extraordinary" causes of action are unavailable when an adequate alternative remedy exists. *See Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 682 (2025) ("*ultra vires* review is not available because [plaintiffs] had an alternative path to judicial review."); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 985 F.3d 122, 127 (1st Cir. 2021) ("the party seeking mandamus relief must demonstrate that there are no adequate alternative remedies available"). Here, that adequate alternative remedy for any injury caused by EPA's citation to the CWG Report is provided by the Clean Air Act, which sets out an exclusive pathway for judicial review of EPA's "promulgation or revision of regulations under" Clean Air Act section 202, 42 U.S.C. § 7607(d)(1), and specific the procedures for "the creation and content of the administrative rulemaking record[.]" *Sierra Club*, 657 F.2d at 392 (citing Clean Air Act Section 307). *See supra* 13-16. Because the Clean Air Act provides Plaintiffs with a

remedy *and* exclusive forum should EPA actually elect to rely on the CWG Report when issuing a final rule, their mandamus and *ultra vires* claims necessarily fail as to the EPA Defendants. *Cf. Citizens for Resp. & Ethics in Wash. v. SEC*, 916 F. Supp. 2d 141, 152 (D.D.C. 2013) ("The fact that Plaintiff's APA claim has failed in these circumstances does not prevent the APA from being an 'adequate means to attain relief' for mandamus purposes.").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss all claims against EPA and Administrator Zeldin.

Dated: September 4, 2025

Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

/s/ *Andrew J. Rising*
ANDREW J. RISING (D.C. Bar # 1780432)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW, Rm. 12520
Washington, D.C. 20005
Phone: (202) 514-0265
E-mail: andrew.j.rising@usdoj.gov

*Counsel for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have filed this document with the Court's ECF system, which sends notice to all parties identified on the NEF.

/s/ *Andrew Rising*
ANDREW J. RISING
Trial Attorney
United States Department of Justice