**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ENVIRONMENTAL DEFENSE FUND, *et al.*, | |
| *Plaintiffs*, | Case No. 1:25-cv-12249 |
| v. | |
| CHRISTOPHER WRIGHT, in his official capacity as Secretary of Energy, *et al.*, | |
| *Defendants*. | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION
AND A STAY, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
OR CONSOLIDATION UNDER RULE 65(A)(2)**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................... 1

I.     The Court Should Grant Summary Judgment.................................................... 1

II.    Plaintiffs Should Prevail on the Merits as a Matter of Law ............................. 2

   A.    The CWG Is a Federal Advisory Committee ............................................. 2

   B.    Defendants Violated FACA's Requirements ............................................. 6

   C.    The CWG's Abrupt Dissolution Does Not Moot Plaintiffs' Claims ............................. 9

III.   Absent an Injunction, Plaintiffs Will Suffer Irreparable Harm........................ 12

IV.    The Balance of Equities and Public Interest Merit an Injunction ..................... 13

V.     Plaintiff's Requested Relief is Appropriate ..................................................... 14

   A. The Court Should Grant All Requested Relief Against DOE and the CWG................. 14

   B. Relief Against EPA Is Appropriate ............................................................ 18

## TABLE OF AUTHORITIES

**Cases**

*Alabama-Tombigbee Rivers Coal. v. Dep't of Interior*,

26 F.3d 1103 (11th Cir. 1994) ...................................................................................... 16, 17, 18

*Ass'n of Am. Universities v. Dep't of Energy*, No. 25-CV-10912-ADB,

2025 WL 1414135 (D. Mass. May 15, 2025) ............................................................ 15

*Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175 (2023) ................................... 20

*Center for Biological Diversity v. Tidwell*, 239 F. Supp. 3d 213 (D.D.C. 2017)              11

*Cummock v. Gore*, 180 F.3d 282 (D.C.Cir. 1999) ........................................................ 10

*Data Mktg. P'ship, LP v. United States Dep't of Lab.*, 45 F.4th 846 (5th Cir. 2022) ................. 15

*Dunlap v. Presidential Advisory Comm'n on Election Integrity*,

286 F. Supp. 3d 96 (D.D.C. 2017) ......................................................................... 14

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167 (2000) .................. 11

*Griffin v. HM Fla.-ORL, LLC*, 144 S. Ct. 1 (2023) ..................................................... 15

*Heartwood, Inc. v. U.S. Forest Serv.*, 431 F. Supp. 2d 28 (D.D.C. 2006) ................................. 4, 6

*Idaho Wool Growers Assoc. v. Schafer*, 637 F. Supp. 2d 868 (D. Idaho 2009) ................. 4, 16, 19

*Idaho Wool Growers Assoc. v. Schafer*, No. CV-08-394-S-BLW,

2009 WL 3806371 (D. Idaho Nov. 9, 2009) .............................................................. 5

*Joyce v. John Hancock Fin. Servs., Inc.*, 462 F. Supp. 2d 192 (D. Mass. 2006) ........................ 14

*Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*, 219 F. Supp. 2d 20 (D.D.C. 2002) ................ 10

*N.H. Motor Transp. Ass'n v. Rowe*, 448 F.3d 66 (1st Cir. 2006) .................................... 10

*NAACP Legal Def. & Educ. Fund, Inc. v. Barr*, 496 F. Supp. 3d 116 (D.D.C. 2020) ................. 16

*Nader v. Baroody*, 396 F. Supp. 1231 (D.D.C. 1975) .................................................. 4

*National Anti-Hunger Coalition v. Executive Committee of President's Private*

*Sector Surv. on Cost Control*, 557 F. Supp. 524 (D.D.C. 1983) ................................. 5

*National Anti-Hunger Coalition v. Executive Committee of the President's Private*

*Sector Survey on Cost Control*, 557 F. Supp. 2d ..................................................... 5

*Nat'l Ass'n of Consumer Advocs. v. Uejio*, 521 F. Supp. 3d 130 (D. Mass. 2021) ........... 11, 16, 19

*Public Citizen v. Nat'l Advisory Comm. on Microbiological Criteria for Foods*,
   886 F.2d 419 (D.C. Cir. 1989) ................................................................. 4

*Public Citizen v. United States Department of Justice*, 491 U.S. (1989) ................................ 9, 12

*Rowe v. New Hampshire Motor Transport Association*, 552 U.S. 364 (2008)........................... 10

*Sierra Club v. Costle*, 657 F.2d 298 (D.C. Cir. 1981) ................................................... 20

*Smith v. Jones*, 106 F.4th 56 (D.C. Cir. 2024)........................................................... 21

*Trump v. CASA, Inc.*, 145 S. Ct. 2540 (2025) ....................................................... 18, 20

*Union of Concerned Scientists v. Wheeler*, 954 F.3d 11 (1st Cir. 2020) ................................. 20

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200 (2015)........................ 18

*W. Org. of Res. Councils v. Bernhardt*, 412 F. Supp. 3d (D. Mont. 2019)....................... 16, 17, 18

*Young v. EPA*, 633 F. Supp. 3d 181 (D.D.C. 2022)................................................... 21

**Statutes**

5 U.S.C. § 706(2) ..................................................................................... 15

5 U.S.C. § 1001(2) ............................................................................ 2, 4, 8, 18

5 U.S.C. § 1004(b)(2) .................................................................................. 7

5 U.S.C. § 1005(c)(1) ................................................................................. 14

5 U.S.C. § 1008(c) ..................................................................................... 6

5 U.S.C. § 1009 ....................................................................................... 7

42 U.S.C. § 7607(b)(1)............................................................................ 19, 20

42 U.S.C. § 7607(d)(8)............................................................................... 19

**Rules**

Fed. R. Civ. P. 19(a) ................................................................................. 19

Fed. R. Civ. P. 65(d)(2)(C) ........................................................................... 19

**Regulations**

41 C.F.R. § 102-3.40(e) ............................................................................ 3, 6

41 C.F.R. § 102-3.60(b)(3) ............................................................................ 7

41 C.F.R. §§ 102-3.65(a) ............................................................................. 6

41 C.F.R. § 102-3.150(a) .............................................................................. 7

41 C.F.R. § 102-3.165(b)-(c) .......................................................................... 7

## INTRODUCTION

For months, Defendants brazenly violated the Federal Advisory Committee Act. They constituted the Climate Working Group (CWG) in secret, had it meet in secret to produce a report with advice and recommendations for policymakers, and then provided the report to EPA in secret for use in a proposal to rescind EPA's Endangerment Finding. Defendants present no serious argument that they did not violate FACA in taking all of these actions. Instead, when these actions were challenged in court, Defendants purported to dissolve the CWG the day before their opposition was due, and in their filing the next day, they argued that the dissolution mooted the case and left the Court powerless to provide relief for their many legal violations.

But the rule of law is not a game of catch me if you can. DOE, EPA, and the CWG violated FACA with every action they took producing and utilizing the CWG Report, and those unlawful actions continue to harm Plaintiffs in myriad ways. Indeed, Defendants do not dispute that the CWG lacked fairly balanced views—including views representative of those held by Plaintiffs—and was subject to inappropriate influence from Secretary Wright. The continued existence and use of the CWG Report produced with these legal infirmities significantly harms Plaintiffs, and there are multiple forms of declaratory, injunctive and Administrative Procedure Act relief that this Court may enter to redress these injuries.

## ARGUMENT

### I.    The Court Should Grant Summary Judgment

Defendants' opposition makes clear that there are no genuinely disputed facts and summary judgment is warranted. As described below, Defendants' sole merits argument on whether CWG is an advisory committee—that it did not provide "advice or recommendations" to the government—can be rejected as a matter of law based on the contents of the CWG Report.

Defendants do not dispute that the CWG meets all other criteria for being a federal advisory committee, nor do they dispute that they violated FACA in every way possible if the CWG is a committee. Accordingly, this Court can and should grant summary judgment to Plaintiffs.

Remarkably, Defendants' opposition barely addresses Plaintiffs' summary judgment request, even though Defendants relied on the fact that Plaintiffs sought summary judgment in opposing Plaintiffs' motion for expedition. Defendants argued that "[b]ecause Plaintiffs style their motion as one for a preliminary injunction or summary judgment and urge the Court to grant final judgment in their favor at this early juncture, … the Local Civil Rules for this district would ordinarily provide Defendants with 21 days—until September 4, 2025—to file their response." ECF 26 at 2 (citing L.R. 56.1). Defendants urged the Court to set a schedule as provided under Local Rule 56.1. *Id.* at 4. The Court granted this request.

Having received this longer schedule, Defendants now proceed as if summary judgment is not before the Court. Their sole reference to summary judgment in their opposition is a footnote at the end of their brief, asking that "if the Court is inclined to move directly to final judgment, Defendants respectfully request that the parties be permitted to submit additional briefing on the appropriate remedies for the FACA violations alleged." Opp. 20 n.9. Plaintiffs' motion made detailed requests for relief "if the Court enters summary judgment," Pls. Mot. 18-19.  Defendants had their opportunity to respond to these requests, and the Court should not reward Defendants' litigation gamesmanship by allowing them to secure further delay.

## II.  Plaintiffs Should Prevail on the Merits as a Matter of Law

### A.  The CWG Is a Federal Advisory Committee

Defendants' sole argument that the CWG is not an advisory committee is that it did not provide "advice or recommendations for . . . one or more agencies." 5 U.S.C. § 1001(2).

Defendants do not dispute that the other statutory criteria are met, or that the CWG satisfies the multi-part test other courts have applied to determine advisory committee status. Pls. Mot. 11-12.

The CWG Report itself establishes that the CWG provided "advice or recommendations" to the federal government and was not merely "assembled to exchange facts or information with a Federal official(s)." 41 C.F.R. § 102-3.40(e). Just as Secretary Wright intended, *see*, ECF No. 17-1 at viii (CWG Report), the report provided advice and recommendations for federal officials on how to interpret relevant data, *id.* at 25, the evidence upon which federal officials should and should not rely, *id.* at 48, and the modeling approaches that should or should not be taken, *id.* at 125. Even Defendants admit that the Report offers federal officials the CWG's views on the "reliability of particular facts or information." Opp. 9. Opinions on the "reliability" of information constitute advice. Moreover, the CWG provided very specific policy advice, beyond commenting on the "reliability" of information. The CWG advised, for example, that the "economic effects" of carbon-dioxide induced warming "are too small to justify aggressive abatement policy" and that "trying to 'stop' or cap global warming even at levels well above the Paris target would be worse than doing nothing." ECF No. 17-1 (CWG Report) at 116. That is advice, not an "exchange of facts."

The "Concluding thoughts" to the report put to bed Defendants' assertion that the report has only a "factual focus."  Opp. 8. The Concluding thoughts provide several pieces of concrete advice or recommendations for federal policymakers:

- The CWG advises agencies that the "report supports a more nuanced and evidence-based approach for informing climate policy that explicitly acknowledges uncertainties."

- The CWG strongly recommends to federal officials that "[t]he risks and benefits of a climate changing under both natural and human influences must be weighed against the costs, efficacy, and collateral impacts of any 'climate action', considering the nation's need for reliable and affordable energy with minimal local pollution."

- The CWG advises policymakers that "it will be important to make realistic assumptions about future emissions, re-evaluate climate models to address biases and uncertainties, and clearly acknowledge the limitations of extreme event attribution studies."

- The CWG advises officials that it "is essential for informed and effective decision-making" that they take "[a]n approach that acknowledges both the potential risks and benefits of CO2, rather than relying on flawed models and extreme scenarios."

CWG Report at 130. These statements reflect "advice or recommendations" under any definition.

Defendants appear to recognize that the "Concluding thoughts" constitute advice and recommendations, but argue that FACA applies only to "recommendations on an identified governmental policy." Opp. 10 (quoting *Nader v. Baroody*, 396 F. Supp. 1231, 1234 (D.D.C. 1975)). FACA's text contains no such limitation; the statute applies where a group provides "advice or recommendations" to federal officials. 5 U.S.C. § 1001(2). In any event, the CWG did provide advice and recommendations on an "identified governmental policy"—the appropriate regulation of greenhouse gas emissions.

Moreover, even if the CWG Report did provide only factual information to the federal government to inform its policymaking (which it did not), the CWG would still be an advisory committee. Numerous courts have held that "[a]dvisory panels that support decision makers with data, and not policy advice or recommendations, can be considered advisory committees under the FACA." *Heartwood, Inc. v. U.S. Forest Serv.*, 431 F. Supp. 2d 28, 34 (D.D.C. 2006) (citing *Northwest Forest Res. Council v. Espy,* 846 F. Supp. 1009, 1013 (D.D.C.1994) and *Public Citizen v. Nat'l Advisory Comm. on Microbiological Criteria for Foods*, 886 F.2d 419 (D.C. Cir. 1989)). "Nothing supports the assertion that the 'FACA should not apply to advisory committees consisting only of technicians who supply the decisions-makers with data.'" *Id.* (quoting *Northwest Forest,* 846 F. Supp. at 1013). Where a group "supplied [an agency] with information used to make subsequent policy decisions," it functions as an advisory committee. *Idaho Wool Growers Assoc. v. Schafer*, 637 F. Supp. 2d 868 (D. Idaho 2009), *order clarified*, 2009 WL

4

3806371 (D. Idaho Nov. 9, 2009). Here, the CWG supplied its report to the government, which then used the report for subsequent policy decisions, including the proposed rulemaking to rescind the Endangerment Finding and vehicle emissions standards.

Although not necessary to find the CWG an advisory committee, the evidence and Defendants' own statements refute their assertion that the CWG Report "was not *intended* to underlie a specific policy decision." Opp. 10 n.3 (emphasis added). DOE commissioned the report shortly before EPA was to release its proposal to rescind the Endangerment Finding, the CWG provided a draft of its report to DOE and EPA, and EPA then relied extensively on the report in its proposed rulemaking. If that were not enough, DOE released the CWG Report on the same day as the EPA proposed rulemaking, and in so doing, DOE announced: "The report was published today *as part of the U.S. Environmental Protection Agency's (EPA) proposed rule repealing the 2009 Endangerment Finding*."[1] The CWG Report was so central to EPA's proposed rulemaking that Defendants considered it "part of" the rulemaking.

Defendants cite *National Anti-Hunger Coalition v. Executive Committee of President's Private Sector Surv. on Cost Control*, 557 F. Supp. 524, 529 (D.D.C. 1983), for the notion that groups that only gather information and perform studies are not advisory committees, but Defendants distort the court's holding. *See* Opp. 8-9. In that case, after the President established an "Executive Committee of the Private Sector Survey," a private "Foundation" was formed to provide "facilities and staff support" to the Executive Committee, and the Foundation created thirty-six "task forces" to provide those services to the Committee. 557 F. Supp. 2d at 526. The district court held that the task forces were not federal advisory committees because "they [did]

---

[1] Department of Energy Issues Report Evaluating Impact of Greenhouse Gasses on U.S. Climate, Invites Public Comment, July 29, 2025, https://perma.cc/GTD9-CK9Z (emphasis added).

not directly advise the President or any federal agency," but rather "provide[d] information and recommendations for consideration to the [Executive] Committee." *Id.* at 529. The fact-gathering nature of the task forces was *not* the basis for the court's holding, as Defendants imply. It was that the task forces reported to the Executive Committee rather than an agency.

Defendants' contention that the CWG is exempt from FACA because it was "assembled to exchange facts or information with a Federal official(s)" can be easily rejected. Opp. 10 (citing 41 C.F.R. § 102-3.40(e)). Defendants cite no case that has ever held a committee exempt from FACA on this basis, and there is no reason for this case to be the first. The CWG Report makes clear that the CWG was not "assembled" to have a two-way "exchange" of information. *Heartwood*, 431 F. Supp. 2d at 35. As the CWG explained, "Secretary Wright assembled an independent group to write a report" to inform federal policymakers "on issues in climate science relevant for energy policymaking." CWG Report at x. Secretary Wright emphasized the independence of the CWG members in furnishing the report, highlighting that "[w]hat you'll read are their words." *Id.* at viii. And, in practice, there was no meaningful "exchange" of information. That DOE had a handful of its employees "review[]" the report and offer comments, CWG Report at x, does not mean that the CWG "functioned to increase the flow of information between private groups and the executive branch," *Heartwood*, 431 F. Supp. 2d at 36 (quotations omitted). It certainly does not mean that the CWG was "assembled" for the purpose of facilitating a two-way exchange of information. 41 C.F.R. § 102-3.40(e).

### B.  Defendants Violated FACA's Requirements

Defendants do not dispute that, if FACA applies, they have violated it. Nor could they. They violated each of FACA's requirements in establishing and constituting the CWG: they failed to publish a Federal Register notice announcing the CWG, 41 C.F.R. §§ 102-3.65(a); failed file a charter containing required information, 5 U.S.C. § 1008(c); and failed to submit a

Membership Balance Plan to GSA describing DOE's "plan to attain fairly balanced membership" based on " broad outreach," 41 C.F.R. § 102-3.60(b)(3).

Critically, Defendants do not dispute on the merits that the CWG's membership is *not* "fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee." 5 U.S.C. § 1004(b)(2). That fact is readily apparent: Defendants sought to include only individuals who represented a singular viewpoint countering the general scientific consensus on climate change. Defendants also do not contest that they failed to make "appropriate provisions to assure that the advice and recommendations of the advisory committee [would] not be inappropriately influenced by the appointing authority." *Id.* § 1004(b)(3). Remarkably, Defendants do not even contest that Secretary Wright *did* inappropriately influence the CWG, by tasking it with a predetermined goal. Pls. Mot. 16. There are thus no disputed facts that Defendants violated these core FACA requirements to ensure the impartiality and integrity of an advisory committee's work, and that the CWG Report is the product of inappropriate influence and a slanted committee membership.

Also undisputed is that Defendants operated the CWG in violation of FACA. They did not provide notice of meetings and did not allow the public "to attend, appear before, or file statements" at the meetings. 5 U.S.C. § 1009(a)(2)-1(3); 41 C.F.R. § 102-3.150(a). To date, Defendants have not disclosed the records or meeting minutes that FACA requires to be disclosed, 5 U.S.C. § 1009(b)-(c); 41 C.F.R. § 102-3.165(b)-(c).

With respect to DOE, Defendants do not contest that if the CWG is an advisory committee, then every action taken by DOE in relation to the CWG Report constitutes unlawful "utilization" for FACA purports. That includes tasking the CWG with writing a report on specific topics for specific purposes, DOE's transmission of the report to EPA, and DOE's

publication of the report on its website. Defendants do not dispute that each of these DOE actions taken without complying with FACA constitutes final agency action for APA purposes.

The sole aspect of FACA liability that Defendants contest if the CWG is deemed an advisory committee is that *EPA* utilized the CWG within FACA's meaning. Defs. MTD 10-11. Resolving that question is not necessary for relief against EPA to be warranted, but in any event, Defendants are wrong that EPA was not part of the unlawful utilization of the CWG. FACA expressly contemplates that advisory committees may be established or utilized by "one *or more* agencies." 5 U.S.C. § 1001(2)(A) (emphasis added). Accordingly, it is not necessary to show that EPA, on its own, "exercise[d] management and control over the CWG" or took other actions that constitute "utilization." Opp. 10. Rather, it is unlawful for multiple agencies—here, EPA and DOE—to jointly utilize an advisory committee that does not comply with FACA.

That is what occurred here. Dr. Koonin, for example, reached out to the *EPA Administrator's* Chief of Staff in February 2025, offering "technical assistance from [himself] and colleagues in the review of the Endangerment Finding." Dkt No. 17-12. DOE then added Dr. Koonin to the CWG one month later. The CWG provided its draft report to DOE, which immediately forwarded it to EPA, *see* Dkt. No. 45 at 6, and EPA incorporated the report into its proposed rulemaking. The CWG Report was then released on July 29, 2025, "as part of the U.S. Environmental Protection Agency's (EPA) proposed rule repealing the 2009 Endangerment Finding," *supra* n.1. There can be no reasonable dispute that DOE and EPA worked hand-in-hand to utilize the CWG, all without complying with FACA's requirements.

*Public Citizen* concerned the separate question of whether the Executive Branch's reliance on a private entity's work (the ABA) could trigger FACA under the utilization prong, where the government did not "establish" the entity. *See* 491 U.S. at 457–58. The Supreme Court

read "utilize" narrowly in that factual context, to prevent FACA from swallowing all contexts where the Executive relies on outside advice. That factual scenario is not presented here, where the federal government established the CWG. And regardless, DOE's and EPA's joint control and use of the CWG meets even the heightened standard that the Supreme Court applied.

EPA's and DOE's joint utilization of the CWG represents final agency action. *Cf.* MTD 16–18. The agencies made final decisions to have the CWG provide advice on certain topics and to have EPA use that advice for specific purposes. Those decisions determined "rights or obligations" because they deprived Plaintiffs and others of their legal rights under FACA in connection with such actions, including the right to notice and monitoring of the committee's work, and the right to not have an advisory committee without fairly balanced views produce advice and recommendations. FACA's purposes would be gutted if the statute were read to allow an interagency shell game where one agency establishes a committee, charges it with a task, and then hands off its work product to a different agency to utilize without consequence.

### C.  The CWG's Abrupt Dissolution Does Not Moot Plaintiffs' Claims

Defendants seek to escape accountability for their legal violations by arguing that "most of Plaintiffs' claims are now moot due to the CWG's dissolution." Opp. 1; *see id*.at 11-13. That "dissolution," of course, occurred a day before Defendants' opposition brief was due, through a letter that one of the Defendants in this action (Secretary Wright) sent to the members of the CWG, another named defendant. *See* ECF No. 44-1. Before this suit, Defendants had no plans to dissolve the CWG; they labeled the report a "draft" and invited public comments. Member Judith Curry wrote that "[t]he CWG expects to expend considerable time responding to the comments." ECF No. 17-6 at 4. The motivations for Defendants' sudden dissolution of the CWG are plain. But Defendants' effort to sweep their legal violations under the rug is unavailing.

Defendants do not address the legal standard for mootness, but it is well established. "[T]he burden of establishing mootness rests squarely on the party raising it, and the burden is a heavy one." *N.H. Motor Transp. Ass'n v. Rowe*, 448 F.3d 66, 73 (1st Cir. 2006), *aff'd*, 552 U.S. 364 (2008). "To establish mootness, the party raising it must show that the court cannot grant *any effectual relief whatever* to its opponent. *Id.* (quotations omitted) (emphasis added). Defendants cannot meet this heavy burden with respect to any of Plaintiffs' requests for relief.

First, Defendants appear to acknowledge that Plaintiffs' claims seeking the disclosure of records are not moot. *See* Opp. 11, 13. Indeed, courts have uniformly found that "FACA rights" for records under Section 10(b) "are enforceable even after an advisory committee has been disbanded." *Cummock v. Gore,* 180 F.3d 282, 292 (D.C. Cir. 1999); *see also, e.g. Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp*., 219 F. Supp. 2d 20, 30 (D.D.C. 2002).

Plaintiffs' requests for injunctive relief and for APA vacatur of DOE's and EPA's actions are not moot either. As described in more detail *infra*, Plaintiffs seek both to enjoin future use of the CWG Report and to vacate under the APA all of DOE's and EPA's actions in establishing and utilizing the CWG and its report. All such relief would be "effectual" for Plaintiffs; it would mitigate the harm to Plaintiffs from the existence and use of a report carrying the government's imprimatur that was produced in violation of FACA, including FACA's requirements of fairly balanced views and no inappropriate influence. Plaintiffs have much more than an abstract interest in invaliding a report that lacks input from members holding Plaintiffs' viewpoint, and in enjoining use of the report in policymaking that will cut to the core of Plaintiffs' missions.

The declaratory relief Plaintiffs seek would also be meaningful. It would affirm that the CWG Report is legally invalid, which among other things would provide "Plaintiffs with ammunition for any future attack on the [CWG's] findings or any action taken in reliance on

those findings." *Nat'l Ass'n of Consumer Advocs. v. Uejio*, 521 F. Supp. 3d 130, 148 (D. Mass. 2021).

None of the cases relied upon by Defendants support a finding of mootness here. In *Center for Biological Diversity v. Tidwell*, the court noted in finding non-document production claims moot that there was no evidence that the committee in question had "completed its work and made its recommendations to the convening agency, such that a declaratory judgment would assist Plaintiff in challenging subsequent agency proceedings based on those recommendations." 239 F. Supp. 3d 213, 228 (D.D.C. 2017). That is not the case here. Defendants also cite *Uejio*, but the court there rejected the very same mootness arguments that Defendants make here. In *Uejio*, a task force dissolved after the plaintiffs filed suit alleging the task force violated FACA. 521 F. Supp. 3d 130, 146. The court found that, notwithstanding the dissolution, it could "redress Plaintiffs' alleged injuries resulting from each . . . FACA violation[]" by providing injunctive and declaratory relief. *Id.* at 147. Here, as in *Uejio*, Plaintiffs' harms that "stem from their inability to influence the [CWG]" and not "having access to a representative voice on the [CWG]," *id.*, remain redressible through injunctive and declaratory relief, as well as APA vacatur.

Even if any of the relief sought could be found moot, the voluntary cessation doctrine precludes a mootness finding. A defendant claiming mootness from its "voluntary cessation of a challenged practice . . . bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189-90 (2000). Defendants do not meet this "formidable burden." Secretary Wright's letter does not even say he was formally dissolving the CWG; it said that he was "confident" that "[we] *can* dissolve the Climate Working Group

without undermining that goal." ECF No. 44-1. Regardless, neither Secretary Wright nor any other defendant has "made it absolutely" clear that the CWG will not be reconstituted in some form, 528 U.S. at 189-90, nor have they promised to comply with FACA if that happens. To the contrary, just four days after the CWG was purportedly disbanded, one of its members suggested that the CWG would respond to public comments,[2] as was Defendants' plan prior to allegedly dissolving the group. *See* ECF No. 17-6 at 4. That statement alone precludes Defendants from meeting their burden under the voluntary cessation doctrine. None of Plaintiffs' claims are moot, including their claims to enjoin future CWG meetings that do not comply with FACA.

## III.    Absent an Injunction, Plaintiffs Will Suffer Irreparable Harm

If the Court enters summary judgment, the Court need not reach the question of irreparable harm to support preliminary relief. But Plaintiffs are suffering and will suffer irreparable harm absent an injunction, either a preliminary or permanent one.

With respect to access to the CWG's records, Defendants acknowledge that the "refusal to permit [plaintiffs] to scrutinize" the records "constitutes a sufficiently distinct injury to provide standing to sue." *Pub. Citizen*, 491 U.S. at 449; see Opp. 14. Defendants nonetheless contend that this informational injury is not "imminent or irreparable" because Plaintiffs are "in possession of the CWG Report" and "remain free to comment on the proposed rule at any time." Opp. 14. But Plaintiffs are suffering injury from the lack of committee *records* underlying that report—including emails and draft documents—which may greatly inform Plaintiffs' comments on the EPA's proposed rescission, which are due on September 22. Defendants do not address

---

[2] Steven E. Koonin, *At Long Last, Clarity on Climate*, WALL STREET JOURNAL (Sep. 7, 2025), https://www.wsj.com/opinion/at-long-last-clarity-on-climate-7c49bfb6?mod=itp_wsj,djemITP_h.

any of the cases cited by Plaintiffs holding that the failure to produce information in similar contexts constitutes irreparable harm. *See* Pls. Mot. 16.

As explained, Plaintiffs also continue to face irreparable harm resulting from the CWG's unlawful creation and publication of its report, and DOE's and EPA's unlawful establishment of the CWG and utilization of the report, where the report was produced in violation of FACA's fair-balance, open-meeting, and inappropriate influence requirements, among others. Pls. Mot. 17. Defendants' only response is to suggest that such harms are not "irreparable" because "[s]hould the Court ultimately determine that the CWG was an advisory committee," it could "issue a declaration that the Defendants' creation and administration of the group was therefore unlawful" or "require the Defendants to attach a disclaimer to the report stating that it was produced in violation of FACA." Opp. 16 & n.7 (citation modified). But this case *is* ripe for summary judgment now, and so the Court can (and should) enter the declaratory and permanent injunctive relief Plaintiffs have requested. If the Court does not enter final judgment, however, the Court should enter at least preliminary relief now to address Plaintiffs' irreparable harm from the existence, publication, and agency use of the CWG Report.

## IV.    The Balance of Equities and Public Interest Merit an Injunction

The equities and public interest weigh decisively in Plaintiffs' favor. As described, Defendants have unclean hands where they hid their legal violations for months, dissolved the CWG when challenged, and then claimed that the dissolution left the Court nearly powerless to enter relief. There are no equities in Defendants' favor. "[I]gnor[ing] the strictures imposed by FACA to prevent unbalanced commissions . . . leav[es] the public to pay any concomitant price." *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 286 F. Supp. 3d 96, 111 (D.D.C. 2017).

V.      **Plaintiff's Requested Relief is Appropriate**

   **A.  The Court Should Grant All Requested Relief Against DOE and the CWG**

The Court should grant each form of relief requested in Plaintiffs' opening brief as

against DOE and the CWG. Pls. Mot 18-20. Indeed, Defendants do not object to many of the

requests for relief against these Defendants, thereby waiving any argument against them. *See*

*Joyce v. John Hancock Fin. Servs., Inc.*, 462 F. Supp. 2d 192, 212 (D. Mass. 2006) (Young, J.).

   Records: Plaintiffs requested in their opening brief that, if the Court finds that the CWG

is an advisory committee, the Court should order Defendants to: (i) disclose all records falling

under Section 10(b) of FACA within two weeks; (ii) not redact any Section 10(b) documents

pursuant to the deliberative process privilege; and (iii) produce a *Vaughn* index for all emails and

other records related to the CWG not disclosed. Defendants have waived any objection to these

requests, and precedent supports each request regardless. Pls. Mot. 18-19.

   Declaratory Relief: Defendants likewise raise no substantive arguments against Plaintiffs'

requested declaratory relief against DOE and the CWG. *See* Pls. Mot. 18-19. Plaintiffs requested

that the Court declare that the CWG's establishment and existence was unlawful, and that "any

action" that the CWG took was unlawful. *Id.*; *see* 5 U.S.C. § 1005(c)(1) (prohibiting "any action"

by an advisory committee without filing a charter). The CWG's actions include holding

meetings, preparing and finalizing the report, and transmitting the report directly to DOE and

indirectly to EPA. The Court should declare each of those actions unlawful and null and void.

   The Court should further declare unlawful under the APA every agency action taken by

DOE that violated FACA. 5 U.S.C. § 706(2). Defendants do not dispute that every action taken

by DOE in establishing and utilizing the CWG without complying with FACA is final agency

action for APA purposes, and therefore the Court "shall . . . hold unlawful" each such action as

contrary to law. *Id.* DOE's unlawful actions establishing or utilizing the CWG include forming the CWG without public notice or complying with FACA's membership requirements, secretly commissioning its report to address specific topics, and utilizing its FACA-violative report by transmitting it to EPA and publishing it on DOE's website.

Vacatur: Defendants further do not dispute that the Court must "set aside" every agency action by DOE that violated the law. 5 U.S.C. § 706(2). Under the APA, to "set aside" an agency action means to vacate that action. *Ass'n of Am. Universities v. Dep't of Energy*, No. 25-CV-10912-ADB, 2025 WL 1414135, at *20 (D. Mass. May 15, 2025). The Court should further make clear that the legal effect of declaring unlawful and vacating DOE's actions is that those actions are "treated as though [they] had never happened" *Griffin v. HM Fla.-ORL, LLC*, 144 S. Ct. 1, 2 (2023) (Statement of Kavanaugh, J.). Accordingly, once an agency action is vacated, it is "formally nullif[ied] and revoke[d]." *Data Mktg. P'ship, LP v. United States Dep't of Lab.*, 45 F.4th 846, 859 (5th Cir. 2022). The CWG Report should be deemed *void ab initio*.

Even if the Court does not provide this relief through a final judgment at this time, the Court should preliminarily provide this relief under 5 U.S.C. § 705 or § 706(2), as explained in Plaintiffs' opening brief. *See* Pls. Mot. 19. Beyond erroneously asserting that this relief is moot, Opp. 12, Defendants mount no substantive arguments against it, waiving any such arguments.

Injunctive Relief:  The Court should enter several forms of injunctive relief against DOE. First, the Court should order DOE to remove the CWG Report from its website and refrain from disseminating it further, to effectuate the declaratory and vacatur relief described above. Second, the Court should prohibit DOE from relying upon the CWG Report in the future.

Although Defendants assert that use injunctions are "highly disfavored," Opp. 2, numerous courts have entered such injunctions *See, e.g.*, *Alabama-Tombigbee Rivers Coal. v.*

*Dep't of Interior*, 26 F.3d 1103, 1107 (11th Cir. 1994) (entering full use injunction); *W. Org. of Res. Councils v. Bernhardt*, 412 F. Supp. 3d 1227, 1243 (D. Mont. 2019) (same); *Idaho Wool Growers*, 637 F. Supp. 2d at 880 (enjoining use in rulemaking); *NAACP Legal Def. & Educ. Fund, Inc. v. Barr*, 496 F. Supp. 3d 116, 145 (D.D.C. 2020) (ordering "that defendants may not . . . rely on any report or recommendations produced by the Commission until the requirements of FACA are satisfied"). A court in this District has also endorsed use injunctions as potentially appropriate. *Nat'l Ass'n of Consumer Advocs. v. Uejio*, 521 F. Supp. 3d 130, 144 (D. Mass. 2021).

If ever there were a case where a use injunction is warranted, it is this one, where Defendants brazenly violated FACA and engaged in gamesmanship to avoid accountability. First, "[g]iven the foundational nature of the FACA violation at issue here, a use injunction is warranted." *Bernhardt*, 412 F. Supp. 3d at 1242. "[T]he FACA violation at issue here goes to the very creation and existence of the advisory committee." *Id.* at 1242-43. The Secretary of Energy secretly commissioned this group, personally constituted its membership to include only individuals sharing his viewpoints, and tasked the group with writing a report for the express purpose of providing advice and recommendations upon which the federal government could rely. Secretary Wright and DOE knew that the group's members were not government employees, and knew or should have known that the entire endeavor flew in the face of FACA.

Worse yet, when Plaintiffs discovered and challenged the flagrant FACA violations, Defendants "dissolved" the CWG the day before their opposition was due, and then leveraged the dissolution to argue that the Court cannot grant effective relief. *See* Opp. 11-13. Defendants rely on the dissolution to argue against a use injunction specifically, contending that "[a] use

injunction is particularly inappropriate here because the CWG has been dissolved and will no longer meet, deliberate or generate documents or records." Opp. 19 (quotations omitted).

It would make a mockery of FACA and the rule of law to allow DOE to secretly create and operate the CWG in violation of FACA—a law designed to require transparency for such committees—and then have free rein to use the committee's work product because DOE kept its legal violations secret for long enough. "A simple 'excuse us' . . . would make FACA meaningless" in these circumstances. *Alabama-Tombigbee*, 26 F.3d at 1106; *see also Bernhardt*, 412 F. Supp. 3d at 1243-44.

Defendants make two arguments against a use injunction as applied to DOE, but neither holds water. Defendants contend that Plaintiffs lack standing to seek this relief based on being "denied an opportunity to participate at past meetings . . . [or] access to committee records." Opp. 18. But those are not Plaintiffs' only injuries. Plaintiffs also suffer injury from the lack of fairly balanced viewpoints on the CWG, including the lack of a representative voice for Plaintiffs, and from the inappropriate influence exerted on the group. Plaintiffs would suffer these harms acutely if DOE relied upon a report produced in violation of these requirements.

Defendants also argue that a use injunction would have "First Amendment implications," Opp. 20, but the First Amendment has no bearing here. Plaintiffs seek to enjoin *federal agencies* from using the CWG Report for official purposes. Federal agencies lack First Amendment rights and government speech is not First Amendment-protected. *See Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015). A use injunction against DOE would not prevent the individual members of the CWG from speaking in any way.

### B. Relief Against EPA Is Appropriate

Defendants have separately moved to dismiss Plaintiffs' claims against EPA and Administrator Zeldin. *See* Dkt. No. 47. Plaintiffs will respond to the motion to dismiss in due course. For present purposes, nothing in Defendants' motion to dismiss affects the relief that Plaintiffs seek against the EPA defendants in the present motion.

*First*, as explained, courts have held that "use injunctions" are appropriate to remedy FACA violations if "the unavailability of an injunctive remedy would effectively render FACA a nullity." *Bernhardt*, 412 F. Supp. 3d at 1242 (quotations omitted). Here, injunctive relief is appropriate as to EPA to ensure the government cannot use the product of a "tainted procedure" to "circumvent the very policy that serves as the foundation of" FACA. *Alabama-Tombigbee Rivers*, 26 F.3d at 1107. Contrary to Defendants' suggestion, nothing in FACA suggests that remedies for FACA violations must be limited to a single agency. *See* MTD 10. As noted, FACA contemplates that advisory committees may be established or utilized by "one *or more* agencies," 5 U.S.C. § 1001(2)(A), recognizing the reality that a committee's work product may be used by multiple agencies across the Executive Branch.

*Second*, relief against EPA is independently warranted to afford Plaintiffs "complete relief," a principle that "has deep roots in equity." *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2556 (2025). A use injunction against only DOE would provide cold comfort to Plaintiffs if EPA could turn around and rely on the CWG's work as part of its enormously consequential rulemaking, which was Defendants' intent all along. Relief against EPA is thus also appropriate under longstanding complete-relief principles that are reflected in equity jurisprudence as well as the Federal Rules of Civil Procedure. *See CASA*, 145 S. Ct. at 2556; *see also* Fed. R. Civ. P. 65(d)(2)(C) (preliminary injunction binds others "in active concert or participation with" the

parties); Fed. R. Civ. P. 19(a) (party must be joined as defendant if "in that person's absence, the court cannot accord complete relief among existing parties").

*Third*, Plaintiffs have standing to seek relief against EPA. Contrary to Defendants' suggestion (at MTD 9), all of the Article III elements are satisfied. Plaintiffs' informational and representational injuries are traceable not only to DOE's unlawful creation of the CWG but also to EPA's use of the CWG report. *See Idaho Wool Growers*, 637 F. Supp. 2d at 880. An injunction prohibiting EPA from using the report would redress Plaintiffs' harms by ensuring that the product of a tainted procedure is not given any legal effect. *See Uejio*, 521 F. Supp. 3d at 147.

*Fourth*, the Clean Air Act does not divest this Court of jurisdiction over Plaintiffs' claims against EPA.. EPA mischaracterizes this suit in an attempt to force it into the Clean Air Act's judicial review provision for actions taken under that Act—and in so doing, delay review indefinitely.  Plaintiffs are not challenging a "final action taken … under" the Clean Air Act, 42 U.S.C. § 7607(b)(1) (*see* MTD 15). The relevant "final action" that EPA may take here is its final rescission of the Endangerment Finding, and Plaintiffs are not challenging that action in this case or seeking to enjoin it from happening. Plaintiffs also do not seek review of whether the CWG Report is "improper" as "a source of record information" for rulemaking. MTD 15. And Plaintiffs do not challenge any alleged failure by EPA to abide by the Clean Air Act's procedural requirements during the course of a rulemaking. MTD 14. Plaintiffs are not alleging any violations of the Clean Air Act; they are challenging and seeking redress for *FACA violations*. *See Union of Concerned Scientists v. Wheeler*, 954 F.3d 11, 17 (1st Cir. 2020).

EPA cites no precedent for its sweeping claim that EPA can evade FACA liability because a FACA violation merely relates to potential future action under an open Clean Air Act

rulemaking docket. Congress certainly wrote no such exemption into the text of FACA or the

Clean Air Act, which refers to judicial review of "any … final action taken … *under this*

*chapter*." 42 U.S.C. § 7607(b)(1) (emphasis added). As the Supreme Court recently confirmed,

"[a]n 'action' under § 7607(b)(1) is a 'particular exercis[e] of EPA authority undertaken pursuant

to [a] particular CAA provisio[n].'" *Oklahoma v. EPA*, 145 S. Ct. 1720, 1730 (2025) (quotation

omitted).[3] No "particular CAA provision" authorizes EPA to utilize an advisory committee or

regulates how EPA may do so.

Furthermore, a "statutory review scheme [like section 7607], though exclusive where it

applies," does not apply to claims that are not "of the type" that Congress sought to channel.

*Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 186-89 (2023). FACA violations clearly

are not "'of the type' Congress thought belonged within [section 7607's] statutory scheme."

Defendants point to no case where the D.C. Circuit has *ever* adjudicated a FACA claim when

exercising original jurisdiction under the Clean Air Act, nor do Defendants commit that such

challenges could even be brought. *See* MTD 13.

The mere fact that EPA's use of the CWG Report is *connected* to its proposed rescission

of the Endangerment Finding does not mean that Plaintiffs are challenging any "final action

taken" under the Clean Air Act. The Act therefore does not divest this Court of jurisdiction over

Plaintiffs' FACA claims against EPA, or preclude this Court from providing relief against EPA

as needed to provide "complete relief" for the FACA violations established. *See Young v. EPA*,

633 F. Supp. 3d 181, 187 (D.D.C. 2022) (Clean Air Act "does not divest the court of

jurisdiction" over FACA challenge), *vacated on other grounds*, 106 F.4th 56 (D.C. Cir. 2024).

---

[3] The cases on which EPA relies (at 14, 15-16) are inapposite. *Sierra Club v. Costle*, 657 F.2d
298 (D.C. Cir. 1981), merely explains that section 7607 of the Act sets forth requirements for
EPA to create an administrative record to support its rules—a familiar informal rulemaking
principle that does not speak to whether the Clean Air Act displaces review of FACA violations.

September 10, 2025

Respectfully submitted,

*/s/ Megan M. Herzog*
Sean H. Donahue (D.C. Bar. 450940)*
Megan M. Herzog (BBO No. 682948)
DONAHUE, GOLDBERG & HERZOG
1008 Pennsylvania Avenue, SE
Washington, DC 20003
(202) 277-7085
sean@donahuegoldberg.com
megan@donahuegoldberg.com

*/s/ John Robinson**
Daniel F. Jacobson (D.C. Bar 1016621)*
Lynn D. Eisenberg (D.C. Bar 1017511)*
John Robinson (D.C. Bar 1735989)*
JACOBSON LAWYERS GROUP PLLC
1629 K Street NW, Suite 300
Washington DC, 20006
(301) 823-1148
dan@jacobsonlawyersgroup.com
lynn@jacobsonlawyersgroup.com
john@jacobsonlawyersgroup.com

*Counsel for Plaintiffs Environmental Defense Fund and Union of Concerned Scientists*

*Counsel for Plaintiffs Environmental Defense Fund and Union of Concerned Scientists*

Vickie L. Patton (CO Bar 30370)*
ENVIRONMENTAL DEFENSE FUND
2060 Broadway, Suite 300
Boulder, CO 80302
(720) 837-6239
vpatton@edf.org

Erin Murphy (FL Bar 1000501)*^
ENVIRONMENTAL DEFENSE FUND
555 12th St NW, Suite 400
Washington, D.C. 20004
(202) 572-3525
emurphy@edf.org

*Counsel for Plaintiff Environmental Defense Fund*

*Admitted Pro hac vice
^Practicing pursuant to D.C. Ct. App. Rule 49(c)(3)