```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS


_____
                                    )
ENVIRONMENTAL DEFENSE FUND, INC.;   )
AND UNION OF CONCERNED SCIENTISTS,  )
                                    )
                Plaintiffs,         )
        v.                          )
                                    )
CHRISTOHPER WRIGHT, in his          )
official capacity as Secretary of   )  CIVIL ACTION NO.
Energy; UNITED STATES DEPARTMENT    )  25-12249-WGY
OF ENERGY; LEE ZELDIN in his        )
official capacity as                )
Administrator of the U.S.           )
Environmental Protection Agency;    )
Climate Working Group; and UNITED   )
STATES ENVIRONMENTAL PROTECTION     )
AGENCY,                             )
                                    )
                Defendants.         )
_____)
```

YOUNG, D.J.                                    September 17, 2025

**ORDER**

**I.   INTRODUCTION**

   The Plaintiffs, Environmental Defense Fund, Inc. and the Union of Concerned Scientists ("the Plaintiffs") seek a preliminary injunction, or, in the alternative, summary judgement against Christohper Wright ("Secretary Wright"), in his official capacity as Secretary of Energy, the United States Department of Energy ("DOE"), Lee Zeldin in his official capacity as Administrator of the U.S. Environmental Protection

Agency ("Administrator Zeldin"), the Climate Working Group ("CWG"), and the United States Environmental Protection Agency ("EPA") (Acting Secretary Wright, DOE, Administrator Zeldin, CWG, and EPA are collectively, "the Defendants").  For the reasons stated below, the Motion for a Preliminary Injunction is **DENIED**.  The Motion for Summary Judgement is **GRANTED** in part.

### A.   Procedural History

On August 12, 2025, the Plaintiffs filed the complaint in this action.[1]  Two days later, on August 14, 2025, the Plaintiffs filed a motion for preliminary injunction or in the alternative for summary judgment.[2]  The motion is fully briefed.[3]

On September 4, 2025, the EPA and Administrator Zeldin filed a motion to dismiss for lack of jurisdiction which is not ripe, but set for a hearing on September 23, 2025.[4]

---

[1] Compl., ECF No. 1.
[2] Pls.' Mot. Prelim. Inj. & Stay/Mot. Summ. J., ECF No. 15.
[3] Mem. Supp. Pls.' Mot. Prelim. Inj. & Stay/Mot. Summ. J. ("Mem."), ECF No. 16; Decl. John Robinson, ECF No. 17; Decl. Dr. Lisa Dilling, ECF no. 18; Decl. Brenda Ekwurzel, ECF No. 19; Decl. Dylan Brock, ECF No. 20; Statement of Facts; ECF No. 21; Defs.' Mem. Opp'n Pls.' Mot. Prelim. Inj./ Mot. Summ. J. ("Opp'n"), ECF No. 43; Decl. Jeff Novak, ECF No. 44; Defs.' Res. Statement of Facts, ECF No. 45; Pls.' Reply Supp. Mot. Prelim. Inj. & Stay/Mot. Summ. J. ("Reply"), ECF No. 50-1.
[4] See EPA Defs.' Partial Mot. Dismiss, ECF No. 46; EPA Defs.' Mem. Supp. Partial Mot. Summ. J., ECF No. 47; Elec. Notice Hr'g, ECF No. 54.

On September 11, 2025, the Court held a hearing on the Plaintiff's Motion for Preliminary Injunction and for Summary Judgment, and took the matter under advisement.[5]

## II. ANALYSIS

### A. Motion for Preliminary Injunction

The Plaintiff's Motion for Preliminary Injunction is **DENIED**.

To obtain a preliminary injunction, a movant must make a clear showing that it is "likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Starbucks Corp. v. McKinney, 602 U.S. 339, 346 (2024) (internal quotation marks omitted). "A preliminary injunction is an 'extraordinary' equitable remedy that is 'never awarded as of right.'" Id. at 345–46 (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008)).

This Court rules that the Plaintiffs have failed to demonstrate irreparable harm in the absence of preliminary relief, and therefore, the motion is denied. The Plaintiffs allege that they will suffer such harm in the absence of this court's order requiring the Defendants to provide them with the

---

[5] Elec. Clerk's Notes, ECF No. 53.

Climate Working Group records.[6]  ECF No. 16 at 16.  They point to the impending close of public comment on the proposed rescissions of the Endangerment Finding and emissions regulations by the EPA on September 22nd, 2025, as constituting the core of their informational injury.  In addition, the Plaintiffs point to their impaired ability to "inform the public and advocate on behalf of their members on an 'ongoing proceeding[] of national importance.'"  Id. (citation omitted).

Informational injuries have been recognized by other courts to warrant preliminary relief in the FACA context.  See Pub. Citizen v. Nat'l Econ. Comm'n, 703 F. Supp. 113, 129 (D.D.C. 1989) (granting a temporary restraining order and temporary injunctive relief in a FACA dispute).

In this case, the Plaintiffs are injured by their inability to make informed comments regarding the Climate Working Group to EPA during the comment period.  Yet this injury is not irreparable.  Any challenge to the EPA's ultimate decision regarding the 2009 Endangerment Finding will likely arise in future proceedings.  If the Plaintiffs proceed with their litigation and succeed, there is no indication that they will not receive those documents in time to challenge a possible

---

[6] The Defendants – including the Climate Working Group – are all represented by the Department of Justice.  See Notice of Appearance, ECF No. 25.

[4]

future recission of the Endangerment Finding in court. Cf. Ctr. for Pub. Integrity v. United States Dep't of Def., 411 F. Supp. 3d 5 (D.D.C. 2019) (in which requested documents would be useful only for the historical record, as closure of the impeachment proceedings themselves were imminent). The Plaintiffs have submitted comments regarding their concerns about the validity of the Climate Working Group Report to the EPA as a part of the comment process. While these comments may not be as fully informed as they would otherwise have been had they had the documents they seek, their inability to submit them at this stage of the EPA's consideration of the Endangerment Finding does not constitute an irreparable injury. The Plaintiffs may challenge any final agency action that relies on the Climate Working Group Report in the future, once this challenge has been more thoroughly litigated.

    **B.**    **Motion for Summary Judgement**

The Plaintiff's Motion for Summary Judgment is **GRANTED** in part. Summary judgment is appropriate where "there is no genuine dispute of material fact." Quintana-Dieppa v. Dep't of Army, 130 F.4th 1, 7 (1st Cir. 2025) (citing Fed. R. Civ. P. 56(a)). "The moving party bears the initial burden of demonstrating that 'the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of

proof.'" Securities & Exch. Comm'n v. Sharp, 692 F. Supp. 3d 9, 10-11 (D. Mass. 2023) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). That being said, "[w]hen the moving party also bears the burden at trial, . . . its burden of proof includes 'producing incontrovertible prima facie evidence of its claims.'" Id. (quoting Atlantic Specialty Ins. Co. v. Karl's Boat Shop, Inc., 480 F.Supp.3d 322 (D. Mass. 2020)). "This is so because, even were the evidence supporting the party with the burden of proof uncontroverted, the fact finder could choose to disbelieve it." Atlantic Specialty Ins. Co., 480 F. Supp.3d at 329 n. 2 (citing Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 151 (2000)).

The Plaintiffs ask this court to declare the Climate Working Group an advisory committee subject to FACA. The Defendants oppose this motion for summary judgement on the grounds that the Climate Working Group is exempt from FACA because it was "assembled to exchange facts or information with a Federal official." 41 C.F.R. 102-3.40(e).

This Court rules that the Climate Working Group was not assembled to "exchange facts or information" in a manner that would bring it into the claimed exception. The 3.40(e) exception has, in the past, been held to apply to "ad hoc, individualized group[s]" rather than defined, organized groups.

[6]

See Heartwood, Inc. v. U.S. Forest Service, 431 F.Supp.2d 28, 35 (2006). An example of a committee that would fall into this exception was described in Nader v. Baroody, 396 F. Supp. 1231 (D.D.C. 1975), in which a White House program brought in a group of entirely new individuals every two weeks to "encourage an exchange of views" between Executive officials and the private sector. See Nader, 396 F. Supp. at 1232. Conversely, the exception was held inapplicable to a group that was "assembled for the single purpose" of drafting an ecological assessment to inform agency policy-making. Heartwood, 431 F.Supp.2d at 35. Even though the convening agency in Heartwood expressly asked the committee not to provide any recommendations in their draft report and emphasized that it made "no management decisions or recommendations", the court found the committee's work to have been done "in the interest of obtaining advice or recommendations for ... one or more agencies." Id. (quoting what is now 5 U.S.C. 10 §1001(2)(A)).

The Defendants allege that a "mutual exchange [of] facts or information" between government officials at DOE and the Climate Working Group "undisputably" occurred.[7] A single act of

---

[7] See Opp'n, ECF No. 43, at 10. ("Dr. Curry explained that '[t]he reviews [by DOE] were quite interesting and varied, and several were very useful. The CWG made a number of fairly minor changes to the Report in response to the reviews, and added a number of references, and we are responding in detail to their comments.' Id.")

[7]

incorporating feedback on a draft of an otherwise independent[8] report, however, is not analogous to the prolonged exchanges between indeterminate groups described in Nader and Food & Water Watch v. Trump, 357 F. Supp. 3d 1, 8 (D.D.C. 2018).  In both of those cases, no reports were ever produced and the informational exchange between government officials and the groups were the primary focus, rather than incidental byproduct, of the committees.

The Defendants' citation to Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Priv. Sector Surv. on Cost Control, 557 F. Supp. 524 (D.D.C.), aff'd, 711 F.2d 1071 (D.C. Cir. 1983) is inapposite.  There, the "task forces" determined to be exempt from FACA were created by a FACA Committee itself – whereas the undisputed facts in the instant case show that Secretary Wright himself invited the members of the Climate Working Group to participate.  Res. Statement. Facts, ECF No. 45 at 5.  Even in the case where an agency "expressly asked [the committee] not to provide any recommendations in their draft reports" and the "final publication emphasizes that it 'makes no management

---

[8] "We agreed to undertake the work on the condition that there would be no editorial oversight by the Secretary, the Department of Energy, or any other government personnel. This condition has been honored throughout the process and the writing team has worked with full independence." CWG Report at x, ECF No. 17-1.

decisions or recommendations'", that court found FACA to apply. <u>Heartwood</u>, 431 F.Supp.2d at 35.

So it is here. The conclusion of the report itself shows that it is no mere "review" of the literature. To suggest otherwise borders on sophistry. The report states that it

> supports a more nuanced and evidence-based approach for informing climate policy that explicitly acknowledges uncertainties. The risks and benefits of a climate changing under both natural and human influences must be weighed against the costs, efficacy, and collateral impacts of any "climate action", considering the nation's need for reliable and affordable energy with minimal local pollution. Beyond continuing precise, un-interrupted observations of the global climate system, it will be important to make realistic assumptions about future emissions, re-evaluate climate models to address biases and uncertainties, and clearly acknowledge the limitations of extreme event attribution studies. An approach that acknowledges both the potential risks and benefits of CO2, rather than relying on flawed models and extreme scenarios, is essential for informed and effective decision-making.

CWG Report, ECF 17-1, at 130. By advocating for an approach that "acknowledges both the potential risks and benefits of CO2" and "weighing" risks and benefits against costs and collateral impacts, the authors of this report have provided "advice or recommendations." 5 U.S.C. § 1001(2)(A). No reasonable jury could find that these words, arranged as they are, do not constitute advice or recommendations for a renewed approach to climate policy.

Since this Court rules that the 3.40(e) exception does not apply to the Climate Working Group, the Plaintiff's Motion for

[9]

Summary Judgement is **GRANTED** but as to non-applicability of the exception only. Next steps shall be discussed at the Hearing scheduled for Tuesday, September 23, 2025.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[9]

---

[9] This is how my predecessor, Peleg Sprague (D. Mass 1841-1865), would sign official documents. Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 47 years.