IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ENVIRONMENTAL DEFENSE FUND, *et al.*,

    *Plaintiffs*,

v.

CHRISTOPHER WRIGHT, in his official capacity as Secretary of Energy, *et al.*,

    *Defendants*.

Case No. 1:25-cv-12249

**PLAINTIFFS' BRIEF ON APPLICABILITY OF FOIA EXEMPTION 5 TO ADVISORY COMMITTEE RECORDS**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 3

    A.    FACA's and FOIA's Text .................................................................................... 3

    B.    FACA's Legislative History ................................................................................ 4

    C.    The 1988 Office of Legal Counsel Opinion ....................................................... 5

ARGUMENT ........................................................................................................................... 7

    A.    FACA's and FOIA's Plain Text Preclude the Application of Exemption 5 ........ 8

    B.    FACA's Purpose and Meeting Requirements Confirm Exemption 5 Does Not Apply ..... 9

    C.    Exemption 5 Does Not Protect Previously Privileged Records Sent to a Committee ...... 10

CONCLUSION ..................................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*Army Times Publ'g Co. v. Dep't of Air Force*, 998 F.2d 1067 (D.C. Cir. 1993) ............................ 8
*BP Am. Prod. Co. v. Burton*, 549 U.S. 84 (2006) ........................................................................ 10
*Dep't of Air Force v. Rose*, 425 U.S. 352 (1976) ........................................................................... 8
*Gates v. Schlesinger,* 366 F.Supp. 797 (D.D.C. 1973) ............................................................. 9, 10
*Heartwood, Inc. v. U.S. Forest Serv.*, 431 F. Supp. 2d 28 (D.D.C. 2006) ................................. 8, 9
*In re Sealed Case,* 121 F.3d 729 (D.C. Cir. 1997) ....................................................................... 10
*Pub. Citizen v. Dep't of Justice*, 491 U.S. 440 (1989) .................................................................... 9
*Shell Oil Co. v. IRS*, 772 F. Supp. 202 (D. Del. 1991) ................................................................. 10
*Washington Legal Found. v. Dep't of Justice*, 691 F. Supp. 483 (D.D.C. 1988) ........................... 9
*Wolfe v. Weinberger*, 403 F. Supp. 238 (D.D.C. 1975) ................................................................. 8

**Statutes**

5 U.S.C. § 552(b)(5) ........................................................................................................................ 4
5 U.S.C. § 552b(b) .......................................................................................................................... 3
5 U.S.C. § 1001(2) .......................................................................................................................... 8
5 U.S.C. § 1001(3) .......................................................................................................................... 8
5 U.S.C. § 1009(a) .......................................................................................................................... 3
5 U.S.C. § 1009(b) ...................................................................................................................... 4, 9
5 U.S.C. § 1009(c) .......................................................................................................................... 3
5 U.S.C. § 1010 .............................................................................................................................. 3

**Other Authorities**

12 U.S. Op. Off. Legal Counsel 73 (1988) (Ex. A) ................................................................ passim
Congressional Research Service, 95th Cong., 2d Sess.,
    Federal Advisory Committee Act 166, 280 (Comm. Print 1978) ........................................ 4, 5

**INTRODUCTION**

Plaintiffs respectfully submit this brief in response to the Court's December 8, 2025 request for briefing on whether and when Exemption 5 of the Freedom of Information Act (FOIA) can be a basis for withholding records of the Climate Working Group (CWG) under the Federal Advisory Committee Act's (FACA) open records requirements.

The plain text of FACA and Exemption 5, in conjunction with FACA's overriding purpose, make clear that an advisory committee such as the CWG cannot withhold records on the basis of the deliberative process privilege under Exemption 5. By its terms, Exemption 5 applies only to "intra-agency" or "inter-agency" records, and an advisory committee is not an "agency." Records created, sent, or received by an advisory committee therefore cannot fall under Exemption 5. The text of Section 10(b) of FACA, the Act's records disclosure provision, reinforces this conclusion. Congress explicitly required committees to disclose predecisional and deliberative materials such as "working papers," "drafts," and "studies," which would make no sense if advisory committees could simply invoke Exemption 5 to withhold predecisional and deliberative materials. FACA's overriding purpose to allow public scrutiny of committee deliberations eliminates any doubt that deliberative records must be disclosed.

The Court need not take Plaintiffs' word for it that Exemption 5 does not apply to advisory committee records. The Department of Justice has reached this very conclusion, in a 1988 Office of Legal Counsel (OLC) opinion that remains in effect. In that opinion, which is attached as Exhibit A to this filing, OLC concluded that "exemption 5 is not generally applicable to material prepared by or for any advisory committee." Ex. A, 12 U.S. Op. Off. Legal Counsel 73 (1988) ("OLC Op.") at 77. OLC's sole caveat was that, in its view, preexisting intra- or inter-

1

agency documents protected by the deliberative process privilege do not lose that status by virtue of being shared with an advisory committee.

In their brief filed earlier today, Defendants ask the Court to "refrain from any ruling on the extent to which the deliberative process privilege applies to this litigation," at least until after they produce a *Vaughn* index and Plaintiffs raise any objections. ECF No. 82 at 1. Respectfully, the Court should reject Defendants' effort to obtain further delay in producing highly time-sensitive records. The Court can and should rule now on purely legal issues regarding Defendants' ability to invoke the privilege for certain categories of records, which would make clear to Defendants which records they can or cannot attempt to withhold under Exemption 5.

In particular, consistent with the OLC Opinion, the Court should hold that Defendants categorically cannot invoke Exemption 5 to withhold from disclosure:

1. Documents, communications, and other records that were internal to the CWG;

2. Documents, communications, and other records that originated within the CWG and were sent to the Department of Energy (DOE), the Environmental Protection Agency (EPA), or another entity;

3. Documents, communications, and other records that were sent by DOE, EPA, or another entity *to* the CWG, except for any records that were predecisional, deliberative, and internal government records before being sent to the CWG.

There would be substantial efficiency to the Court's providing clarity as to these categories now. Indeed, because Defendants will submit their *Vaughn* index just two days before Christmas Eve, requiring Plaintiffs to move to compel records falling into these categories after Defendants submit the *Vaughn* index may result in material, needless delay.

2

Plaintiffs are amenable, however, to the Court's refraining from ruling on the category of records that OLC concluded could be withheld under Exemption 5; namely, internal government records that were covered by the deliberative process privilege before being shared with an advisory committee. Plaintiffs' position is that OLC erred in reaching this conclusion, but Plaintiffs are amenable to seeing whether any such records are in the *Vaughn* index before the Court need rule on this category of records. Plaintiffs respectfully request that the Court direct Defendants to include any and all such records in the *Vaughn* index.

## BACKGROUND

### A. FACA's and FOIA's Text

Section 10 of FACA imposes broad transparency requirements with respect to an advisory committee's operations and deliberations, and specifically with respect to a committee's meetings and records. The provisions regarding openness of committee meetings and records work hand-in-hand to ensure that the public has meaningful access to committee deliberations.

With respect to meetings, Section 10 requires that the public be able to attend and observe committee meetings. 5 U.S.C. § 1009(a). A committee may close off portions of its meetings only in narrow circumstances, which do not include that the committee is engaging in deliberations. *See* 5 U.S.C. § 1009(d); *see also* 5 U.S.C. § 552b(b) (setting forth narrow circumstances when meetings may be closed to the public, such as for discussion of national defense information or internal personnel rules). Indeed, for each meeting, committees must record and make public minutes that include "a complete and accurate description of matters discussed and conclusions reached," 5 U.S.C. § 1009(c), and committees must release transcripts of each committee meeting as well, *id.* § 1010.

3

As with meetings, Section 10(b) of FACA broadly requires that advisory committee records be open to the public. Section 10(b) provides: "Subject to section 552 of this title, the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee shall be available" to the public. 5 U.S.C. § 1009(b). Congress thus expressly included predecisional and deliberative materials, including "working papers," "drafts," and "studies," as among the types of records that committees must disclose.

Section 10(b)'s reference to "section 552 of this title" refers to the Freedom of Information Act. FOIA contains several exemptions to disclosure, including the exception at issue here for agency records covered by the deliberative process privilege. Specifically, Exemption 5 excludes from disclosure under FOIA "inter-*agency* or intra-*agency* memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5) (emphases added). Exemption 5 therefore is limited to records kept within an "agency" or exchanged between "agencies."

## B. FACA's Legislative History

FACA's legislative history underscores that Congress broadly intended for committee deliberations to be made public, including through transparency requirements for committee records. The House committee report described the importance of the open records provision in particular, stating that "[t]his provision has the effect of assuring openness in the operations of advisory committees," and "coupled with the requirement that complete and accurate minutes of committee meetings be kept," the records provision is a "strong safeguard of the public interest" that "serves to prevent the surreptitious use of advisory committees to further the interests of any special interest group." Congressional Research Service, 95th Cong., 2d Sess., Federal Advisory

Committee Act 166, 280 (Comm. Print 1978). Congressman Moorehouse highlighted the importance of access to committee deliberations, emphasizing that one "feature of the bill which must be applauded is the requirement for public access to the deliberations . . . of these advisory committees." *Id.* at 297.

On the Senate side, FACA's sponsor, Senator Metcalf, explained that FACA was addressing a concern that "there exist[ed] a tendency among advisory committees to operate in a closed environment, permitting little opportunity for the public to be informed of their deliberations and recommendations, and of the materials and information on which they rely." Congressional Research Service, 95th Cong., 2d Sess., Federal Advisory Committee Act 166, 198 (Comm. Print 1978). "[D]isclosure" is "fundamental," Senator Metcalf explained, because "[t]hose who get information to policymakers, or get information for them, can benefit their cause," and the people have the "right[] . . . to find out what is going on." *Id.* at 154. The Senate committee report thus concluded that "there was substantial merit in opening advisory committee deliberations and documentation to the public." *Id.* at 166.

C. The 1988 Office of Legal Counsel Opinion

In 1988, OLC directly addressed whether a federal advisory committee may withhold records from disclosure based on Exemption 5. *See* Ex. A, 12 U.S. Op. Off. Legal Counsel 73 (1988) ("OLC Opinion"). OLC "conclude[d] that *exemption 5 is not generally applicable* to material prepared by or for any advisory committee," with the sole exception being for pre-existing agency documents that were privileged before being shared with a committee. *Id.* at 77 (emphasis added).

OLC noted the potential tension between Section 10(b)'s inclusion of records that are inherently predecisional and deliberative, such as "working papers," "drafts," and "studies," and

5

Section 10(b)'s cross-reference to FOIA, which includes Exemption 5 for materials covered by the deliberative-process privilege. OLC explained that "it is necessary to presume that Congress did not intend to create an irreconcilable conflict between the two laws; i.e., on the one hand, to protect deliberative advisory committee materials from public inspection via exemption 5, but on the other, to order detailed disclosure of all 'records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents' that are otherwise covered by FACA." *Id.* at 76-77.

OLC resolved this tension by closely evaluating the text of FACA and Exemption 5, as well as FACA's legislative history. Starting with FACA's text, OLC concluded that Section 10(b)'s "enumeration in extensive detail of specific kinds of deliberative material subject to mandatory [disclosure] . . . provides the best evidence that the exemption 5 protection for deliberative materials was intended to have limited application as applied to FACA." *Id.* at 79. And, OLC found, "the express terms of exemption 5" do not cover most committee records because that exemption "protects only inter-*agency* and intra-*agency* memorandums," and an advisory committee is not an "agency." *Id.* at 80. Thus, OLC reasoned, "exemption 5 cannot generally apply to FACA advisory committees' documents" on "its [own] terms." *Id.* at 81.

OLC found that FACA's "legislative history reinforces the view that Congress intended the narrow application of exemption 5 to FACA." *Id.* at 79. "[K]ey legislators made numerous and essentially uncontradicted statements that they fully intended to provide the public with access to deliberative committee materials during the committee's lifetime." *Id.*

The one caveat to OLC's analysis was its conclusion that Exemption 5 does protect materials that were already privileged "intra-agency" or "inter-agency" materials, prior to being shared with an advisory committee by an agency. *See id.* at 82-83. In other words, according to

6

OLC, "documents transmitted to an advisory committee by an agency do not *lose* the protection of an agency's deliberative process exemption under FOIA." *Id.* at 83 (emphasis added). OLC did not point to textual support for this caveat, other than a need to give some "vitality to exemption 5 in the context of section 10(b) disclosure requirements." *Id.* at 83.

## ARGUMENT

In the interest of time and efficiency given the significant urgency to obtaining relevant CWG records, Plaintiffs respectfully request that the Court rule now that the following categories of records may not be withheld under Exemption 5, consistent with OLC's analysis:

- Internal CWG emails, memoranda, drafts, and other records,[1] i.e., documents and communications that were sent from one or more CWG members to other CWG members, or saved internal to the CWG.

- Emails, memoranda, drafts, and other records sent from CWG members to the DOE, EPA, another federal agency, officer or employee, or other entities or individuals.

- Emails, memoranda, drafts, and other records sent from a DOE, EPA, or other agency official to the CWG, without having been an internal, privileged government record before being sent to the CWG.

As other courts have found, the relevant statutory text, along with FACA's overriding purpose, strongly supports OLC's conclusion that Exemption 5 does not protect the above types of records from disclosure.

OLC's opinion would mean that the only records that Exemption 5 protects in this case are deliberative records that were internal to DOE and/or EPA—and properly subject to the deliberative process privilege—before they were shared with the CWG. As explained, Plaintiffs are amenable to the Court reserving ruling on that category of records at this time, but Plaintiffs briefly explain below why Exemption 5 does not shield this category of records either.

---

[1] Other records within each of the three categories would include messages sent via messaging apps, calendar invitations, outlines, meeting minutes, notes, or transcripts, and more.

7

In interpreting the scope and applicability of Exemption 5, it bears emphasis that, "as with all exemptions under FOIA, the deliberative process privilege must be construed as narrowly as is consistent with efficient government operation," since "'[d]isclosure, not secrecy, is the dominant objective' of FOIA's statutory scheme." *Army Times Publ'g Co. v. Dep't of Air Force*, 998 F.2d 1067, 1069-70 (D.C. Cir. 1993) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)).

### A. FACA's and FOIA's Plain Text Preclude the Application of Exemption 5

The plain text of FACA and Exemption 5 preclude advisory committees like the CWG from relying on the deliberative-process privilege to withhold records from disclosure.

Exemption 5's text suffices to resolve the matter. That exemption shields only "intra-agency" and "inter-agency" records, and an advisory committee such as the CWG is not an "agency." That advisory committees are not "agencies" follows from FACA's text and structure, which differentiates an "advisory committee" from an "agency" that establishes or utilizes a committee. *See* 5 U.S.C. § 1001(2). Indeed, FACA "contains a separate and distinct definition of an 'advisory committee'" and an "agency." *Wolfe v. Weinberger*, 403 F. Supp. 238, 243 (D.D.C. 1975). *Compare* 5 U.S.C. § 1001(2) *with id.* § 1001(3). Moreover, "the definition of 'advisory committee' in the Advisory Committee Act specifically excludes 'any committee which is composed wholly of fulltime officers or employees of the Federal Government,' thus providing further evidence that 'agency' and 'advisory committee' were not meant by Congress to be congruent concepts." *Wolfe*, 403 F. Supp. at 243. For these reasons, courts have consistently concluded that "[a]n advisory committee cannot have a 'double identity' as an agency." *Heartwood, Inc. v. U.S. Forest Serv.*, 431 F. Supp. 2d 28, 36 (D.D.C. 2006) (quoting *Wolfe*, 403

F. Supp. at 243); *accord Gates v. Schlesinger,* 366 F.Supp. 797, 800 (D.D.C. 1973); OLC Op. 81.

As these courts held and OLC agreed, because an advisory committee is not an "agency," "exemption 5 is inapplicable by its terms." *Gates*, 366 F. Supp. at 800; *see also Heartwood*, 431 F. Supp. 2d at 36 (similar); OLC Op. 81 ("These terms [intra-agency and inter-agency] do not apply to documents prepared by and in the possession of an advisory committee because an advisory committee within the meaning of FACA is neither an agency nor a sub-group within an agency."). Here, the CWG is not an agency, and accordingly Exemption 5 does not protect emails, memoranda, and other records generated, sent, or received by the CWG.

Section 10(b)'s text further confirms that the deliberative-process privilege does not shield advisory committee records. Section 10(b) requires that all types of advisory committee records "shall be available," including explicitly deliberative materials such as "working papers," "drafts," and "studies." 5 U.S.C. § 1009(b). The reference to these deliberative materials not only means that those specific categories of records must be disclosed, but also is compelling "evidence" that Congress did not intend Exemption 5 to apply to advisory committee records generally. OLC Op. at 79. It would have made no sense for Congress to list these categories of records as among those subject to disclosure if Congress intended the cross-reference to FOIA to mean that the deliberative-process privilege shields advisory committee records. *See id.*

### B. FACA's Purpose and Meeting Requirements Confirm Exemption 5 Does Not Apply

FACA's open records requirements must also be read in light of the statute's overall purpose, which is to allow the public to see an advisory committee's "deliberations." *See* OLC Op. at 79. "FACA was designed to abrogate the deliberative privileges." *Washington Legal Found. v. Dep't of Justice*, 691 F. Supp. 483, 495 n.56 (D.D.C. 1988), *aff'd sub nom. Pub. Citizen*

*v. Dep't of Justice*, 491 U.S. 440 (1989) (quotations omitted). Allowing an advisory committee to shield its deliberations from public disclosure, merely because those deliberations are in writing rather than at a committee meeting where deliberations must be public, would be "irreconcilable . . . with the very purpose of the Federal Advisory Committee Act." *Gates*, 366 F. Supp. at 800.

Indeed, applying Exemption 5 to advisory committee records would undercut and potentially neuter the open meeting requirements at the foundation of FACA. If Exemption 5 applied to advisory committee records, a committee seeking to avoid transparency would simply conduct all of its deliberations over email, messaging apps, and comment bubbles in documents, rather than holding any meetings in public view. The Court should reject any interpretation of Section 10(b)'s open records requirements that would produce such "disharmony" with Section 10(a)'s open meetings mandate. *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 99 (2006).

### C. Exemption 5 Does Not Protect Previously Privileged Records Sent to a Committee

For the reasons explained above, and as OLC concluded, Exemption 5 certainly cannot apply to any records that CWG members created or sent, or communications or documents for which CWG members were original recipients, since such records were never "intra-agency" or "inter-agency" records. But, contrary to OLC's view, Exemption 5 also does not apply to records that were once subject to the deliberative process privilege, before being shared with an advisory committee. It is black-letter law that a privileged document loses its privilege if sent to outsiders to the privilege. That principle applies with full force to the executive privilege. *See In re Sealed Case,* 121 F.3d 729, 741 (D.C. Cir. 1997) (noting that disclosure waives executive branch privileges as to the documents or information released); *Shell Oil Co. v. IRS*, 772 F. Supp. 202, 211 (D. Del. 1991) ("Where an authorized disclosure is voluntarily made to a non-federal party . . . the government waives any claim that the information is exempt from disclosure under the

deliberative process privilege [of FOIA Exemption 5]."). Thus, even if a document held by DOE or EPA was once covered by the deliberative-process privilege, the government waived that privilege the moment it sent any such record to the CWG.

As mentioned, however, Plaintiffs are amenable to the Court reserving ruling on this one narrow category of records, to see if any documents in the *Vaughn* index fall into this category. If such records do exist, the Court could then make a determination based on the facts and circumstances of the given records. But Plaintiffs request that the Court require that Defendants delineate any records or subparts of records withheld under this category in the *Vaughn* Index.

## CONCLUSION

For the reasons stated above, Exemption 5 is not a basis for withholding any CWG records otherwise subject to disclosure under FACA. Plaintiffs respectfully request that the Court rule now that, consistent with OLC's opinion, Defendants may not withhold any of the three categories of records specified *infra* page 7. As to the narrow category of intra- or inter-agency records sent to an advisory committee that OLC concluded could be withheld under this exemption, Plaintiffs request that the Court direct Defendants to specify any such records in the *Vaughn* index, to permit individualized determinations as to the applicability of Exemption 5.

| | |
|---|---|
| December 15, 2025 | Respectfully submitted, |
| | |
| */s/ Megan M. Herzog* | */s/ Daniel F. Jacobson*\* |
| Sean H. Donahue (D.C. Bar. 450940)\* | Daniel F. Jacobson (D.C. Bar 1016621)\* |
| Megan M. Herzog (BBO No. 682948) | Lynn D. Eisenberg (D.C. Bar 1017511)\* |
| DONAHUE, GOLDBERG & HERZOG | John Robinson (D.C. Bar 1735989)\* |
| 1008 Pennsylvania Avenue, SE | JACOBSON LAWYERS GROUP PLLC |
| Washington, DC 20003 | 1629 K Street NW, Suite 300 |
| (202) 277-7085 | Washington DC, 20006 |
| sean@donahuegoldberg.com | (301) 823-1148 |
| megan@donahuegoldberg.com | dan@jacobsonlawyersgroup.com |
| | lynn@jacobsonlawyersgroup.com |
| | john@jacobsonlawyersgroup.com |
| | |
| *Counsel for Plaintiffs Environmental Defense Fund and Union of Concerned Scientists* | *Counsel for Plaintiffs Environmental Defense Fund and Union of Concerned Scientists* |
| | |
| | Vickie L. Patton (CO Bar 30370)\* |
| | ENVIRONMENTAL DEFENSE FUND |
| | 2060 Broadway, Suite 300 |
| | Boulder, CO 80302 |
| | (720) 837-6239 |
| | vpatton@edf.org |
| | |
| | Erin Murphy (FL Bar 1000501)\*^ |
| | ENVIRONMENTAL DEFENSE FUND |
| | 555 12th St NW, Suite 400 |
| | Washington, D.C. 20004 |
| | (202) 572-3525 |
| | emurphy@edf.org |
| | |
| | *Counsel for Plaintiff Environmental Defense Fund* |
| | |
| | \*Admitted Pro hac vice |
| | ^Practicing pursuant to D.C. Ct. App. Rule 49(c)(3) |

## CERTIFICATE OF SERVICE

     I hereby certify that I have filed this motion with the Court's ECF system, which sends notice to all parties.

                                               */s/ Daniel F. Jacobson*