# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ENVIRONMENTAL DEFENSE FUND, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> CHRISTOPHER WRIGHT, in his official capacity as Secretary of Energy, *et al.*, <br><br> *Defendants*. | Case No. 1:25-cv-12249 |

## PLAINTIFFS' BRIEF ON REMEDIES WITH RESPECT TO THE DEPARTMENT OF ENERGY AND THE CLIMATE WORKING GROUP

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................. 1

BACKGROUND ............................................................................................................................. 2

ARGUMENT .................................................................................................................................. 4

    A.   Relief Against the DOE Defendants ............................................................................... 4

    B.   Relief Against the CWG ................................................................................................ 13

CONCLUSION ............................................................................................................................. 15

CERTIFICATE OF SERVICE .................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Alabama-Tombigbee Rivers Coal. v. Dep't of Interior*, 26 F.3d 1103 (11th Cir. 1994) .............. 12

*Ass'n of Am. Universities v. Dep't of Def.*, No. CV 25-11740-BEM,
    2025 WL 2899765 (D. Mass. Oct. 10, 2025) ...................................................................... 8

*Bennett v. Spear*, 520 U.S. 154 (1997) ............................................................................................ 5

*Caroline T. v. Hudson Sch. Dist.*, 915 F.2d 752 (1st Cir. 1990) .................................................... 9

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799 (2024)............................. 8

*Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*, 45 F.4th 846 (5th Cir. 2022)................................... 8

*Griffin v. HM Fla.-ORL, LLC*, 144 S. Ct. 1 (2023) .................................................................... 8, 9

*Idaho Wool Growers Assoc. v. Schafer*, 637 F. Supp. 2d 868 (D. Idaho 2009) ........................... 12

*NAACP Legal Defense & Educ. Fund, Inc. v. Barr*, 496 F. Supp. 3d 116 (D.D.C. 2020) ....... 5, 13

*Nat'l Ass'n of Consumer Advocs. v. Uejio*, 521 F. Supp. 3d 130 (D. Mass. 2021) ................. 7, 12

*New York v. Trump*, No. 25-CV-11221-PBS, 2025 WL 3514301 (D. Mass. Dec. 8, 2025) ...... 5, 8

*Nw. Env't Def. Ctr. v. U.S. Army Corps of Eng'rs*, 2013 WL 1294647, (D. Or. Mar. 27, 2013)... 8

*W. Org. of Res. Councils v. Bernhardt*, 412 F. Supp. 3d 1227 (D. Mont. 2019)......................... 12

**Statutes and Regulations**

5 U.S.C. § 704 .................................................................................................................................. 4

5 U.S.C. § 706(1) .................................................................................................................... 5, 9, 16

5 U.S.C. § 706(2) ........................................................................................................................ 5, 8

5 U.S.C. § 1004(b)(2) ................................................................................................................. 7, 16

5 U.S.C. § 1004(b)(3) ................................................................................................................. 7, 16

5 U.S.C. § 1007(c) ...................................................................................................................... 7, 16

5 U.S.C. § 1007(b)(2)-(3) ........................................................................................................... 7, 16

5 U.S.C. § 1008(a)(2) ................................................................................................................. 6, 15

5 U.S.C. § 1008(c) ................................................................................................................... passim

5 U.S.C. § 1009(a) ...................................................................................................................... 7, 16

5 U.S.C. § 1009(b) ...................................................................................................................... 7, 16

5 U.S.C. § 1009(c) ...................................................................................................................... 7, 16

28 U.S.C. §§ 2201-2202 .................................................................................................................. 5

41 C.F.R. § 102-3.40(e) ................................................................................................................... 3

41 C.F.R. § 102-3.60(b)(2) ......................................................................................................... 6, 15

41 C.F.R. § 102-3.60(b)(3) ............................................................................................... 6, 7, 15, 16

41 C.F.R. § 102-3.65(a) .............................................................................................................. 6, 15

41 C.F.R. § 102-3.70.................................................................................................................. 6, 15

## INTRODUCTION

Pursuant to the Court's order of December 23, 2025, Plaintiffs submit this brief on the appropriate remedies against the U.S. Department of Energy and Secretary of Energy Christopher Wright (the "DOE Defendants"), as well as the Climate Working Group ("CWG"). With these Defendants having conceded liability on the alleged violations of the Federal Advisory Committee Act ("FACA"), the appropriate relief follows from the nature of their legal violations, the remedies that the Administration Procedure Act ("APA") mandates as to DOE, and the irreparable harm that Plaintiffs will suffer absent certain permanent injunctive or mandamus relief.

With respect to the DOE Defendants, the APA dictates that the Court must "hold unlawful and set aside" DOE's actions that violated FACA. DOE's unlawful final agency actions include its establishment of the CWG and its utilization of the group. The Court thus should vacate—meaning render void *ab initio*—DOE's establishment of the CWG and its utilization of the CWG, with the latter including DOE's transmission of the CWG Report to the U.S. Environmental Protection Agency ("EPA") and DOE's publication of the report on its website. The Court should enter declaratory relief, including not only that DOE unlawfully established and utilized the CWG, but also that DOE violated specific FACA requirements by, among other things: (i) failing to follow the law's procedural requirements for selecting a fairly balanced committee membership; (ii) assembling a committee that was not in fact fairly balanced in the views of its members, and that was subject to inappropriate influence from the appointing authority; and (iii) not providing public notice of the committee's existence and its meetings, or public access to its records.

The Court should further enter injunctive or mandamus relief that ensures that the required APA relief described above is effectual, and that prevents further irreparable harm to Plaintiffs. That injunctive relief should include prohibiting DOE from maintaining the CWG Report, which bears DOE's official seal, on DOE's website. The Court should also prohibit DOE from tasking the CWG with additional work, and it should similarly prohibit the CWG from holding additional meetings and carrying out additional work pursuant to tasking from DOE or another federal agency. This relief is necessary because, as indicated in FACA records produced by the government and a recent public statement by a CWG member, the federal government has been in contact with the unlawfully constituted CWG about contributing to the next National Climate Assessment, including discussing strategies to subvert the longstanding statutory mandate regarding the process for developing the Assessment.

Plaintiffs respectfully request that the Court promptly enter partial judgment against the DOE Defendants and the CWG containing this and any other appropriate relief, even if Plaintiffs' claims against EPA remain pending. The DOE Defendants and the CWG have conceded that they violated the law in numerous ways; prompt relief is necessary to partially remedy the harms to Plaintiffs from these violations on a matter that is of central import to Plaintiffs' missions.

## BACKGROUND

On August 12, 2025, Plaintiffs filed this action against DOE and Secretary Wright ("DOE Defendants"), the EPA and its Administrator Lee Zeldin ("EPA Defendants"), and the CWG (collectively, "Defendants"). Plaintiffs asserted claims against all Defendants for violating FACA and its implementing regulations. Plaintiffs bring their claims against DOE and EPA

under the APA and for *ultra vires* actions, and claims against the CWG for ultra vires action and for a writ of mandamus if no other adequate relief is available.

Plaintiffs moved for a preliminary injunction or in the alternative summary judgment, and the day before Defendants' opposition was due, Secretary Wright purported to disband the CWG. *See* ECF No. 44. Defendants then argued to this Court the next day that Plaintiffs' claims were moot based on the purported dissolving of the group. ECF No. 43 at 11. Defendants presented just one merits argument with respect to DOE and the CWG: that the CWG was exempt from FACA because it was "assembled to exchange facts or information with a Federal official(s)." 41 C.F.R. § 102-3.40(e); *see* ECF No. 43 at 7. Defendants did not put forward any other substantive defense against the alleged FACA violations, nor did Defendants dispute that each action DOE took in establishing, administering, and utilizing the CWG was a final agency action for purposes of the APA. *See* ECF No. 43.

On September 17, 2025, the Court granted Plaintiffs partial summary judgment as to the non-applicability of 41 C.F.R. § 102-3.40(e), but the Court denied a preliminary injunction after finding a lack of sufficient irreparable harm. *See* ECF No. 57.

On December 2, 2025, in response to a request from Plaintiffs for the Court to issue a discovery schedule, Defendants asserted that they no longer "contest the merits of Plaintiffs' FACA claims against DOE." ECF No. 73 at 2. Defendants confirmed at the subsequent December 8 hearing that they "are not contesting the merits." 12/8/25 Hr'g Tr. at 6:11-12 (attached as Exhibit 1). In light of that concession, the Court ordered Defendants to produce records subject to disclosure under FACA by December 22, and directed the parties to propose a schedule for resolving the remaining claims and issues in the case. ECF No. 78. The parties

3

agreed on a schedule to, among other things, brief the appropriate remedies against the DOE Defendants and CWG, and Plaintiffs submit this filing pursuant to that schedule.[1]

## ARGUMENT

Declaratory relief against both the DOE Defendants and the CWG is appropriate and straightforward given the uncontested violations of FACA and its implementing regulations committed by these Defendants. The Court must enter relief against DOE under the APA, which prescribes specific remedies for unlawful agency actions, including vacating those actions. Permanent injunctive relief is also necessary against DOE to effectuate the APA remedies, and to prevent irreparable harm to Plaintiffs. And prohibiting the CWG from continuing to unlawfully operate is necessary and warranted given the indications that the CWG will continue to do so unless prohibited by the Court.

### A. Relief Against the DOE Defendants

The Court should enter relief against the DOE Defendants under Counts 1-4 of the Complaint, which are brought pursuant to the APA. DOE's establishment and utilization of the CWG, without complying with FACA, constitute final agency actions under the APA. 5 U.S.C. § 704; *see* Compl. ¶ 98. The same is true of DOE's planning, facilitating, or permitting each CWG meeting that did not comply with FACA's open meeting requirements. *Id.* ¶ 106.

In conceding liability to the counts in the Complaint, Defendants have conceded that these are final agency actions. In any event, these actions plainly constitute final agency actions. They represent "the consummation of the agency's decisionmaking process," and conclusively determine legal "rights or obligations." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (quotations

---

[1] Defendants' motion to dismiss Plaintiffs' claims against the EPA Defendants remains pending as well. The parties have agreed to have remedial proceedings vis-à-vis the DOE Defendants and the CWG occur in parallel to any proceedings on EPA's motion to dismiss.

omitted). DOE made final decisions to establish and to utilize the CWG without complying with FACA, and that affected legal rights or obligations because it enabled the CWG to operate without following any of FACA's procedural and substantive requirements. It also denied Plaintiffs their legal rights under FACA, including but not limited to their right to notice of the CWG's formation, see CITE, their right to participate in the required public process for choosing committee members, CITE, and the ability to have a representative l voice on a fairly balanced committee, *see NAACP Legal Defense & Educ. Fund, Inc. v. Barr*, 496 F. Supp. 3d 116, 128-29 (D.D.C. 2020). The failure to open each CWG meeting to the public likewise was final as to each meeting, and denied Plaintiffs their right to attend those meetings. And the decision not to contemporaneously release CWG records likewise was final and deprived Plaintiffs of their rights, and also constitutes agency action "unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1).

*Declaratory Relief as to the DOE Defendants:*

Under 5 U.S.C. § 706(2), this Court "*shall . . .* hold unlawful and set aside" each of these final agency actions. The "hold unlawful" component of this remedy means declaratory relief, *see New York v. Trump*, No. 25-CV-11221-PBS, 2025 WL 3514301, at *17 (D. Mass. Dec. 8, 2025), which the Court also may grant pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. The Court should grant the following declaratory relief against the DOE Defendants:

- Declare that DOE violated FACA in establishing and utilizing the CWG, because the CWG qualifies as an advisory committee subject to FACA, and DOE did not comply with any of FACA's requirements in establishing and utilizing the CWG.

- Declare that DOE violated each of the procedural requirements of FACA and its implementing regulations in establishing the CWG, including the requirements to:

- ○ (a) "determine[] as a matter of formal record, . . . after consultation with the [General Services Administration (GSA)] Administrator, with timely notice published in the Federal Register," that the establishment of the CWG was "in the public interest in connection with the performance of duties imposed on [DOE] by law." 5 U.S.C. § 1008(a)(2);

- ○ (b) provide an explanation as to "why the advisory committee's functions cannot be performed by the agency, another existing committee, or other means such as a public hearing," 41 C.F.R. § 102-3.60(b)(2);

- ○ (c) publish a notice in the Federal Register announcing the creation of the CWG, *id.* § 102-3.65(a);

- ○ (d) file a charter for the CWG; 5 U.S.C. § 1008(c); 41 C.F.R. § 102-3.70;

- ○ (e) submit a Membership Balance Plan to GSA describing DOE's "plan to attain fairly balanced membership," which had to "describe the agency's conclusions regarding the points of view that would promote fairly balanced committee membership" and "the agency's intended outreach efforts to accomplish these goals," 41 C.F.R. § 102-3.60(b)(3);

- ○ (f) "conduct broad outreach, using a variety of means and methods, to ensure that the call for nominees reaches the interested parties and stakeholder groups likely to possess [the] points of view" that would promote fairly balanced membership, *id.* § 102-3.60(b)(3)(ii);

- ○ (g) make appropriate provisions "to assure that the advice and recommendations of the advisory committee will not be inappropriately influenced by the

appointing authority or by any special interest, but will instead be the result of the advisory committee's independent judgment," 5 U.S.C. § 1004(b)(3), (c).

- Declare that DOE violated FACA because the membership of the CWG is not "fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee." *Id.* § 1004(b)(2), (c).

- Declare that DOE violated FACA because the CWG was inappropriately influenced by the appointing authority or by any special interest. *Id.* § 1004(b)(3), (c).

- Declare that DOE violated FACA in planning, facilitating, or permitting CWG meetings that were not publicly noticed or open to the public. *Id.* § 1009(a).

- Declare that DOE violated FACA in not managing or maintaining the CWG's records, *id.* § 1007(b)(2)-(3), 1009(c); and not proactively making the CWG's records accessible to the public, *id.* § 1009(b).

This declaratory relief is all appropriate and necessary to capture the full scope of DOE's now-uncontested legal violations, which includes violating important procedural requirements and constituting a committee that is not fairly balanced in the views represented and that was subject to inappropriate influence. Moreover, each declaration requested would benefit Plaintiffs in their ongoing efforts to counteract and advocate against the CWG's work. Other courts have entered similar declaratory relief upon finding FACA violations. *See, e.g.*, *Nat'l Ass'n of Consumer Advocs. v. Uejio*, 521 F. Supp. 3d 130, 144 (D. Mass. 2021) (explaining that successful FACA plaintiffs may receive "a declaration that the Defendants' creation and administration of the [committee] violated FACA and its implementing regulations"); Order at 3, *NAACP,* No. 20-cv-01132 (D.D.C. Oct. 1, 2020) (entering such relief); *Nw. Env't Def. Ctr. v. U.S. Army Corps of Eng'rs*, 2013 WL 1294647, at *9 (D. Or. Mar. 27, 2013) (same).

*Vacatur of DOE's Actions:*

Pursuant to 5 U.S.C. § 706(2), the Court also "shall . . . set aside" DOE's unlawful actions, which under the APA means to vacate those actions. "[T]he text and history of the APA, [and] the longstanding and settled precedent adhering to that text and history," makes clear that to "set aside" an unlawful agency action means to "vacate" that action. *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 829 (2024) (Kavanaugh, J., concurring). APA vacatur is not a "party-restricted' remedy; rather, "[v]acatur acts directly on the 'agency action,'" setting the action itself aside. *Ass'n of Am. Universities v. Dep't of Def.*, No. CV 25-11740-BEM, 2025 WL 2899765, at *29 (D. Mass. Oct. 10, 2025); *see also id.* ("the 'action' is vacatur's quantum and its limiting principle"); *New York*, 2025 WL 3514301, at *17. And the legal effect of vacating an agency action under the APA is that the action is "treated as though it had never happened." *Griffin v. HM Fla.-ORL, LLC*, 144 S. Ct. 1, 2 (2023) (Statement of Kavanaugh, J.). In other words, the action is void *ab initio. See also Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*, 45 F.4th 846, 859 (5th Cir. 2022).

The Court should therefore vacate DOE's unlawful actions, including to:

- Vacate DOE's establishment of the CWG;

- Vacate DOE's utilization of the CWG, including DOE's transmission of the CWG Report to EPA, see ECF No. 47 at 5,[2] and DOE's publishing the CWG Report on DOE's website with DOE's official seal.[3]

---

[2] *See also* Benjamin Storrow, *How Chris Wright Recruited a Team to Upend Climate Science*, E&E News (Aug. 11, 2025, 6:15 AM), https://perma.cc/TNJ5-J4M4.

[3] DOE, *Department of Energy Issues Report Evaluating Impact of Greenhouse Gasses on U.S. Climate, Invites Public Comment* (July 29, 2025), https://www.energy.gov/articles/department-energy-issues-report-evaluating-impact-greenhouse-gasses-us-climate-invites.

In vacating these actions, the Court should make clear that the legal effect of the vacatur is that the actions are "treated as though [they] had never happened." *Griffin*, 144 S. Ct. at 2.

With respect to DOE's failure to disclose committee records as required, even though the Court has already ordered production of the records, the Court's final judgment should formally "compel" DOE to disclose all required records pursuant to 5 U.S.C. § 706(1).[4]

### *Injunctive Relief Against the DOE Defendants:*

The Court should enter the following permanent injunctive relief against DOE:

- Permanently enjoin DOE from tasking the CWG with performing additional work beyond the CWG Report that the group already produced;

- Permanently enjoin DOE from publishing or maintaining the CWG Report on the DOE website or any other official DOE platforms or channels.

The test for a permanent injunction is effectively the same as for a preliminary injunction, *Caroline T. v. Hudson Sch. Dist.*, 915 F.2d 752, 755 (1st Cir. 1990), and all four factors favor the injunctive relief set forth above. Defendants have already conceded the merits, and both forms of injunctive relief would prevent irreparable harm to Plaintiffs and serve the public interest.

The first requested form of injunctive relief—prohibiting DOE from tasking the CWG with additional work—would effectuate the APA relief described above of vacating DOE's unlawful establishment of the CWG. That is, to ensure that DOE does not ignore or circumvent the Court's vacatur of the CWG's establishment, the Court should enjoin DOE from asking the unlawfully constituted CWG to perform additional work. Such injunctive relief would also prevent future FACA violations, by preventing DOE from "utilizing" the CWG going forward.

---

[4] Plaintiffs dispute whether Defendants have complied with their disclosure obligations under FACA, including whether records listed in the *Vaughn* index provided are being improperly withheld. Plaintiffs anticipate shortly filing a motion to compel the disclosure of these records.

The need for this relief is not speculative. POLITICO reported on December 22 that, according to CWG member Judith Curry, the "same team—known as the Climate Working Group—has been asked to write the next installment of the National Climate Assessment, or NCA."[5] Scott Waldman, *It's the gold standard of US climate research. Contrarians could write the next one*, E&E News by POLITICO, Dec. 22, 2025, http://eenews.net/articles/its-the-gold-standard-of-us-climate-research-contrarians-could-write-the-next-one/. Curry stated that "[T]he Climate Working Group has been contacted about the NCA," and that she expected all five members of the CWG to work on the NCA. *Id.* Emails that Defendants produced in this case reinforce this concern: In May 2025, a DOE employee invited the CWG members to think about whether they would like to "contribute to NCA 6," referring to the next NCA report and indicating that the Trump Administration has been considering—and potentially implementing—changes to the NCA development process. Exhibit 2 at 3. Over email, CWG members shared the view that there is "a fundamental flaw with the NCA mandate," that they might "suggest[] a revised mandate," and flippantly discussed what form the sixth NCA report might take. *See id.* at 1-3. The NCA is a critical assessment of climate science, developed through a thorough process established in federal law, to inform long-term national policies. *See* 15 U.S.C. § 2936.

Utilizing the CWG to contribute to or change the processes for the NCA, or for any other additional purposes, would perpetuate the FACA violations that Defendants are not even

---

[5] The NCA "analyzes the effects of global change on . . . human health and welfare," and "provides the scientific foundation to support informed decision-making across the United States." USGCRP, Fifth National Climate Assessment, Report-in-Brief at 11 (2023), https://secasc.ncsu.edu/wp-content/uploads/sites/178/2025/07/NCA5_Report-In-Brief.pdf. Earlier this year the Trump Administration abruptly dismissed all contributors working on the sixth NCA. *See* Brad Plumer & Rebecca Dzombak, *All Authors Working on Flagship U.S. Climate Report Are Dismissed*, N.Y. Times (updated July 8, 2025), https://www.nytimes.com/2025/04/28/climate/national-climate-assessment-authors-dismissed.html.

contesting, and it would harm Plaintiffs for all the same reasons that the unlawful establishment and utilization of the CWG has already harmed Plaintiffs. *See* ECF No. 16 at 16-18 (describing the various harms to Plaintiffs).

The second requested form of injunctive relief—prohibiting DOE from keeping the CWG Report on its website—would effectuate the APA relief of vacating DOE's existing unlawful utilization of the CWG, which includes the publication of the CWG Report. This relief is independently necessary to prevent irreparable harm to Plaintiffs.

The continued publication of the unlawfully produced and slanted CWG Report—on an official federal government website, bearing the official seal of a federal agency—substantially harms Plaintiffs and their members. The CWG Report's secretly produced conclusions, which are the product of a group that lacked fairly balanced views, are contrary to the careful and extensive research, analysis, and review of climate change science undertaken by Plaintiffs and other climate scientists over years. DOE's ongoing publication of this report that diminishes and misrepresents the harms caused by greenhouse gas emissions cuts to the core of Plaintiffs' missions. *See, e.g.*, ECF No. 18, Dilling Decl. ¶¶ 11-21. The report also "fundamentally misrepresents" the work of UCS board member Ben Santer specifically, which is serious injury to a scientist whose life's work the CWG Report undermines. ECF No. 19, Ekwurzel Decl. ¶ 6(a). Had Defendants complied with FACA, Santer, EDF, UCS, and others would have been able to observe and participate in the CWG's meetings and deliberations, which likely would have enabled Santer and others to correct the group's erroneous presentation of their work.

The balance of the equities and the public interest likewise overwhelmingly favor enjoining DOE to take down the CWG Report. The public interest favors effectual remedies and accountability for DOE's brazen violations of law. DOE has never put forward a serious defense

in this case that it did not violate FACA, including by denying the public a fair, open, and unbiased process. Instead, DOE tried to moot out the case by purporting to disband the CWG before this Court could rule. Federal agencies would have little incentive to ever comply with FACA if they could freely publicize the final work product of an unlawfully constituted advisory committee, so long as the committee completes its work before it gets caught. The public interest favors meaningful relief when the federal government disregards the law, which here includes ordering DOE to take the CWG Report down from its website.

   If the Court enters all of the above relief, and especially the above-requested permanent injunctive relief, a "use injunction" that would bar DOE from using or relying on the CWG Report in the future would not be necessary. *Cf.* ECF No. 16 at 20 (Plaintiffs requesting such relief in their preliminary injunction motion). If, however, the Court declines to enter the injunctive relief requested above, the Court should enter a use injunction. Courts have enjoined agencies from using or relying on an advisory committee's work where, as here, "the FACA violation at issue here goes to the very creation and existence of the advisory committee." *W. Org. of Res. Councils v. Bernhardt*, 412 F. Supp. 3d 1227, 1242-43 (D. Mont. 2019); *see also Alabama-Tombigbee Rivers Coal. v. Dep't of Interior*, 26 F.3d 1103, 1107 (11th Cir. 1994) (affirming injunction prohibiting agency from using the "product of a tainted procedure" that violated FACA); *Idaho Wool Growers Assoc. v. Schafer*, 637 F. Supp. 2d 868, 880 (D. Idaho 2009), *order clarified*, No. CV 08-394-S-BLW, 2009 WL 3806371 (D. Idaho Nov. 9, 2009) (same); *Uejio*, 521 F. Supp. 3d at 144 (courts may "enjoin[] the use of a committee's recommendations").

   Here, allowing DOE to take actions of enormous import to the health and well-being of people and our environment, in reliance on the work of a patently unlawful advisory committee,

would incentivize future violations and "circumvent the very policy that serves as the foundation of [FACA]." *Alabama-Tombigbee Rivers*, 26 F.3d at 1107.

**B. Relief Against the CWG**

The Court should enter declaratory, injunctive, and mandamus relief against the CWG.

*Declaratory Relief as to the CWG:*

FACA provides that "[a]n advisory committee shall not meet or take *any action* until an advisory committee charter has been filed." 5 U.S.C. § 1008(c) (emphasis added). Because a charter was never filed for the CWG, "any action" the CWG took was unlawful. Defendants have also already effectively conceded that the CWG's holding of meetings was unlawful. Accordingly, the Court should enter the following declaratory relief:

- Declare that the CWG is an unlawful advisory committee because it is subject to FACA but did not comply with FACA;

- Declare that "any action" the CWG took was unlawful because its charter was never filed, 5 U.S.C. § 1008(c), and that these unlawful actions include the CWG's drafting the CWG Report and its transmission of the report to DOE.

- Declare that the CWG met unlawfully outside of public view and operated without contemporaneously disclosing their records as required.

*Injunctive or Mandamus Relief Against the CWG:*

Either as injunctive relief on Plaintiffs' *ultra vires* claim, or as mandamus relief,[6] the Court should:

---

[6] Because advisory committees are not "agencies" subject to the APA, courts have granted mandamus relief against advisory committees that violate FACA. *See, e.g.*, *NAACP Legal Def. and Educ. Fund v. Barr*, 496 F. Supp. 3d 116, 145 (D.D.C. 2020).

- Preclude the CWG from holding future meetings, or performing future work, in furtherance of the mandate or tasking that DOE or another federal agency has provided or does provide to the CWG.

- Order the CWG to disclose any CWG records that have not already been disclosed by DOE, if the records were created in furtherance of the mandate or tasking that DOE or another federal agency has provided or does provide to the CWG.

Defendants may object to this relief on the ground that the CWG has purportedly been dissolved. However, CWG members themselves say that the CWG will continue to meet, and it has been reported that the federal government may give new tasks to the group. After the CWG's purported dissolution, CWG member Judith Curry stated that the CWG "is still working" and "plan[s] to respond to public comments and issue a revised report." See ECF No. 52, 52-1 (statement of Dr. Curry). Another CWG Member, Dr. Koonin, also suggested that the CWG would still respond to public comments on its report. ECF No. 50-1 at 1-2. And as mentioned, CWG member Curry recently stated that the CWG "has been asked to write the next installment of the National Climate Assessment, or NCA." and that she expected all five members of the CWG to work on it. Waldman, *supra*; *see also* Ex. 2.

In these circumstances, relief precluding the CWG from meeting or working in furtherance of tasking provided by the federal government is well warranted. It is necessary to ensure that the CWG does not commit additional FACA violations, which would impose all the same injuries anew on Plaintiffs. In contrast, if the CWG has actually been dissolved as Defendants claim, then the government will incur no harm from the order. Especially given that Defendants have not recognized that they did anything improper in violating FACA, and have not provided assurances that they will not do so again in the future, the risk that the CWG will

14

continue to operate unlawfully is real, and public interest counsels strongly in favor of preventing that from happening.

## CONCLUSION

For the reasons set forth above, the Court should enter the following relief against the DOE Defendants and the CWG:

### *Against the DOE Defendants:*

- Declare that DOE violated FACA in establishing and utilizing the CWG, because the CWG qualifies as an advisory committee subject to FACA, and DOE did not comply with any of FACA's requirements in establishing and utilizing the CWG;

- Declare that DOE violated each of the procedural requirements of FACA and its implementing regulations in establishing the CWG, including the requirements to:

  - "determine[] as a matter of formal record, . . . after consultation with the [GSA] Administrator, with timely notice published in the Federal Register," that the establishment of the CWG was "in the public interest in connection with the performance of duties imposed on [DOE] by law." 5 U.S.C. § 1008(a)(2);

  - provide an explanation as to "why the advisory committee's functions cannot be performed by the agency, another existing committee, or other means such as a public hearing," 41 C.F.R. § 102-3.60(b)(2);

  - publish a notice in the Federal Register announcing the creation of the CWG, *id.* § 102-3.65(a);

  - file a charter for the CWG; 5 U.S.C. § 1008(c); 41 C.F.R. § 102-3.70;

  - submit a Membership Balance Plan to GSA describing DOE's "plan to attain fairly balanced membership," which had to "describe the agency's conclusions

regarding the points of view that would promote fairly balanced committee

membership" and "the agency's intended outreach efforts to accomplish these

goals," 41 C.F.R. § 102-3.60(b)(3);

- "conduct broad outreach, using a variety of means and methods, to ensure that

  the call for nominees reaches the interested parties and stakeholder groups likely

  to possess [the] points of view" that would promote fairly balanced membership,

  *id.* § 102-3.60(b)(3)(ii);

- make appropriate provisions "to assure that the advice and recommendations of

  the advisory committee will not be inappropriately influenced by the appointing

  authority or by any special interest, but will instead be the result of the advisory

  committee's independent judgment," 5 U.S.C. § 1004(b)(3), (c);

- Declare that DOE violated FACA because the membership of the CWG is not "fairly

  balanced in terms of the points of view represented and the functions to be performed by

  the advisory committee." *Id.* § 1004(b)(2), (c);

- Declare that DOE violated FACA because the CWG was inappropriately influenced by

  the appointing authority or by any special interest. *Id.* § 1004(b)(3), (c);

- Declare that DOE violated FACA in planning, facilitating, or permitting CWG meetings

  that were not publicly noticed or open to the public. *Id.* § 1009(a);

- Declare that DOE violated FACA in not managing or maintaining the CWG's records, *id.*

  § 1007(b)(2)-(3), 1009(c); and not proactively making the CWG's records accessible to

  the public, *id.* § 1009(b);

- Vacate DOE's establishment of the CWG;

- Vacate DOE's utilization of the CWG, including DOE's transmission of the CWG Report to EPA, and DOE's publishing the CWG Report on DOE's website with DOE's official seal;

- Compel DOE to disclose all required records pursuant to 5 U.S.C. § 706(1);

- Permanently enjoin DOE from tasking the CWG with performing additional work; and

- Permanently enjoin DOE from publishing or maintaining the CWG Report on the DOE website or any other official DOE platforms or channels.

*Against the CWG:*

- Declare that the CWG is an unlawful advisory committee because it is subject to FACA but did not comply with FACA;

- Declare that "any action" the CWG took was unlawful because its charter was never filed, 5 U.S.C. § 1008(c), and that these unlawful actions include the CWG's drafting the CWG Report and its transmission of the report to DOE;

- Declare that the CWG met unlawfully outside of public view and operated without contemporaneously disclosing their records as required;

- Preclude the CWG from holding future meetings, or performing future work, in furtherance of the mandate or tasking that DOE or another federal agency has provided or does provide to the CWG; and

- Order the CWG to disclose any CWG records that have not already been disclosed by DOE, if the records were created in furtherance of the mandate or tasking that DOE or another federal agency has provided or does provide to the CWG.

January 5, 2026

*/s/ Megan M. Herzog*
Sean H. Donahue (D.C. Bar. 450940)*
Megan M. Herzog (BBO No. 682948)
DONAHUE, GOLDBERG & HERZOG
1008 Pennsylvania Avenue, SE
Washington, DC 20003
(202) 277-7085
sean@donahuegoldberg.com
megan@donahuegoldberg.com

*Counsel for Plaintiffs Environmental
Defense Fund and Union of Concerned
Scientists*

Respectfully submitted,

*/s/ Daniel F. Jacobson*
Daniel F. Jacobson (D.C. Bar 1016621)*
Lynn D. Eisenberg (D.C. Bar 1017511)*
John Robinson (D.C. Bar 1735989)*
JACOBSON LAWYERS GROUP PLLC
1629 K Street NW, Suite 300
Washington DC, 20006
(301) 823-1148
dan@jacobsonlawyersgroup.com
lynn@jacobsonlawyersgroup.com
john@jacobsonlawyersgroup.com

*Counsel for Plaintiffs Environmental
Defense Fund and Union of Concerned Scientists*

Vickie L. Patton (CO Bar 30370)*
ENVIRONMENTAL DEFENSE FUND
2060 Broadway, Suite 300
Boulder, CO 80302
(720) 837-6239
vpatton@edf.org

Erin Murphy (FL Bar 1000501)*^
ENVIRONMENTAL DEFENSE FUND
555 12th St NW, Suite 400
Washington, D.C. 20004
(202) 572-3525
emurphy@edf.org

*Counsel for Plaintiff Environmental Defense Fund*

*Admitted Pro hac vice
^Practicing pursuant to D.C. Ct. App. Rule 49(c)(3)

## CERTIFICATE OF SERVICE

I certify that on January 5, 2025, I filed this document with the Court's ECF system, which sends notice to all parties.

*/s/ Daniel F. Jacobson*

19